

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re:

MENU FOODS, INC. PRODUCTS
LIABILITY LITIGATION

    MDL Docket No. _____

_____ /

## FLORIDA PLAINTIFF CHRISTINA TROIANO'S MOTION TO TRANSFER AND
## COORDINATE OR CONSOLIDATE ACTIONS UNDER 28 U.S.C. § 1407

Paul J. Geller
Stuart A. Davidson
James L. Davidson
**LERACH COUGHLIN STOIA GELLER**
**RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

*Counsel for Florida Plaintiff Christina Troiano*

## OFFICIAL FILE COPY

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
2007 MAR 29  A 10: 30
RECEIVED
CLERK'S OFFICE

IMAGED APR   2 2007

Dockets.Justia.com

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure on Multidistrict Litigation, plaintiff in the action styled *Christina Troiano, individually and on behalf of all others similarly situated v. Menu Foods, Inc. et. al.*, Case No. 07-60428-CIV-COHN, United States District Court for the Southern District of Florida ("Troiano" or "Movant"), files this Motion and respectfully moves for an Order transferring all related pending actions against Menu Foods, Inc. and its related partners, affiliates and subsidiaries (the "Defendants"), including the actions listed on Schedule of Actions, to the Southern District of Florida.

As set forth below and in the accompanying Memorandum, Troiano believes the actions listed on the accompanying Schedule of Actions, and any future tag-along actions, satisfy the requirements for consolidation and coordination because they concern common questions of fact and law and consolidation or coordination will serve the interests of efficiency and convenience.

In support of this motion, Movants state as follows:

1.    Movant is the plaintiff in the following case: *Christina Troiano, individually and on behalf of all others similarly situated v. Menu Foods, Inc. et. al.*, Case No. 07-60428-CIV-COHN which is currently pending in the United States District Court for the Southern District of Florida.

2.    Movant is currently aware of six other pending class action cases containing similar factual allegations and seeking similar relief against the Defendants. The cases are listed on the attached Schedule.

3.    Accompanying Movant's Motion is a Rule 7.2(a)(ii) Schedule of Actions listing all related actions of which Movant is aware. True and correct copies of the complaints in Movant's action and the complaints in each of the related actions are attached to the accompanying Schedule of Actions, filed herewith

4.      As described in greater detail in the accompanying Memorandum, the factual allegations in each of the actions contain similar allegations regarding Defendants and their defective and ultimately deadly pet food.  Each action contends that from December 3, 2006 up to and including March 6, 2007, and possibly at other times, Defendants entered into the stream of commerce pet food that was defective and, for thousands of household pets, deadly – Defendants' pet food and pet food products (the "Products") were contaminated with rat poison or a related agent that contributed to the illness and/or death of thousands of dogs and cats.  As a result of the defective Products, each action contends that the Plaintiffs and members of the putative Class suffered damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or own pet food and pet food products that they would not otherwise have bought had they known such products were defective.

5.      Each action further contends that Defendants should have known or know and have admitted that certain of the Products produced by the Defendants between December 3, 2006 and March 6, 2007 are defective and causing injury and death to pets, and on March 16, 2007, initiated a recall of some of the Products.

6.      A centralization of all actions in the Southern District of Florida will be for the convenience of parties and witnesses under 28 U.S.C. §1407 and will save Defendants the burden of having to defend virtually identical actions in multiple states.  Witnesses will also be spared the possibility of being required to testify in several locales.

7.      Because each of these related cases arises from a virtually identical set of operative facts relating to Defendants' conduct, discovery conducted in each of the actions proposed for consolidation will be substantially similar, and will involve the same or similar documents and witnesses.

3

8.      Absent transfer of all of these cases to a single forum for coordinated and consolidated proceedings, there is a substantial risk of inconsistent and conflicting pretrial rulings on discovery and other key issues, such as class certification.  Coordination and consolidation will promote the just and efficient conduct of the actions, because it will allow one court to address Defendants' ongoing conduct.

9.      Centralization in the Southern District of Florida will also promote the just and efficient conduct of this litigation under 28 U.S.C. § 1407 as more fully set forth in the attached Memorandum.

10.     These actions have all been filed on or after March 19, 2007, and are still in their nascent stages.  Movant is not aware of any discovery conducted to date, and know of no initial disclosures that have been made in any of these cases.  A transfer of these related cases will result in only one judge supervising discovery and resolving any subsequent motions, including motions for class certification.

11.     Since all actions are in the beginning stage of the litigation, no prejudice or inconvenience would result from transfer, coordination and/or consolidation.

12.     A comparison of the relative MDL case loads of potential transferee districts demonstrates that the Southern District of Florida is a suitable forum.  According to the Distribution of Pending MDL Dockets as of March 26, 2007, there is only one pending MDL proceeding in the Southern District of Florida, and numerous judges who have the experience to handle MDL's (*See* Distribution of Pending MDL Dockets as of March 26, 2007, Ex. A.).

13.     For these reasons, and as set forth more fully in the accompanying memorandum, Movant respectfully requests that the Panel enter an Order consolidating and coordinating the actions

identified on the accompanying Schedule together with any related actions subsequently filed or

presently unknown to Movant for proceedings in the Southern District of Florida.

Respectfully submitted,

DATED: March 28, 2007

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
*pgeller@lerachlaw.com*
STUART A. DAVIDSON
Florida Bar No. 84824
*sdavidson@lerachlaw.com*
JAMES L. DAVIDSON
Florida Bar No. 723371
*jdavidson@lerachlaw.com*

                                                  For

STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)


KOPELMAN & BLANKMAN
LAWRENCE KOPELMAN
Florida Bar No. 288845
*lmk@kopelblank.com*
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL  33301
Telephone: 954/462-6855
954/462-6899 (fax)

**Attorneys for Florida Plaintiff Christina
Troiano**

G:\jdavidson\Menu Foods\Pleadings\Motion for MDL (final).doc

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In re:

MENU FOODS, INC. PRODUCTS
LIABILITY LITIGATION

_____/

MDL Docket No. _____

**FLORIDA PLAINTIFF CHRISTINA TROIANO'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR
CONSOLIDATE ACTIONS UNDER 28 U.S.C. § 1407**

Paul J. Geller
Stuart A. Davidson
James L. Davidson
**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Counsel for Florida Plaintiff Christina Troiano*

RECEIVED
CLERK'S OFFICE
2007 MAR 29  A 10: 3
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure on Multidistrict Litigation, Plaintiff in the action styled *Christina Troiano, individually and on behalf of all others similarly situated v. Menu Foods, Inc. et. al.*, CASE NO. 07-60428-CIV-COHN, United States District Court for the Southern District of Florida. Plaintiff Christina Troiano ("Troiano" or "Movant"), respectfully submits this Memorandum in Support of Florida Plaintiff Christina Troiano's Motion for Transfer and Coordination or Consolidation. For the reasons set forth below, Movant's lawsuit and the related lawsuits identified in the accompanying Schedule of Actions should be transferred to and consolidated in the Southern District of Florida.

## I.    INTRODUCTION

Troiano brings her class action to remedy the harm caused by the defective and deadly pet food manufactured and placed into the stream of commerce by Menu Foods, Inc. and its affiliates, partners and subsidiaries (collectively, the "Menu Foods Defendants" or "Defendants"). Defendants are the leading North American private label/contract manufacturer of wet pet food products (the "Products") sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc. Defendants produce hundreds of millions of containers of pet food annually.

Defendants design, manufacture, market, advertise and warrant their pet food Products. In conjunction with each sale, Defendants market, advertise and warrant that the Products are fit for the ordinary purpose for which such goods are used – consumption by pets – and are free from defects. Defendants produce the pet food Products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. The pet food Products are placed in the stream of commerce and distributed and

offered for sale and sold to Troiano and purchasers in Florida and the United States and fed to their pets.

From December 3, 2006 up to and including March 6, 2007, and possibly at other times, Defendants entered into the stream of commerce pet food Products that were deadly and defective – Defendants' pet food and pet food Products were potentially contaminated with rat poison or some other agent that contributed to the illness and/or death of thousands of dogs and cats. As a result of the defective Products, Troiano and members of the putative Class have suffered damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or own pet food and pet food products that they would not otherwise have bought had they known such products were defective.

Defendants know and have admitted that certain of the Products produced by the Defendants between December 3, 2006 and March 6, 2007 are defective and causing injury and death to pets, and on March 16, 2007, initiated a nationwide recall of some of the Products. Further, the Food and Drug Administration has reported that as many as one in six animals died in tests of the Products by Defendants last month after the Defendants received complaints the Products were poisoning pets around the country. A spokeswoman for the New York State Department of Agriculture and Markets has said that rodent poison was determined to have been mixed into the Products.

## II.     HISTORY OF THE PENDING LAWSUITS

The related actions, identified in the accompanying Schedule of Actions present common questions of law and fact, common defendants, and are brought on behalf of overlapping classes (*i.e.*, all persons and entities who suffered damages due to Defendants' defective pet food and pet food Products). Transfer and consolidation of all existing actions, and all subsequently filed related cases, to the Southern District of Florida will best serve the convenience of the parties and witnesses

and promote the just and efficient conduct of the litigation. Each related action is briefly discussed below.

On or about March 19, 2007, Tom Whaley, individually and on behalf of others similarly situated, filed the class action styled *Whaley v. Menu Foods, Inc., et. al.,* Case No. 2:07-cv-00411, in the United States District Court for the Western District of Washington (the "*Whaley* Action"). This complaint seeks damages and equitable relief for breach of contract, unjust enrichment, deceptive and unfair business practices, breach of warranties and negligent misrepresentation on behalf of a class of all persons who purchased any dog or cat food which was produced by the Defendants and/or has had a dog or cat become ill as a result of eating the food.

Also on March 19, 2007, Lizajean Holt, individually and on behalf of others similarly situated, filed the class action styled *Holt v. Menu Foods, Inc.,* Case No. 3:07-cv-00094, in the United States District Court for the Eastern District of Tennessee (the "*Holt* Action"). This complaint likewise seeks damages and equitable relief for deceptive and unfair business practices, breach of warranties and negligence on behalf of a class of all persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendants that was or will be recalled by the Defendants, including that produced fro December 3, 2006 up to and including March 6, 2007.

On or about March 20, 2007, Dawn Majerczyk, individually and on behalf of others similarly situated, filed the class action styled *Majerczyk v. Menu Foods, Inc.,* Case No. 1:07-cv-01543, in the United States District Court for the Northern District of Illinois (the "*Majerczyk* Action"). This complaint seeks damages and injunctive relief for breach of warranties and negligence on behalf of a class of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

4

On or about March 21, 2007, Charley Ray Sims and Pamela Sims, on behalf of themselves and all others similarly situated, filed the class action styled *Sims, et. al. v. Menu Foods Income Fund, et. al.,* Case No. 5:07-cv-05053, in the District Court for the Western District of Arkansas (the "*Sims* Action"). This complaint seeks damages for strict liability, fraud, breach of express and implied warranties and negligence on behalf of a class of (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006.

On or about March 23, 2007, Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, filed the class action styled *Workman, et. al. v. Menu Foods Limited, et. al.,* Case No. 1:07-cv-01338, in the District Court for the District of New Jersey (the "*Workman* Action"). This complaint seeks damages for breach of express and implied warranties and negligence on behalf of a class of all persons in the United States who purchased any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007.

Also on March 23, 2007, Richard and Barbara Widen, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, filed the class action styled *Widen, et. al. v. Menu Foods, et. al.,* Case No. 5:07-cv-05055, in the District Court for the Western District of Arkansas (the "*Widen* Action"). This complaint seeks damages for strict liability and negligence on behalf of a class of all persons in the United States who purchased contaminated pet food from Wal-Mart that was produced by Menu Foods.

5

On March 26, 2007, Troiano, individually, and on behalf of all others similarly situated, filed her Complaint against Defendants alleging claims for negligence, breach of warranties, strict liability, and unjust enrichment.

## III.    ARGUMENT

In view of the facts outlined above, and the jurisprudence regarding multidistrict litigation set forth below, these cases should be centralized in the United States District Court for the Southern District of Florida.  Transfer and consolidation is essential to permit the efficient and non-duplicative handling of these cases and the Southern District of Florida is the most appropriate venue for this multidistrict litigation.

### A.    The Similarity of These Class Actions Warrants Coordination and Consolidation

28 U.S.C. § 1407(a) authorizes the transfer of multiple civil actions pending in various federal districts to a single federal district court when the actions involve "one or more common questions of fact . . . ."  Moreover, transfer is necessary "in order to eliminate duplicative discovery; prevent inconsistent rulings on pretrial motions, including those with respect to whether the actions should proceed as [class actions] . . . ."  *In re Starmed Health Personnel, Inc. Fair Labor Standards Act Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *see also In re Comp. of Managerial Prof'l and Tech. Employees Antitrust Litig.*, 206 F. Supp. 2d 1374, 1375 (J.P.M.L. 2002) (noting that centralization is "necessary in order to... prevent inconsistent pretrial rulings (especially with regard to class certification issues")).

The requirements for transfer under section 1407 are easily satisfied here.  As discussed above, each of these pending cases (i) purport to represent a large class of individuals and/or entities who were damaged by defective and deadly pet food marketed, manufactured and/or distributed by the Defendants, (ii) assert the same or similar claims against the Defendants, and (iii) seek to recover

losses based upon those damages caused by the Defendants. To separately litigate each pending case (and subsequently filed related cases) would waste resources and present the danger of inconsistent pretrial rulings. Consolidation of these cases is particularly critical because these related actions seek class action status on behalf of the same class or overlapping classes and, as a result, there is a significant potential for conflicting or inconsistent rulings on class certification issues. Accordingly, centralization and consolidation pursuant to 28 U.S.C. § 1407 is warranted.

The consolidation and transfer of these cases would further promote the efficient adjudication of these actions. As the class actions alleged in these related cases are similar if not identical, the discovery needed in each of these pending cases will unquestionably be duplicative. To have the parties engaged in duplicative discovery in multiple complex class actions would be singularly inefficient and an unnecessary burden on the judicial system and the parties. These factors again all weigh heavily in favor of consolidating and coordinating these cases.

**B.      The Southern District of Florida Is the Proper Forum for These Coordinated Proceedings**

Numerous factors may be considered by the Panel in determining the most appropriate transferee forum, including "convenience of the parties and witnesses." *See In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993). Here, the balance of relevant factors weighs strongly in favor of transferring these actions to the Southern District of Florida due to its convenient location, large concentration of putative class members, experience in handling MDL proceedings, and lack of pending MDL cases.

**1.      The Southern District of Florida Is as Appropriate as Any Other Forum for the Parties and Witnesses**

The convenience of the parties and witnesses is a critical factor in determining to which district related actions should be transferred. *See* 28 U.S.C. § 1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be

for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). In deciding whether a particular forum is convenient, the Panel examines factors such as: where the first filed and most advanced cases are pending; the location of the parties, documents and potential witnesses relative to that district; and the location where the majority of actions have been brought. *See In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 740 (J.P.M.L. 1984).

The Defendants in the multiple class actions are a Canadian business entity and its United States subsidiaries and/or affiliates, as well as certain other Defendant-distributors of the defective products. Each of these entities is headquartered and/or incorporated in different jurisdictions, including Canada, New Jersey, and Delaware. Of the seven lawsuits currently pending, one is pending in the Western District of Washington, one is pending in the Eastern District of Tennessee, one is pending in the Northern District of Illinois, two are pending in the Western District of Arkansas, on is pending in the District Court for the District of New Jersey, and one is pending in the Southern District of Florida. Further, upon information and belief, Defendants conduct business, and potentially have caused damages to purported class members, in all fifty states. Thus, there is no central forum that would be more convenient over any others in terms of the locations of parties, documents, and potential witnesses.

2.      **The Accessibility of the Southern District of Florida Warrants Transfer**

While there will be a large number of class members residing in Florida, Troiano anticipates that parties to this litigation will come from all across the country and not one centralized region. Those parties residing outside of Florida will find the courthouses in the Southern District of Florida convenient and accessible by all forms of transportation. The multiple federal courthouses in the Southern District of Florida – in, among other place, Miami, Fort Lauderdale and West Palm Beach – are all in very close proximity to airports that have direct flights on many airlines to

8

numerous cities across the United States. Traveling from the airport to the courthouse is also simple due to the varieties of ground transportation available. *See In re Comp. of Managerial, Prof'l and Tech. Employees Antitrust Litig.*, 206 F. Supp. 2d at 1375 (transferring cases to the District of New Jersey and noting that the District of New Jersey is an "accessible" metropolitan location that is geographically convenient for litigants and counsel). On balance, the accessibility factor favors transfer of the related actions in the Southern District of Florida.

### 3. The Southern District of Florida Has the Capacity and Expertise to Handle these Related Cases

A comparison of the relative MDL case loads of potential transferee districts demonstrates that the Southern District of Florida is a highly suitable forum. The judges of the Southern District of Florida have vast experience in Multidistrict litigation, having brought to termination a total of 24 cases through September 30, 2006.[1] Yet, as of March 26, 2007, the Southern District of Florida only had only one pending MDL proceeding, which is nearly in an inactive stage. Thus, while the Southern District of Florida is well versed in the nuances of Multidistrict litigation, the Southern District would not be overburdened with similar cases if these actions were transferred there.

### C. No Party Is Prejudiced by the Transfer and Consolidation of These Lawsuits

Each of the related lawsuits is in its infancy. To Movant's knowledge, no party has served discovery, filed disclosures or engaged in substantive motion practice regarding these lawsuits. Because these related cases are all in their early stages, no party will be prejudiced by the transfer to the Southern District of Florida. Furthermore, since no discovery has occurred, an Order transferring

---

[1] Multidistrict Litigation Terminated Through September 30, 2006, available at *http://www.jpml.uscourts.gov/Statistics/TerminatedDocketsThroughSeptember2006.pdf*, viewed on March 26, 2007.

these cases to the Southern District of Florida can truly eliminate the expenses associated with the duplicative discovery that would otherwise occur in District Courts across the country.

## IV.    CONCLUSION

For the reasons discussed above, the Plaintiff respectfully request that the related actions identified on the accompanying Schedule of Actions, and any tag-along actions, be transferred to and consolidated in the Southern District of Florida. Accordingly, the Plaintiff respectfully request that this Panel enter an Order transferring the related actions, and any future related actions, to the Southern District of Florida.

Respectfully submitted,

DATED: March 2 8 , 2007

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
*pgeller@lerachlaw.com*
STUART A. DAVIDSON
Florida Bar No. 84824
*sdavidson@lerachlaw.com*
JAMES L. DAVIDSON
Florida Bar No. 723371
*jdavidson@lerachlaw.com*

For

STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000
561/750-3364 (fax)

KOPELMAN & BLANKMAN
LAWRENCE KOPELMAN
Florida Bar No. 288845
*lmk@kopelblank.com*
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL  33301
Telephone: 954/462-6855
954/462-6899 (fax)

**Attorneys for Florida Plaintiff Christina Troiano**

G:\jdavidson\Menu Foods\Pleadings\MEM Support MDL Motion (final).doc

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In re:

MENU FOODS, INC. PRODUCTS                    MDL Docket No. _____
LIABILITY LITIGATION

_____ /

**SCHEDULE OF ACTIONS IN SUPPORT OF FLORIDA PLAINTIFF CHRISTINA
TROIANO'S MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE
ACTIONS UNDER 28 U.S.C. § 1407**

Paul J. Geller
Stuart A. Davidson
James L. Davidson
**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

*Counsel for Florida Plaintiff Christina Troiano*

2007 MAR 29 A 10: 30
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
RECEIVED
CLERK'S OFFICE

## SCHEDULE OF ACTIONS

| Case Caption | Date Filed | Court | Civil Action No. | Judge |
|---|---|---|---|---|
| **Plaintiffs:** Tom Whaley **Defendants:** Menu Foods, The Iams Company, Dog Food Producers Number 1-50, Cat Food Producers 1-40 | March 19, 2007 | W.D. Washington | 2:07-cv-00411 | Ricardo S. Martinez |
| **Plaintiffs:** Lizajean Holt **Defendants:** Menu Foods, Inc. | March 19, 2007 | E.D. Tennessee | 3:07-cv-00094 | Thomas W. Phillips |
| **Plaintiffs:** Dawn Majerczyk **Defendants:** Menu Foods, Inc. | March 20, 2007 | N.D. Illinois | 1:07-cv-01543 | Wayne R. Anderson |
| **Plaintiffs:** Charles Ray Sims, Pamela Sims **Defendants:** Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota Inc., Menu Foods, Inc., Menu Foods Holdings, Inc. | March 21, 2007 | W.D. Arkansas | 5:07-cv-05053 | Jimm Larry Hendren |
| **Plaintiffs:** Richard Scott Widen, Barbara Widen **Defendants:** Menu Foods, Menu Foods Income Fund, Menu Foods General Partnership Limited, Menu Foods Limited | March 23, 2007 | W.D. Arkansas | 5:07-cv-05055 | Robert T. Dawson |

| | | | | |
|---|---|---|---|---|
| Partnership, Menu Foods Operating Partnership, Menu Foods Midwest | | | | |
| **Plaintiffs:** Jared Workman, Mark Cohen, Mona Cohen **Defendants:** Menu Foods Limited, Menu Foods Inc., Menu Foods Midwest Corporation | March 23, 2007 | D. New Jersey | 2:07-cv-00411 | Noel L. Hillman |
| **Plaintiffs:** Christina Troiano **Defendants:** Menu Foods Limited, Menu Foods Inc., Menu Foods Midwest Corporation | March 26, 2007 | S.D. Florida | 0:07-cv-60428 | James I. Cohn |

DATED: March 28, 2007

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
*pgeller@lerachlaw.com*
STUART A. DAVIDSON
Florida Bar No. 84824
*sdavidson@lerachlaw.com*
JAMES L. DAVIDSON
Florida Bar No. 723371
*jdavidson@lerachlaw.com*

_____ For
      STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)


KOPELMAN & BLANKMAN
LAWRENCE KOPELMAN
Florida Bar No. 288845
*lmk@kopelblank.com*
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL  33301
Telephone: 954/462-6855
954/462-6899 (fax)

**Attorneys for Florida Plaintiff Christina
Troiano**

G:\jdavidson\Menu Foods\Pleadings\MDL Motion for Transfer Schedule.doc

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re:

MENU FOODS PET FOOD LITIGATION                    MDL Docket No. _____
_____/

## CERTIFICATE OF SERVICE

Paul J. Geller
Stuart A. Davidson
James L. Davidson
**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364

***Counsel for Florida Plaintiff Christina Troiano***

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

2007 MAR 29  A 10: 30

RECEIVED
CLERK'S OFFICE

I, James L. Davidson, hereby declare as follows:

I am employed by Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 120 E. Palmetto

Park Road, Suite 500, Boca Raton, Florida 33432. I am over the age of eighteen years and not a

party to this action. On March 28, 2007, I served the following documents:

1. **FLORIDA PLAINTIFF CHRISTINA TROIANO'S MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE ACTIONS UNDER 28 U.S.C. § 1407;**

2. **FLORIDA PLAINTIFF CHRISTINA TROIANO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE ACTIONS UNDER 28 U.S.C. § 1407;**

3. **SCHEDULE OF ACTIONS IN SUPPORT OF FLORIDA PLAINTIFF CHRISTINA TROIANO'S MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE ACTIONS UNDER 28 U.S.C. § 1407; and**

4. **CERTIFICATE OF SERVICE.**

on:

**SEE ATTACHED SERVICE LIST "A"**

  X    by placing the document(s) listed above for collection and mailing following the firm's ordinary business practices in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Boca Raton, Florida addressed as set forth on the attached service list.

I further certify and declare that I caused the above documents to be delivered by the same means to the clerks of the following courts affected by the Motion for Transfer and Consolidation:

**SEE ATTACHED SERVICE LIST "B"**

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct, executed this __29__ day of March, 2007, at Boca Raton, Florida.

James L. Davidson

## IN RE MENU FOODS PET FOOD LITIGATION

### SERVICE LIST "A"

| | |
|---|---|
| Paul J. Geller<br>Stuart A. Davidson<br>James L. Davidson<br>**LERACH COUGHLIN STOIA GELLER<br>  RUDMAN & ROBBINS LLP**<br>120 E. Palmetto Park Road, Suite 500<br>Boca Raton, FL  33432-4809<br>Telephone: (561) 750-3000<br>Facsimile:  (561) 750-3364<br>*Attorneys for Florida Plaintiff Christina Troiano*<br><br>Lawrence Kopelman<br>**KOPELMAN & BLANKMAN**<br>350 E. Las Olas Blvd., Suite 980<br>Ft. Lauderdale, FL  33301<br>Telephone: (954) 462-6855<br>Facsimile:  (954) 462-6899<br>*Attorneys for Florida Plaintiff Christina Troiano* | Menu Foods, Inc.<br>9130 Griffith Morgan Lane<br>Pennsauken, NJ  08110<br>*Defendant*<br><br>Menu Foods Income Fund<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant* |

WHALEY v. MENU FOODS, ET AL.
Case No.: 2:07-cv-00411-RSM
USDC, Western District of Washington

| | |
|---|---|
| Michael David Myers<br>**MYERS & COMPANY, P.L.L.C.**<br>1809 Seventh Avenue, Suite 700<br>Seattle, WA  98101<br>Telephone: (206) 398-1188<br>Facsimile:  (206) 400-1112<br>*Attorneys for Plaintiff Tom Whaley* | Menu Foods<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant*<br><br>The Iams Company<br>c/o Registered Agent - Joseph A. Stegbauer<br>Attn: Corporate Secretary<br>One Procter & Gamble Plaza C-2<br>Cincinnati, OH  45202<br>*Defendant* |

HOLT v. MENU FOODS, INC.
Case No.: 3:07-cv-00094
USDC, Eastern District of Tennessee

| | |
|---|---|
| A. James Andrews<br>905 Locust Street<br>Knoxville, TN  37902<br>Telephone: (865) 660-3993<br>Facsimile:  (865) 523-4623<br>*Attorneys for Plaintiff Lizajean Holt* | Menu Foods, Inc.<br>9130 Griffith Morgan Lane<br>Pennsauken, NJ  08110<br>*Defendant* |

| | |
|---|---|
| Nicole Bass<br>905 Locust Street<br>Knoxville, TN  37902<br>Telephone: (865) 310-6804<br>***Attorneys for Plaintiff Lizajean Holt***<br><br>Perry A. Craft<br>**CRAFT & SHEPPARD, PLC**<br>214 Centerview Drive, Suite 233<br>Brentwood, TN  37027<br>Telephone: (615) 309-1707<br>Facsimile:  (615) 309-1717<br>***Attorneys for Plaintiff Lizajean Holt*** | |

MAJERCZYK v. MENU FOODS, INC.
Case No.: 1:07-cv-01543
USDC, Northern District of Illinois

| | |
|---|---|
| John Blim<br>Jay Edelson<br>Myles McGuire (Of Counsel)<br>**BLIM & EDELSON, LLC**<br>53 West Jackson Blvd., Suite 1642<br>Chicago, IL  60604<br>Telephone: (312) 913-9400<br>Facsimile:  (312) 913-9401<br>***Attorneys for Plaintiff Dawn Majerczyk*** | Menu Foods, Inc.<br>9130 Griffith Morgan Lane<br>Pennsauken, NJ  08110<br>*Defendant* |

SIMS v. MENU FOODS INCOME FUND, ET AL.
Case No.: 5:07-cv-05053-JLH
USDC, Western District of Arkansas

| | |
|---|---|
| Jason M. Hatfield<br>**LUNDY & DAVIS, L.L.P.**<br>300 N. College Avenue, Suite 309<br>Fayetteville, AR  72701<br>Telephone: (479) 527-3921<br>Facsimile:  (479) 587-9196<br>***Attorneys for Plaintiffs Charles Ray Sims<br>and Pamela Sims*** | Menu Foods Income Fund<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant*<br><br>Menu Foods Midwest Corporation<br>c/o Registered Agent - The Corporation Trust Co.<br>1209 Orange Street<br>Wilmington, DE  19801-1120<br>*Defendant*<br><br>Menu Foods South Dakota, Inc.<br>c/o Registered Agent<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE  19801-1120<br>*Defendant* |

|  | Menu Foods Holdings, Inc.<br>c/o Registered Agent<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE  19801-1120<br>*Defendant*<br><br>Menu Foods, Inc.<br>c/o Registered Agent<br>Corporation Trust Company<br>820 Bear Tavern Road<br>West Trenton, NJ  08628<br>*Defendant* |

WIDEN v. MENU FOODS, ET AL.
Case No.: 5:07-cv-05055-RTD
USDC, Western District of Arkansas

| Jeremy Y. Hutchinson<br>Jack Thomas Patterson II<br>**PATTON, ROBERTS, MCWILLIAMS**<br>**& CAPSHAW, L.L.P.**<br>Stephens Building<br>111 Center Street, Suite 1315<br>Little Rock, AR  72201<br>Telephone: (501) 372-3480<br>Facsimile: (501) 372-3488<br>*Attorneys for Plaintiffs Richard Scott Widen*<br>*and Barbara Widen*<br><br>Richard Adams<br>James C. Wyly<br>Sean F. Rommel<br>**PATTON, ROBERTS, MCWILLIAMS**<br>**& CAPSHAW, L.L.P.**<br>Century Bank Plaza, Suite 400<br>P.O. Box 6128<br>Texarkana, TX  75505-6128<br>Telephone: (903) 334-7000<br>Facsimile:  (903) 334-7007<br>*Attorneys for Plaintiffs Richard Scott Widen*<br>*and Barbara Widen* | Menu Foods<br>9130 Griffith Morgan Lane<br>Pennsauken, NJ  08110<br>*Defendant*<br><br>Menu Foods Income Fund<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant*<br><br>Menu Foods Gen Par Limited<br>c/o Menu Foods Income Fund<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant*<br><br>Menu Foods Limited Partnership<br>c/o Menu Foods Income Fund<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant*<br><br>Menu Foods Operating Partnership<br>c/o Menu Foods Income Fund<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant* |

| | |
|---|---|
| | Menu Foods Midwest Corporation<br>c/o Registered Agent<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801-1120<br>*Defendant*<br><br>Menu Foods South Dakota<br>c/o Registered Agent<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801-1120<br>*Defendant*<br><br>Menu Foods, Inc.<br>c/o Registered Agent<br>Corporation Trust Company<br>820 Bear Tavern Road<br>West Trenton, NJ 08628<br>*Defendant*<br><br>Menu Foods Holdings, Inc.<br>c/o Registered Agent<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801-1120<br>*Defendant*<br><br>Wal-Mart Stores, Inc.<br>c/o Registered Agent<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801-1120<br>*Defendant* |

WORKMAN, ET AL. v. MENU FOODS LIMITED, ET AL.
Case No.: 1:07-cv-01338-NLH-AMD
USDC, District of New Jersey

| | |
|---|---|
| Donna Siegel Moffa<br>Lisa J. Rodriguez<br>**TRUJILLO RODRIGUEZ & RICHARDS, LLC**<br>8 Kings Highway West<br>Haddonfield, NJ 08033<br>Telephone: (856) 795-9002<br>Facsimile: (856) 795-9887<br>***Attorneys for Plaintiffs Jared Workman, and Mark and Mona Cohen*** | Menu Foods Limited<br>8 Falconer Drive<br>Streetsville, Ontario<br>Canada L5N 1B1<br>*Defendant*<br><br>Menu Foods, Inc.<br>9310 Griffith Morgan Lane<br>Pennsauken, NJ 08110<br>*Defendant* |

| | |
|---|---|
| Robert A. Rovner<br>Jeffrey I. Zimmerman<br>**ROVNER, ALLEN, ROVNER, ZIMMERMAN<br>  & NASH**<br>175 Bustleton Pike<br>Feasterville, PA  19053-6456<br>Telephone: (215) 698-1800<br>*Attorneys for Plaintiffs Jared Workman, and<br>Mark and Mona Cohen*<br><br>Sherrie R. Savett<br>Michael T. Fantini<br>Russell D. Paul<br>**BERGER & MONTAGUE, P.C.**<br>1622 Locust Street<br>Philadelphia, PA  19103<br>Telephone: (215) 875-3000<br>*Attorneys for Plaintiffs Jared Workman, and<br>Mark and Mona Cohen* | Menu Foods Midwest Corporation<br>P.O. Box 1046<br>1400 East Logan Avenue<br>Emporia, KS  66801<br>*Defendant* |

**IN RE MENU FOODS PET FOOD LITIGATION**

**SERVICE LIST "B"**

| CASE | CLERK |
|---|---|
| Whaley v. Menu Foods, et al.<br>Case No.: 2:07-cv-00411-RSM<br>USDC, Western District of Washington | USDC, Western District of Washington<br>U.S. Courthouse<br>700 Stewart Street<br>Seattle, WA 98101 |
| Holt v. Menu Foods, Inc.<br>Case No.: 3:07-cv-00094<br>USDC, Eastern District of Tennessee | USDC, Eastern District of Tennessee<br>Howard H. Baker Jr. U.S. Courthouse<br>800 Market Street, Suite 130<br>Knoxville, TN 37902 |
| Majerczyk v. Menu Foods, Inc..<br>Case No.: 1:07-cv-01543<br>USDC, Northern District of Illinois | USDC, Northern District of Illinois<br>Everett McKinley Dirksen Building<br>219 South Dearborn Street<br>Chicago, IL 60604 |
| Sims v. Menu Foods Income Fund, et al.<br>Case No.: 5:07-cv-05053-JLH<br>USDC, Western District of Arkansas | USDC, Western District of Arkansas<br>John Paul Hammerschmidt Federal Building<br>35 East Mountain Street, Suite 510<br>Fayetteville, AR 72701-5354 |
| Widen v. Menu Foods, et al.<br>Case No.: 5:07-cv-05055-RTD<br>USDC, Western District of Arkansas | USDC, Western District of Arkansas<br>John Paul Hammerschmidt Federal Building<br>35 East Mountain Street, Suite 510<br>Fayetteville, AR 72701-5354 |
| Workman, et al. v. Menu Foods Limited, et al.<br>Case No.: 1:07-cv-01338-NLH-AMD<br>USDC, District of New Jersey | USDC, District of New Jersey<br>Mitchell H. Cohen Building & U.S. Courthouse<br>4th & Cooper Streets, Room 1050<br>Camden, NJ 08101 |

G:\jdavidson\Menu Foods\Pleadings\CERT Service MDL Motion for Transfer.doc

# EXHIBIT A

# DISTRIBUTION OF PENDING MDL DOCKETS
(AS OF MARCH 12, 2007)

| District | Judge | | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|---|
| | | | | 3,377 | 4,027 |
| ARE | D.J. William R. Wilson, Jr. | MDL-1507 | In re Prempro Products Liability Litigation | | |
| AZ | Sr.J. Paul G. Rosenblatt | MDL-1541 | In re Allstate Insurance Co. Fair Labor Standards Act Litigation | 4 | 5 |
| | Sr.J. Roger G. Strand | MDL-972 | In re Diamond Benefits Life Insurance Company & American Universal Insurance Company Contracts Litigation | 1 | 10 |
| CAC | D.J. David O. Carter | MDL-1807 | In re Wachovia Securities, LLC, Wage and Hour Litigation | 19 | 19 |
| | D.J. Dale S. Fischer | MDL-1822 | In re Bluetooth Headset Products Liability Litigation | 14 | 14 |
| | D.J. A. Howard Matz | MDL-1610 | In re Conseco Life Insurance Co. Cost of Insurance Litigation | 19 | 21 |
| | Sr.J. Mariana R. Pfaelzer | MDL-1574 | In re Paxil Products Liability Litigation | 39 | 148 |
| | D.J. Manuel L. Real | MDL-1601 | In re StarMed Health Personnel, Inc., Fair Labor Standards Act Litigation | 3 | 6 |
| | D.J. Manuel L. Real | MDL-1737 | In re American Honda Motor Co., Inc., Oil Filter Products Liability Litigation | 5 | 5 |
| | D.J. Christina A. Snyder | MDL-1671 | In re Reformulated Gasoline (RFG) Antitrust & Patent Litigation | 11 | 12 |
| | C.J. Alicemarie H. Stotler | MDL-1803 | In re Banc of America Investment Services, Inc., Overtime Pay Litigation | 5 | 5 |
| | Sr.J. Dickran M. Tevrizian, Jr. | MDL-1475 | In re Heritage Bonds Litigation | 2 | 9 |
| | D.J. Stephen V. Wilson | MDL-1745 | In re Live Concert Antitrust Litigation | 22 | 22 |
| CAN | D.J. Saundra Brown Armstrong | MDL-1781 | In re Cintas Corp. Overtime Pay Arbitration Litigation | 71 | 71 |
| | D.J. Saundra Brown Armstrong | MDL-1809 | In re Terminix Employment Practices Litigation | 2 | 2 |
| | D.J. Charles R. Breyer | MDL-1699 | In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation | 1,520 | 1,704 |
| | D.J. Charles R. Breyer | MDL-1793 | In re International Air Transportation Surcharge Antitrust Litigation | 100 | 101 |
| | D.J. Jeremy D. Fogel | MDL-1257 | In re Cable News Network and Time Magazine "Operation Tailwind" Litigation | 1 | 8 |
| | D.J. Jeremy D. Fogel | MDL-1654 | In re Compression Labs, Inc, Patent Litigation | 10 | 10 |
| | D.J. Phyllis J. Hamilton | MDL-1486 | In re Dynamic Random Access Memory (DRAM) Antitrust Litigation | 42 | 44 |
| | D.J. Martin J. Jenkins | MDL-1648 | In re Rubber Chemicals Antitrust Litigation | 10 | 13 |
| | D.J. Marilyn Hall Patel | MDL-1369 | In re Napster, Inc., Copyright Litigation | 1 | 19 |
| | D.J. Marilyn Hall Patel | MDL-1770 | In re Wells Fargo Home Mortgage Overtime Pay Litigation | 4 | 4 |
| | C.J. Vaughn R. Walker | MDL-1606 | In re Deep Vein Thrombosis Litigation | 53 | 78 |
| | C.J. Vaughn R. Walker | MDL-1791 | In re National Security Agency Telecommunications Records Litigation | 48 | 48 |
| | D.J. James Ware | MDL-1527 | In re Cisco Systems, Inc., Securities & Derivative Litigation | 1 | 2 |
| | D.J. James Ware | MDL-1665 | In re Acacia Media Technologies Corp. Patent Litigation | 22 | 22 |
| | D.J. Claudia Wilken | MDL-1819 | In re Static Random Access Memory (SRAM) Antitrust Litigation | 25 | 25 |
| | D.J. Jeffrey S. White | MDL-1761 | In re Ditropan XL Antitrust Litigation | 6 | 6 |
| | D.J. Ronald M. Whyte | MDL-1423 | In re Cygnus Telecommunications Technology, LLC, Patent Litigation | 15 | 30 |
| | D.J. Ronald M. Whyte | MDL-1754 | In re Apple iPod nano Products Liability Litigation | 8 | 8 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| CAS | D.J. Roger T. Benitez | MDL-1806  In re Morgan Stanley & Co., Inc., Overtime Pay Litigation (No. II) | 10 | 10 |
| | D.J. Napoleon A. Jones, Jr. | MDL-1296  In re Alliance Equipment Lease Program Securities Litigation | 1 | 27 |
| | D.J. Jeffrey T. Miller | MDL-1751  In re Jamster Marketing Litigation | 5 | 5 |
| | C.J. Robert H. Whaley (WAE) | MDL-1405  In re California Wholesale Electricity Antitrust Litigation | 5 | 30 |
| CO | D.J. Robert E. Blackburn | MDL-1788  In re Qwest Communications International, Inc., Securities & "ERISA" Litigation (No. II) | 30 | 30 |
| | D.J. Wiley Y. Daniel | MDL-1743  In re American Family Mutual Insurance Co. Overtime Pay Litigation | 2 | 2 |
| CT | Sr.J. Alfred V. Covello | MDL-1568  In re Parcel Tanker Shipping Services Antitrust Litigation | 7 | 18 |
| | D.J. Alvin W. Thompson | MDL-1463  In re Xerox Corp. Securities Litigation | 22 | 22 |
| | D.J. Stefan R. Underhill | MDL-1542  In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation | 15 | 15 |
| | D.J. Stefan R. Underhill | MDL-1631  In re Publication Paper Antitrust Litigation | 28 | 31 |
| | D.J. Stefan R. Underhill | MDL-1642  In re Polychloroprene Rubber (CR) Antitrust Litigation | 9 | 9 |
| | D.J. Stefan R. Underhill | MDL-1649  In re Helicopter Crash Near Wendle Creek, British Columbia, on August 8, 2002 | 4 | 4 |
| DC | D.J. John D. Bates | MDL-1772  In re Series 7 Broker Qualification Exam Scoring Litigation | 20 | 20 |
| | C.J. Thomas F. Hogan | MDL-1285  In re Vitamin Antitrust Litigation | 4 | 84 |
| | C.J. Thomas F. Hogan | MDL-1290  In re Lorazepam & Clorazepate Antitrust Litigation | 2 | 14 |
| | C.J. Thomas F. Hogan | MDL-1686  In re Iraq and Afghanistan Detainees Litigation | 4 | 4 |
| | D.J. Ellen Segal Huvelle | MDL-1792  In re InPhonic, Inc., Wireless Phone Rebate Litigation | 15 | 15 |
| | D.J. Name Withheld | UNDER SEAL | 2 | 30 |
| | D.J. Richard J. Leon | MDL-1515  In re Nifedipine Antitrust Litigation | 6 | 10 |
| | D.J. Richard J. Leon | MDL-1668  In re Federal National Mortgage Association Securities, Derivative & "ERISA" Litigation | 7 | 18 |
| | D.J. James Robertson | MDL-1796  In re Department of Veterans Affairs (VA) Data Theft Litigation | 3 | 3 |
| | D.J. Ricardo M. Urbina | MDL-1798  In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation | 3 | 3 |
| DE | D.J. Joseph J. Farnan, Jr. | MDL-1717  In re Intel Corp. Microprocessor Antitrust Litigation | 74 | 74 |
| | D.J. Gregory M. Sleet | MDL-1660  In re PharmaStem Therapeutics, Inc., Patent Litigation | 6 | 6 |
| FLM | D.J. Henry Lee Adams, Jr. | MDL-1698  In re American General Life & Accident Insurance Co. Retiree Benefits "ERISA" Litigation | 80 | 80 |
| | D.J. Anne C. Conway | MDL-1769  In re Seroquel Products Liability Litigation | 342 | 342 |
| | D.J. James S. Moody, Jr. | MDL-1626  In re Accutane Products Liability Litigation | 24 | 29 |
| | Sr.J. Harvey E. Schlesinger | MDL-1624  In re GMAC Insurance Management Corp. Overtime Pay Litigation | 2 | 2 |
| | D.J. James D. Whittemore | MDL-1656  In re CP Ships Ltd. Securities Litigation | 7 | 7 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| FLS | D.J. Federico A. Moreno | MDL-1334 In re Managed Care Litigation | 6 | 123 |
| GAN | D.J. Thomas W. Thrash, Jr. | MDL-1804 In re Stand 'n Seal Products Liability Litigation | 13 | 13 |
| GAS | C.J. William T. Moore, Jr. | MDL-1677 In re NovaStar Home Mortgage Inc. Mortgage Lending Practices Litigation | 3 | 3 |
| IAS | Sr.J. Ronald E. Longstaff | MDL-1733 In re Teflon Products Liability Litigation | 22 | 22 |
| ILN | Sr.J. Marvin E. Aspen | MDL-1425 In re Aimster Copyright Litigation | 11 | 11 |
| | Sr.J. Marvin E. Aspen | MDL-1715 In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation | 318 | 322 |
| | D.J. Elaine E. Bucklo | MDL-1784 In re McDonald's French Fries Litigation | 10 | 10 |
| | D.J. David H. Coar | MDL-1536 In re Sulfuric Acid Antitrust Litigation | 7 | 7 |
| | D.J. David H. Coar | MDL-1783 In re JP Morgan Chase & Co. Securities Litigation | 3 | 3 |
| | D.J. Mark R. Filip | MDL-1818 In re Citifinancial Services Incorporated Prescreened Offer Litigation | 5 | 5 |
| | D.J. Robert W. Gettleman | MDL-1350 In re Trans Union Corp. Privacy Litigation | 14 | 15 |
| | Sr.J. John F. Grady | MDL-986 In re "Factor VIII or IX Concentrate Blood Products" Products Liability Litigation | 103 | 356 |
| | Sr.J. John F. Grady | MDL-1521 In re Wireless Telephone 911 Calls Litigation | 10 | 10 |
| | Sr.J. John F. Grady | MDL-1703 In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation | 6 | 7 |
| | Sr.J. George W. Lindberg | MDL-1773 In re Air Crash Near Athens, Greece, on August 14, 2005 | 7 | 7 |
| | D.J. Charles R. Norgle, Sr. | MDL-1604 In re Ocwen Federal Bank FSB Mortgage Servicing Litigation | 64 | 65 |
| | D.J. Amy J. St. Eve | MDL-1778 In re Ocean Financial Corp. Prescreening Litigation | 5 | 5 |
| | D.J. James B. Zagel | MDL-899 In re Mortgage Escrow Deposit Litigation | 1 | 75 |
| | D.J. James B. Zagel | MDL-1392 In re General Motors Corporation Vehicle Paint Litigation (No. III) | 2 | 3 |
| ILS | C.J. G. Patrick Murphy | MDL-1562 In re General Motors Corp. Dex-Cool Products Liability Litigation | 6 | 11 |
| | C.J. G. Patrick Murphy | MDL-1748 In re Profiler Products Liability Litigation | 4 | 4 |
| INN | D.J. Rudy J. Lozano | MDL-1767 In re H&R Block Mortgage Corp. Prescreening Litigation | 3 | 3 |
| | C.J. Robert L. Miller, Jr. | MDL-1700 In re FedEx Ground Package System, Inc., Employment Practices Litigation (No. II) | 36 | 42 |
| INS | D.J. Sarah E. Barker | MDL-1373 In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation | 23 | 819 |
| | D.J. David F. Hamilton | MDL-1313 In re AT&T Corp. Fiber Optic Cable Installation Litigation | 35 | 35 |
| | D.J. John D. Tinder | MDL-1727 In re COBRA Tax Shelters Litigation | 3 | 3 |
| KS | C.J. John W. Lungstrum | MDL-1468 In re Universal Service Fund Telephone Billing Practices Litigation | 63 | 68 |
| | C.J. John W. Lungstrum | MDL-1616 In re Urethane Antitrust Litigation | 30 | 30 |
| | D.J. Kathryn H. Vratil | MDL-1721 In re Cessna 208 Series Aircraft Products Liability Litigation | 7 | 7 |

| District | Judge | Litigation | MDL No. / Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| LAE | D.J. Eldon E. Fallon | MDL-1355 In re Propulsid Products Liability Litigation | 362 | 474 |
| | D.J. Eldon E. Fallon | MDL-1657 In re Vioxx Marketing, Sales Practices and Products Liability Litigation | 8,538 | 8,530 |
| | D.J. Martin L.C. Feldman | MDL-1371 In re Monumental Life Insurance Company Industrial Life Insurance Litigation | 11 | 14 |
| | D.J. Martin L.C. Feldman | MDL-1390 In re Life Insurance Co. of Georgia Industrial Life Insurance Litigation | 112 | 133 |
| | D.J. Martin L.C. Feldman | MDL-1395 In re Western & Southern Life Insurance Co. Industrial Life Insurance Litigation | 7 | 8 |
| | D.J. Sarah S. Vance | MDL-1643 In re Educational Testing Service PLT 7-12 Test Scoring Litigation | 31 | 31 |
| MA | D.J. Nancy Gertner | MDL-1354 In re Citigroup, Inc., Capital Accumulation Plan Litigation | 6 | 16 |
| | D.J. Nancy Gertner | MDL-1753 In re Standard Automotive Corp. Retiree Benefits "ERISA" Litigation | 2 | 2 |
| | Sr.J. Edward F. Harrington | MDL-1143 In re Mutual Life Insurance Company of New York Premium Litigation | 3 | 23 |
| | D.J. Patti B. Saris | MDL-1456 In re Pharmaceutical Industry Average Wholesale Price Litigation | 18 | 116 |
| | D.J. Patti B. Saris | MDL-1629 In re Neurontin Marketing, Sales Practices and Products Liability Litigation | 50 | 209 |
| | D.J. Patti B. Saris | MDL-1713 In re Bank of America ATM Fee Litigation | 3 | 3 |
| | D.J. Richard G. Stearns | MDL-1430 In re Lupron Marketing and Sales Practices Litigation | 2 | 17 |
| | D.J. Joseph L. Tauro | MDL-1790 In re Volkswagen and Audi Warranty Extension Litigation | 6 | 6 |
| | D.J. Joseph L. Tauro | MDL-1820 In re Webloyalty.com, Inc., Marketing and Sales Practices Litigation | 4 | 4 |
| | D.J. Douglas P. Woodlock | MDL-1543 In re Carbon Black Antitrust Litigation | 1 | 16 |
| | D.J. Douglas P. Woodlock | MDL-1704 In re M3Power Razor System Marketing & Sales Practices Litigation | 1 | 26 |
| | D.J. Rya W. Zobel | MDL-1380 In re Xcelera.com Inc. Securities Litigation | 2 | 20 |
| | D.J. Rya W. Zobel | MDL-1461 In re Shell Oil Products Co. Dealer Franchise Litigation | 1 | 3 |
| MD | D.J. Catherine C. Blake | MDL-1421 In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation | 2 | 19 |
| | D.J. Catherine C. Blake | MDL-1539 In re Royal Ahold N.V. Securities & "ERISA" Litigation | 37 | 37 |
| | D.J. Andre M. Davis | MDL-1110 In re Second Chance Body Armor, Inc., Advertising Litigation | 2 | 9 |
| | D.J. Andre M. Davis | MDL-1518 In re Allegheny Energy, Inc., Securities Litigation | 2 | 17 |
| | C.J. Benson Everett Legg | MDL-1387 In re ProteGen Sling and Vesica System Products Liability Litigation | 8 | 584 |
| | D.J. J. Frederick Motz | MDL-1332 In re Microsoft Corp. Windows Operating Systems Antitrust Litigation | 2 | 116 |
| | D.J. J. Frederick Motz, D.J. Andre M. Davis and D.J. Catherine C. Blake | MDL-1586 In re Mutual Funds Investment Litigation | 423 | 437 |
| ME | D.J. D. Brock Hornby | MDL-1532 In re New Motor Vehicles Canadian Export Antitrust Litigation | 30 | 31 |
| MIE | C.J. Bernard A. Friedman | MDL-1718 In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation | 39 | 40 |
| | D.J. Gerald E. Rosen | MDL-1725 In re Delphi Corp. Securities, Derivative & "ERISA" Litigation | 24 | 25 |
| | D.J. Gerald E. Rosen | MDL-1749 In re General Motors Corp. Securities & Derivative Litigation | 5 | 5 |

| District | Judge | Litigation | Pending Number of Actions | Total Number of Actions |
|---|---|---|---|---|
| MN | D.J. Michael J. Davis | MDL-1431  In re Baycol Products Liability Litigation | 1,392 | 9,044 |
| | D.J. Donovan W. Frank | MDL-1708  In re Guidant Corp. Implantable Defibrillators Products Liability Litigation | 1,200 | 1,212 |
| | Sr.J. Paul A. Magnuson | MDL-1328  In re Monosodium Glutamate Antitrust Litigation | 1 | 14 |
| | Sr.J. Paul A. Magnuson | MDL-1724  In re Viagra Products Liability Litigation | 65 | 70 |
| | C.J. James M. Rosenbaum | MDL-1726  In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation | 966 | 966 |
| | D.J. John R. Tunheim | MDL-1396  In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation | 30 | 57 |
| MOE | D.J. Jean C. Hamilton | MDL-1702  In re Air Crash Near Kirksville, Missouri, on October 19, 2004 | 6 | 11 |
| | Sr.J. Stephen N. Limbaugh | MDL-1672  In re Express Scripts, Inc., Pharmacy Benefits Management Litigation | 9 | 12 |
| | D.J. Catherine D. Perry | MDL-1811  In re LLRice 601 Contamination Litigation | 59 | 59 |
| | D.J. Rodney W. Sippel | MDL-1736  In re Celexa and Lexapro Products Liability Litigation | 32 | 32 |
| MOW | D.J. Richard E. Dorr | MDL-1786  In re H&R Block, Inc., Express IRA Marketing Litigation | 21 | 21 |
| NCE | Sr.J. W. Earl Britt | MDL-1132  In re Exterior Insulation Finish System (EIFS) Products Liability Litigation | 1 | 109 |
| NCM | C.J. James A. Beaty, Jr. | MDL-1622  In re Cotton Yarn Antitrust Litigation | 9 | 9 |
| NCW | C.J. Richard L. Voorhees | MDL-1516  In re Polyester Staple Antitrust Litigation | 17 | 36 |
| NH | D.J. Paul J. Barbadoro | MDL-1335  In re Tyco International, Ltd., Securities, Derivative and "ERISA" Litigation | 13 | 101 |
| NJ | Sr.J. Harold A. Ackerman | MDL-1687  In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II) | 5 | 5 |
| | C.J. Garrett E. Brown, Jr. | MDL-1471  In re Compensation of Managerial, Professional and Technical Employees Antitrust Litigation | 4 | 4 |
| | C.J. Garrett E. Brown, Jr. | MDL-1663  In re Insurance Brokerage Antitrust Litigation | 41 | 42 |
| | D.J. Stanley R. Chesler | MDL-1658  In re Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation | 2 | 35 |
| | D.J. Stanley R. Chesler | MDL-1777  In re SFBC International, Inc., Securities & Derivative Litigation | 1 | 14 |
| | Sr.J. Dickinson R. Debevoise | MDL-1337  In re Holocaust Era German Industry, Bank & Insurance Litigation | 2 | 59 |
| | D.J. Joseph A. Greenaway, Jr. | MDL-1419  In re K-Dur Antitrust Litigation | 1 | 44 |
| | Sr.J. John C. Lifland | MDL-1384  In re Gabapentin Patent Litigation | 15 | 17 |
| | Sr.J. John C. Lifland | MDL-1479  In re Neurontin Antitrust Litigation | 22 | 22 |
| | D.J. Jose L. Linares | MDL-1730  In re Hypodermic Products Antitrust Litigation | 7 | 8 |
| | D.J. William J. Martini | MDL-1763  In re Human Tissue Products Liability Litigation | 136 | 136 |
| | D.J. Jerome B. Simandle | MDL-1514  In re Electrical Carbon Products Antitrust Litigation | 1 | 25 |
| | Sr.J. William H. Walls | MDL-1292  In re Cendant Corporation Securities Litigation | 3 | 18 |
| | D.J. Susan D. Wigenton | MDL-1550  In re IDT Corp. Calling Card Terms Litigation | 4 | 5 |
| | D.J. Freda L. Wolfson | MDL-1799  In re Vonage Initial Public Offering (IPO) Securities Litigation | 15 | 15 |

Page 6

| District | Judge | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| NV | D.J. Kent J. Dawson | MDL-1619  In re Musha Cay Litigation | 3 | 3 |
| | Sr.J. Lloyd D. George | MDL-1357  In re NOS Communications, Inc., Billing Practices Litigation | 7 | 8 |
| | C.J. Philip M. Pro | MDL-1566  In re Western States Wholesale Natural Gas Antitrust Litigation | 3 | 30 |
| | C.J. Philip M. Pro | MDL-1735  In re Wal-Mart Wage and Hour Employment Practices Litigation | 23 | 25 |
| NYE | D.J. Carol Bagley Amon | MDL-1775  In re Air Cargo Shipping Services Antitrust Litigation | 82 | 82 |
| | D.J. Raymond J. Dearie | MDL-1613  In re Nigeria Charter Flights Contract Litigation | 13 | 14 |
| | D.J. John Gleeson | MDL-1575  In re Visa/MasterCard Antitrust Litigation | 6 | 8 |
| | D.J. John Gleeson | MDL-1720  In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | 51 | 51 |
| | Sr.J. Thomas C. Platt, Jr. | MDL-799  In re Air Disaster at Lockerbie, Scotland, on December 21, 1988 | 37 | 297 |
| | Sr.J. Charles P. Sifton | MDL-1689  In re Air Crash Near Woodbury, Connecticut, on December 20, 2002 | 8 | 8 |
| | Sr.J. David G. Trager | MDL-1738  In re Vitamin C Antitrust Litigation | 10 | 10 |
| | Sr.J. Jack B. Weinstein | MDL-381  In re "Agent Orange" Products Liability Litigation | 4 | 627 |
| | Sr.J. Jack B. Weinstein | MDL-1596  In re Zyprexa Products Liability Litigation | 1,720 | 1,722 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| NYS | Sr.J. Harold Baer, Jr. | MDL-1661  In re Rivastigmine Patent Litigation | 4 | 5 |
| | D.J. Deborah A. Batts | MDL-1714  In re Rhodia S.A. Securities Litigation | 4 | 4 |
| | D.J. Richard A. Berman | MDL-1628  In re Pineapple Antitrust Litigation | 6 | 10 |
| | D.J. Charles L. Brieant | MDL-1368  In re High Pressure Laminate Antitrust Litigation | 12 | 37 |
| | D.J. Charles L. Brieant | MDL-1508  In re Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation | 6 | 18 |
| | D.J. Richard C. Casey | MDL-1570  In re Terrorist Attacks on September 11, 2001 | 22 | 23 |
| | D.J. Denise Cote | MDL-1487  In re WorldCom, Inc., Securities & "ERISA" Litigation | 28 | 177 |
| | D.J. Paul A. Crotty | MDL-1794  In re Novartis Wage and Hour Litigation | 2 | 2 |
| | D.J. George B. Daniels | MDL-1379  In re Literary Works in Electronic Databases Copyright Litigation | 2 | 5 |
| | Sr.J. Kevin Thomas Duffy | MDL-1443  In re America Online, Inc., Community Leaders Litigation | 3 | 3 |
| | Sr.J. Thomas P. Griesa | MDL-1336  In re Abercrombie & Fitch Co. Securities Litigation | 20 | 20 |
| | Sr.J. Thomas P. Griesa | MDL-1644  In re Elevator and Escalator Antitrust Litigation | 4 | 25 |
| | D.J. Alvin K. Hellerstein | MDL-1230  In re Philip Services Corporation Securities Litigation | 1 | 24 |
| | D.J. Richard J. Holwell | MDL-1771  In re "A Million Little Pieces" Litigation | 11 | 11 |
| | D.J. Barbara S. Jones | MDL-1291  In re Omeprazole Patent Litigation | 6 | 22 |
| | D.J. Lewis A. Kaplan | MDL-1348  In re Rezulin Products Liability Litigation | 991 | 1,865 |
| | D.J. Lewis A. Kaplan | MDL-1653  In re Parmalat Securities Litigation | 16 | 16 |
| | Sr.J. John F. Keenan | MDL-1484  In re Merrill Lynch & Co., Inc., Research Reports Securities Litigation | 22 | 176 |
| | Sr.J. John F. Keenan | MDL-1789  In re Fosamax Products Liability Litigation | 108 | 108 |
| | Sr.J. Shirley Wohl Kram | MDL-1495  In re Enterprise Mortgage Acceptance Co., LLC, Securities Litigation | 2 | 13 |
| | Sr.J. Shirley Wohl Kram | MDL-1500  In re AOL Time Warner Inc. Securities & "ERISA" Litigation | 57 | 72 |
| | Sr.J. Shirley Wohl Kram | MDL-1739  In re Grand Theft Auto Video Game Consumer Litigation (No. II) | 7 | 7 |
| | Sr.J. Shirley Wohl Kram | MDL-1744  In re Marsh & McLennan Companies, Inc., Securities Litigation | 10 | 10 |
| | D.J. Gerard E. Lynch | MDL-1472  In re Global Crossing Ltd. Securities and "ERISA" Litigation | 5 | 89 |
| | D.J. Gerard E. Lynch | MDL-1630  In re Global Crossing Limited Securities Litigation | 1 | 9 |
| | Sr.J. Lawrence M. McKenna | MDL-1529  In re Adelphia Communications Corp. Securities & Derivative Litigation (No. II) | 71 | 71 |
| | D.J. Colleen McMahon | MDL-1695  In re Veeco Instruments Inc. Securities Litigation | 13 | 13 |
| | D.J. Colleen McMahon | MDL-1755  In re Bayou Hedge Funds Investment Litigation | 7 | 7 |
| | Sr.J. Richard Owen | MDL-1688  In re Pfizer Inc. Securities, Derivative & "ERISA" Litigation | 30 | 30 |
| | Sr.J. Richard Owen | MDL-1706  In re Doral Financial Corp. Securities Litigation | 24 | 24 |
| | D.J. William H. Pauley III | MDL-1409  In re Currency Conversion Fee Antitrust Litigation | 5 | 34 |
| | D.J. Loretta A. Preska | MDL-1659  In re Nortel Networks Corp. Securities Litigation | 28 | 29 |
| | D.J. Loretta A. Preska | MDL-1780  In re Digital Music Antitrust Litigation | 30 | 30 |
| | D.J. Jed S. Rakoff | MDL-1598  In re Ephedra Products Liability Litigation | 625 | 840 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| NYS (cont.) | D.J. Jed S. Rakoff | MDL-1740  In re Canon U.S.A., Inc., Digital Cameras Products Liability Litigation | 3 | 4 |
| | D.J. Shira Ann Scheindlin | MDL-1358  In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | 147 | 159 |
| | D.J. Shira Ann Scheindlin | MDL-1428  In re Ski Train Fire in Kaprun, Austria, on November 11, 2000 | 14 | 27 |
| | D.J. Shira Ann Scheindlin | MDL-1554  In re Initial Public Offering (IPO) Securities Litigation | 393 | 511 |
| | Sr.J. John E. Sprizzo | MDL-1153  In re Bennett Funding Group, Inc., Securities Litigation (No. II) | 29 | 66 |
| | Sr.J. John E. Sprizzo | MDL-1499  In re South African Apartheid Litigation | 13 | 14 |
| | Sr.J. John E. Sprizzo | MDL-1584  In re Federal Home Loan Mortgage Corp. Securities & Derivative Litigation (No. II) | 6 | 8 |
| | D.J. Sidney H. Stein | MDL-1603  In re OxyContin Antitrust Litigation | 58 | 58 |
| | D.J. Sidney H. Stein | MDL-1696  In re Sierra Wireless, Inc., Securities Litigation | 9 | 9 |
| | Sr.J. Robert W. Sweet and Sr.J. John F. Keenan* | MDL-1448  In re Air Crash at Belle Harbor, New York, on November 12, 2001 | 344 | 365 |
| | | * Judge Keenan is assigned to actions in which Judge Sweet is recused. | | |
| OHN | D.J. Peter C. Economus | MDL-1561  In re Travel Agent Commission Antitrust Litigation | 2 | 3 |
| | D.J. James S. Gwin | MDL-1481  In re Meridia Products Liability Litigation | 2 | 125 |
| | Sr.J. David A. Katz | MDL-1742  In re Ortho Evra Products Liability Litigation | 507 | 515 |
| | D.J. Donald C. Nugent | MDL-1488  In re Ford Motor Co. Panther Platform/Fuel Tank Design Products Liability Litigation | 4 | 31 |
| | D.J. Kathleen McDonald O'Malley | MDL-1401  In re Sulzer Orthopedics Inc. Hip Prosthesis and Knee Prosthesis Products Liability Litigation | 4 | 434 |
| | D.J. Kathleen McDonald O'Malley | MDL-1490  In re Commercial Money Center, Inc., Equipment Lease Litigation | 34 | 38 |
| | D.J. Kathleen McDonald O'Malley | MDL-1535  In re Welding Fume Products Liability Litigation | 4,186 | 11,436 |
| OHS | D.J. Gregory L. Frost | MDL-1638  In re Foundry Resins Antitrust Litigation | 14 | 19 |
| | Sr.J. James L. Graham | MDL-1565  In re National Century Financial Enterprises, Inc., Investment Litigation | 21 | 22 |
| | D.J. Edmund A. Sargus, Jr. | MDL-1315  In re SmarTalk TeleServices, Inc., Securities Litigation | 21 | 21 |
| OKW | D.J. Stephen P. Friot | MDL-1564  In re Farmers Insurance Co., Inc., FCRA Litigation | 9 | 12 |
| OR | Sr.J. Robert E. Jones | MDL-1439  In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation | 3 | 12 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| PAE | C.J. Harvey Bartle III | MDL-1203  In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation | 2,626 | 20,006 |
| | D.J. Ronald L. Buckwalter | MDL-1014  In re Orthopedic Bone Screw Products Liability Litigation | 1 | 3,085 |
| | D.J. Ronald L. Buckwalter | MDL-1741  In re Isolagen, Inc., Securities & Derivative Litigation | 5 | 5 |
| | D.J. Stewart Dalzell | MDL-1682  In re Hydrogen Peroxide Antitrust Litigation | 1 | 33 |
| | D.J. Legrome D. Davis | MDL-1684  In re Plastics Additives Antitrust Litigation (No. II) | 9 | 9 |
| | St.J. Jan E. DuBois | MDL-1261  In re Linerboard Antitrust Litigation | 10 | 20 |
| | St.J. John P. Fullam | MDL-1782  In re Pharmacy Benefit Managers Antitrust Litigation | 6 | 6 |
| | D.J. James T. Giles | MDL-875  In re Asbestos Products Liability Litigation (No. VI) | 35,378 | 111,259 |
| | D.J. Bruce W. Kauffman | MDL-969  In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation | 8 | 14 |
| | D.J. Mary A. McLaughlin | MDL-1712  In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation | 15 | 15 |
| | St.J. Louis H. Pollak | MDL-1817  In re CertainTeed Corp. Roofing Shingle Products Liability Litigation | 9 | 9 |
| | D.J. Timothy J. Savage | MDL-1675  In re ACE Limited Securities Litigation | 4 | 4 |
| | D.J. Timothy J. Savage | MDL-1768  In re Methyl Methacrylate (MMA) Antitrust Litigation | 18 | 18 |
| | D.J. Richard Barclay Surrick | MDL-1426  In re Automotive Refinishing Paint Antitrust Litigation | 62 | 63 |
| PAM | D.J. Thomas I. Vanaskie | MDL-1556  In re Pressure Sensitive Labelstock Antitrust Litigation | 11 | 11 |
| PAW | C.J. Donetta W. Ambrose | MDL-1091  In re Metropolitan Life Insurance Co. Sales Practices Litigation | 6 | 148 |
| | D.J. Gary L. Lancaster | MDL-1674  In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation | 6 | 6 |
| SC | St.J. Solomon Blatt, Jr. | MDL-1595  In re Electrical Receptacle Products Liability Litigation | 1 | 9 |
| | D.J. Cameron McGowan Currie | MDL-1429  In re American General Life & Accident Insurance Co. Industrial Life Insurance Litigation | 69 | 135 |
| | D.J. David C. Norton | MDL-1785  In re Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation | 113 | 114 |
| | St.J. Matthew J. Perry, Jr. | MDL-865  In re Showa Denko K.K. L-Tryptophan Products Liability Litigation (No. II) | 1 | 973 |
| TNE | C.J. Curtis L. Collier | MDL-1552  In re UnumProvident Corp. Securities, Derivative & "ERISA" Litigation | 23 | 28 |
| TNM | C.J. Todd J. Campbell | MDL-1760  In re Aredia and Zometa Products Liability Litigation | 209 | 210 |
| | St.J. John T. Nixon | MDL-1537  In re Nortel Networks Corp. "ERISA" Litigation | 6 | 6 |
| TNW | D.J. J. Daniel Breen | MDL-1551  In re Reciprocal of America (ROA) Sales Practices Litigation | 13 | 13 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| TXE | D.J. Leonard E. Davis | MDL-1512  In re Electronic Data Systems Corp. Securities & "ERISA" Litigation | 4 | 29 |
| | D.J. T. John Ward | MDL-1530  In re Fleming Companies Inc. Securities & Derivative Litigation | 10 | 22 |
| TXN | C.J. A. Joe Fish | MDL-1578  In re UICI "Association-Group" Insurance Litigation | 15 | 28 |
| | D.J. Sidney A. Fitzwater | MDL-1214  In re Great Southern Life Insurance Company Sales Practices Litigation | 1 | 25 |
| TXS | D.J. Vanessa D. Gilmore | MDL-1646  In re Testmasters Trademark Litigation | 1 | 6 |
| | D.J. Melinda Harmon | MDL-1422  In re Waste Management, Inc. Securities Litigation | 1 | 7 |
| | D.J. Melinda Harmon | MDL-1446  In re Enron Corp. Securities, Derivative & "ERISA" Litigation | 129 | 196 |
| | D.J. Lynn N. Hughes | MDL-1609  In re Service Corporation International Securities Litigation | 1 | 4 |
| | D.J. Janis Graham Jack | MDL-1810  In re MERSCORP Inc., et al., Real Estate Settlement Procedures Act (RESPA) Litigation | 19 | 19 |
| UT | D.J. Dale A. Kimball | MDL-1546  In re Medical Waste Services Antitrust Litigation | 1 | 8 |
| VAE | D.J. Leonie M. Brinkema | MDL-1705  In re Xybernaut Corp. Securities Litigation | 10 | 10 |
| WAW | D.J. Barbara Jacobs Rothstein | MDL-1407  In re Phenylpropanolamine (PPA) Products Liability Litigation | 402 | 3,365 |
| WVS | D.J. Joseph R. Goodwin | MDL-1477  In re Serzone Products Liability Litigation | 16 | 177 |
| WY | C.J. William F. Downes | MDL-1293  In re Natural Gas Royalties Qui Tam Litigation | 75 | 83 |

# U.S. District Court
## Southern District of Florida (Ft. Lauderdale)
## CIVIL DOCKET FOR CASE #: 0:07-cv-60428-JIC

Troiano v. Menu Foods, Inc. et al
Assigned to: Judge James I. Cohn
Demand: $5,000,000
Cause: 28:1332 Diversity-Property Damage

Date Filed: 03/26/2007
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Christina Troiano**                    represented by **James Lee Davidson**
Lerach Coughlin Stoia Geller Rudman
& Robbins LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
561-750-3000
Fax: 561-750-3364
Email: jdavidson@lerachlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence M. Kopelman**
Kopelman & Blankman
350 E Las Olas Boulevard
Suite 980
Fort Lauderdale, FL 33301
954-462-6855
Fax: 462-6899
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Jeffrey Geller**
Lerach Coughlin Stoia Geller Rudman
& Robbins
120 E Palmetto Park Road
Suite 500
Boca Raton, FL 33432
561-750-3000
Fax: 561-750-3364
Email: pgeller@lerachlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart Andrew Davidson**
Lerach Coughlin Stoia Geller Rudman
& Robbins
120 East Palmetto Park Road
Suite 500

Boca Raton, FL 33432
561-750-3000
Fax: 750-3364
Email: sdavidson@lerachlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Menu Foods, Inc.**

**Defendant**

**Menu Foods Income Fund**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/26/2007 | 1 | COMPLAINT against Menu Foods, Inc., Menu Foods Income Fund Filing fee $ 350. Receipt#: 539659, filed by Christina Troiano.(ls) (Entered: 03/26/2007) |
| 03/26/2007 | 2 | Summons Issued as to Menu Foods, Inc.. (ls) (Entered: 03/26/2007) |
| 03/26/2007 | 3 | Summons Issued as to Menu Foods Income Fund. (ls) (Entered: 03/26/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/28/2007 13:46:34 | | |
| **PACER Login:** | mw0078 | **Client Code:** 060228-00001/91103 |
| **Description:** | Docket Report | **Search Criteria:** 0:07-cv-60428-JIC |
| **Billable Pages:** | 1 | **Cost:** 0.08 |

MAGISTRATE JUDGE
SNOW

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **07-60428**    CIV-COHN

CHRISTINA TROIANO, Individually and On
Behalf of All Others Similarly Situated,

                       **JURY TRIAL DEMAND**

          Plaintiff,

vs.

MENU FOODS, INC. and MENU FOODS
INCOME FUND,

          Defendants.

_____/

FILED BY
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.-FT.L.
2007 MAR 26 PM 1:1

**CLASS ACTION COMPLAINT**

Plaintiff Christina Troiano ("Plaintiff"), individually and on behalf of all others similarly

situated, files this Class Action Complaint against Defendants Menu Foods, Inc., a New Jersey

Corporation and Menu Foods Income Fund, a foreign corporation (collectively "Defendants") and

alleges as follows:

## I.    INTRODUCTION

1.     This is a class action lawsuit brought on behalf of Plaintiff and others similarly

situated who purchased pet food and pet food products produced, manufactured and/or distributed by

Defendants that caused injury, illness, and/or death to Plaintiff's household pets.

2.     Defendants are the leading North American private label/contract manufacturer

of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty

retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger,

PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food

products to or for Proctor & Gamble, Inc. Defendants produce hundreds of millions of containers

of pet food annually.

3.      Defendants designed, manufactured, marketed, advertised and warranted their pet food products. In conjunction with each sale, Defendants marketed, advertised and warranted that the Products were fit for the ordinary purpose for which such goods were used – consumption by household pets – and were free from defects. Defendants produce the pet food products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. The pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiff and purchasers in Florida and the United States and fed to their pets.

4.      Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on her own behalf and as a representative of a class of persons consisting of all persons in the United States who purchased, or incurred damages by using pet food produced manufactured and/or distributed by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007. The pet food products referenced in this paragraph will hereinafter be referred to as the "Products."

5.      As a result of the defective Products, Plaintiff and members of the Class have suffered damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or own pet food and pet food products that they would not otherwise have bought had they known such products were defective.

6.      Defendants know and have admitted that certain of the Products produced by the Defendants between December 3, 2006 and March 6, 2007 are defective and causing injury and death to household pets, and on March 16, 2007, initiated a recall of some of the Products. Further, the Food and Drug Administration has reported that as many as one in six animals died in tests of the Products by Defendants last month after the Defendants received complaints the products were

2

poisoning pets around the country. A spokeswoman for the New York State Department of Agriculture and Markets has said that rodent poison was determined to have been mixed into the Products by Defendants.

## II.    PARTIES

7.    Plaintiff is a resident of Broward County, Florida who, in early March of 2007, purchased Iams Select Bytes Cat Food from a Publix grocery store in Deerfield Beach, Florida. The Iams Select Bytes Cat Food purchased by Plaintiff is a part of the group of Products that were produced, manufactured and/or distributed by Defendants.

8.    Defendant Menu Foods, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.

9.    Defendant Menu Foods, Inc. is ultimately owned or controlled by Defendant Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant Menu Foods, Inc.'s high managerial officers or agents with substantial authority are also high managerial officers or agents of Defendant Menu Foods Income Fund.

10.    Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of the Class the Products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

12.    Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L. 109-2 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. In this judicial district, Plaintiff purchased the recalled pet food products made by Defendants, and her household pets ate and consumed the Products.  Thousands of other consumers – including other members of the Class – purchased the Products in this judicial district from retailers that Defendants, their agents, affiliates, or others controlled or were in privity with. In turn, retailers or others sold the Products to the general public, including Plaintiff, and members of the Class. The Products were purchased for consumption by the pets of Plaintiff and the other members of the Class. Defendants made or caused these products to be offered for sale and sold to the public, including Plaintiff.

### IV.    SUBSTANTIVE ALLEGATIONS

#### Defendants and their Defective Pet Food

13.    Defendants are in the business of manufacturing, producing, distributing, and/or selling pet food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet

Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Winn Dixie. Defendants has manufactured or produced pet food for private labels for aproximately17 of the 20 leading retailers in the United States.

14.    Defendants' business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride - Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Winn Dixie, and Your Pet.

15.    Defendants produce millions of pouches or containers of pet food products each year, a substantial portion of which are sold or offered for sale in Florida. Upon information and belief, Defendants have sold, either directly or indirectly, thousands of units of defective pet food and pet food products nationwide and in the State of Florida.

16.    Defendants manufactured, marketed, advertised, warranted and sold, either directly or through their authorized distribution channels, the Products that caused Plaintiff's damages. Plaintiff and members of the Class have been or will be forced to pay for damages caused by the defect in Defendants' Products.

**Factual Allegations Related to Plaintiff**

17.    In early March, 2007, Plaintiff purchased Iams Select Bytes Cat Food pet food from a national chain grocery store, Publix, operating in Deerfield Beach, Florida.

18.    Over the course of the next few weeks, Plaintiff fed the cat food to her two cats, Angel and Piescat. Towards the end of that period, Plaintiff began noticing that her cats were not eating much of the Defendants' product, and that the cats were leaving large pools of urine in their litter box with little or no bowel movements.

19.    On or about March 16, 2007, Defendants announced a recall of approximately 42 brands of "cuts and gravy style dog food, all produced by the Defendants between December 3, 2006 and March 6, 2007." Defendants had initially received complaints from consumers as far back as February 20, 2007 indicating that certain of Defendants' pet food was causing kidney failure and death in dogs and cats. Unfortunately, Plaintiff and the Class were not made aware of this recall for several more days.

20.    On March 20, 2007, following another few days of unusual behavior from her cats, Plaintiff took her cats to the veterinarian. The veterinarian advised Plaintiff that both of her cats were suffering from kidney failure directly and proximately caused by the cat food. One of the Plaintiff's cats, Angel, died shortly thereafter, while the other cat, Piescat, remains at a veterinary hospital receiving treatment.

21.    Thereafter, Plaintiff learned about the recall and the potential problems that could occur from feeding the Products to her pets. Prior to the recall, Defendants never warned Plaintiff or any other member of the Class that the Products would cause their pets to have health problems. As referenced above, Defendants knew about the risks of injury or death at least one month prior to the time that Plaintiff fed the Products to her cat.

6

22.    As a result of their purchases of the Products, as set forth above, Plaintiff and other members of the Class have suffered and will suffer damages, including consequential and incidental damages, such as the loss and disability of their household pets, costs of purchasing the Products and replacing it with a safe product, including sales tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendants, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## V.    CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action on her own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.[1]

24.    Numerosity: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate

---

[1]    See Canon 3.C(3)(a) of the Code of Conduct for United States Judges.

discovery, Plaintiffs believe and therefore aver that there are thousands of Class members throughout the United States.

25.     Commonality:  There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

(a)     Whether Defendants sold pet food and pet food products that were recalled or subject to a recall.

(b)     Whether Defendants advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members.

(c)     Whether Defendants expressly warranted these products.

(d)     Whether Defendants purported to disclaim any express warranty.

(e)     Whether Defendants purported to disclaim any implied warranty.

(f)     Whether any limitation on warranty fails to meet its essential purpose.

(g)     Whether Defendants intended that the Products be purchased by Plaintiff, Class members, or others.

(h)     Whether Defendants intended or foresaw that Plaintiff, class members, or others would feed the Products to their pets.

(i)     Whether Defendants recalled the pet food products.

(j)     Whether Defendants was negligent in manufacturing or processing the Products.

(k)     Whether using the Products as intended - to feed their pets - resulted in loss, injury, damage, or damages to the Class.

(l)     Whether Defendants' negligence proximately caused loss or injury to damages.

(m)    Whether Class members suffered direct losses or damages,

(n)    Whether Class members suffered indirect losses or damages.

(o)    Whether Defendants' acts or practices violated the Florida Deceptive and Unfair Trade Practices Acts.

26.    Typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that all such claims arise out of Defendants' conduct in manufacturing, producing and entering into the stream of commerce defective pet food and pet food products, Defendants' conduct surrounding the recall of its product, and Plaintiff's and Class Members' purchase and use of Defendants' products. Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

27.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

28.    Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact (identified in paragraph 25 above) predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issue in this action is whether Defendants' pet food and pet food products are defective and have caused damages to Plaintiff and the members of the Class. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods

for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

29.     The undersigned counsel for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

30.     Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Breach of Implied Warranty

31.     Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

32.     Defendants manufactured, marketed, sold and distributed the Products.

33.     At the time that Defendants marketed, sold, and distributed the Products, Defendants knew of the purpose for which the Products were intended and impliedly warranted that the Products were of merchantable quality and safe and fit fur such use.

34.     Plaintiff reasonably relied upon the skill, superior knowledge and judgment of the Defendants as to whether the Products were of merchantable quality and safe and fit for its intended use.

35.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff could not have known about the risks and side effects associated with the Products until after ingestion by Plaintiff's cats.

36.    Contrary to such implied warranty, the Products were not of merchantable quality and were not safe or fit for their intended use.

37.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered damages as alleged herein.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

## SECOND CAUSE OF ACTION

### Breach of Express Warranty

38.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

39.    Defendants expressly warranted that the Products were safe for consumption by pets.

11

40.    The Products did not conform to these express representations because the Products are not safe and cause serious side effects in pets, including death.

41.    As a direct and proximate result of the breach of said warranties, and as the direct and legal result of the defective condition of the Products as manufactured and/or supplied by Defendants, and other wrongdoing of Defendants described herein, Plaintiff was caused to suffer damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### THIRD CAUSE OF ACTION

#### Negligence

42.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

43.    Defendants owed Plaintiff a duty to only offer safe, non-contaminated products for consumption by household pets.

12

44.     Through its failure to exercise the due care, Defendants breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was unhealthy to the Plaintiff's pets.

45.     Additionally, Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the Products from being offered for sale, sold, or fed to pets.

46.     Defendants knew or, in the exercise of reasonable care should have known, that the Products presented an unacceptable risk to the pets of the Plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

47.     As a direct and proximate result of Defendants' above-referenced negligence, Plaintiff and has suffered loss and damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)     Awarding actual and consequential damages;

(c)     Granting injunctive relief;

(d)     For pre- and post-judgment interest to the Class, as allowed by law;

(e)     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)     Granting such other and further relief as is just and proper.

13

## FOURTH CAUSE OF ACTION

### Strict Product Liability

48.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

49.    Defendants are producers, manufacturers and/or distributors of the Products.

50.    The Products produced, manufactured and/or distributed by Defendants were defective in design or formulation in that, when the Products left the hands of the Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

51.    Defendants' Products were expected to and did reach the Plaintiff without substantial change in condition.

52.    Alternatively, the Products manufactured and/or supplied by Defendants were defective in design or formulation, in that, when they left the hands of the Defendants, they were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other pet food products without concomitant accurate information and warnings accompanying the product for the Plaintiff to rely upon.

53.    The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results of same.

54.    The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from the Products, Defendants failed to immediately provide adequate warnings to the Plaintiff and the public.

55.    As the direct and legal result of the defective condition of the Products as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### FIFTH CAUSE OF ACTION

#### Unjust Enrichment

56.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

57.    As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages.  Defendants profited and benefited form the sale of the Products, even as the Products caused Plaintiff to incur damages.

58.    Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of

Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that she expected would be safe and healthy for her cats and instead has had to now endure the death of one of her beloved pets and the hospitalization of the other.

59.     By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

(b)     Awarding reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

(c)     For pre- and post-judgment interest to the Class, as allowed by law;

(d)     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

(e)     Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff and the Class demands a jury trial on all issues triable by a jury.

DATED:  March 26, 2007

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
*pgeller@lerachlaw.com*
STUART A. DAVIDSON
Florida Bar No. 84824
*sdavidson@lerachlaw.com*
JAMES L. DAVIDSON
Florida Bar No. 072371
*jdavidson@lerachlaw.com*


STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)


KOPELMAN & BLANKMAN
LAWRENCE KOPELMAN
Florida Bar No. 288845
*lmk@kopelblank.com*
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL  33301
Telephone: 954/462-6855
954/462-6899 (fax)

Attorneys for Plaintiff and the Class

I:\Pot Lit 2007\Menu Foods\Complaint FINAL.doc

17

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CHRISTINA TROIANO, Individually and on Behalf of all Others Similarly Situated | MENU FOODS, INC. and MENU FOODS INCOME FUND |

**CIV - COHN**
**MAGISTRATE JUDGE**
**SNOW**

**07-60428**

(b)  County of Residence of First Listed Plaintiff   Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Camden
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809 (Phone: 561-750-3000)

Attorneys (If Known)

(d) Check County Where Action Arose:  ☐ MIAMI-DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

**O:07CV 60428-JIC-SS**

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES  (Place an "X" in One Box for Plaintiff and One Box for Defendant)  (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☑ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case  ☐ YES  ☑ NO      b) Related Cases  ☐ YES  ☑ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC §1332 and subsection (d); Class Action Fairness Act of 2005; 28 USC §1367 and 1391

LENGTH OF TRIAL via _5_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD    DATE  3/26/07

FOR OFFICE USE ONLY
AMOUNT  350.00    RECEIPT #  539659    IFP

# U.S. District Court
## United States District Court for the Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00411-RSM

Whaley v. Menu Foods et al
Assigned to: Hon. Ricardo S Martinez
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/19/2007
Jury Demand: None
Nature of Suit: 195 Contract Product Liability
Jurisdiction: Diversity

**Plaintiff**

**Tom Whaley**
*individually and on behalf of all others similarly situated*

represented by **Michael David Myers**
MYERS & COMPANY
1809 7TH AVE
STE 700
SEATTLE, WA 98101
206-398-1188
Fax: FAX 398-1189
Email: mmyers@myers-company.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Menu Foods**
*a foreign corporation*

**Defendant**

**The Iams Company**
*a foreign corporation*

**Defendant**

**Dog Food Producers Numbers 1-50**

**Defendant**

**Cat Food Producers 1-40**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2007 | 1 | CLASS ACTION COMPLAINT against defendant(s) Menu Foods, The Iams Company, Dog Food Producers Numbers 1-50, Cat Food Producers 1-40 (Summons(es) issued)(Receipt #: SEA8079), filed by Tom Whaley. (Attachments: # 1 Civil Cover Sheet)(DJ) Modified on 3/21/2007 (DJ). (Entered: 03/21/2007) |

| PACER Service Center |
|---|

| Transaction Receipt | | | |
|---|---|---|---|
| 03/27/2007 13:22:39 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 2:07-cv-00411-RSM |
| Billable Pages: | 1 | Cost: | 0.08 |

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 1 9 2007    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| TOM WHALEY individually and on behalf of all others similarly situated, <br><br>        Plaintiff, <br><br>    vs. <br><br> MENU FOODS, a foreign corporation, THE IAMS COMPANY, a foreign corporation, DOG FOOD PRODUCERS NUMBERS 1-50 and CAT FOOD PRODUCERS 1-40, <br><br>       Defendants. | No. CV7 0411 M <br><br> CLASS ACTION COMPLAINT <br><br>  <br> 07-CV-00411-CMP |

Plaintiff Tom Whaley, by and through his undersigned attorneys, Myers & Company, P.L.L.C., brings this civil action for damages on behalf of himself and all others similarly situated against the above-named Defendants and complains and alleges as follows:

## I.    NATURE OF ACTION

1.1    Mr. Whaley brings this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food

CLASS ACTION COMPLAINT - 1

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1  which was produced by any of the above-named defendants and/or has had a dog or cat become

2  ill as a result of eating the food.

3      1.2    The defendants are producers and distributors of, *inter alia,* dog and cat food.

4  Menu Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba and

5  Science Diet. Menu Foods distributes its dog and cat food throughout the United States to

6  retailers such as Wal-Mart, Kroger and Safeway.

7      1.3    Dog and cat food which the defendants produced has caused an unknown number

8  of dogs and cats to become ill and die.

9

10     1.4    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

11  food which are causing dogs and cats to become ill. All recalled food to date is of the "cuts and

12  gravy wet" style.

13     1.5    As a result of the Defendants' actions Mr. Whaley and other Class members have

14  suffered emotional and economic damage.

15                      **II.    PARTIES**

16     2.1    Plaintiff Tom Whaley has at all material times been a resident of Ontario, Oregon.

17     2.2    Defendant Menu Foods is, upon information and belief, a corporation organized

18  under the laws of Canada which transacts business in Washington State and Oregon State.

19     2.3    Defendant The Iams Company, is upon information and belief, a foreign

20  corporation which transacts business in Washington State and Oregon State.

21

22                 **III.    JURISDICTION AND VENUE**

23     3.1    Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

24  Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds

25

CLASS ACTION COMPLAINT - 2

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1  $75,000.00. This court has supplemental jurisdiction over the state law claims pursuant to 28

2  U.S.C. § 1367.

3       3.2    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because

4  the Defendants systematically and continuously sold their product within this district and

5  Defendants transact business within this district.

6               **IV.   CLASS ACTION ALLEGATION**

7       4.1    Mr. Whaley brings this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2)

8  and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class (the

9  "Class") composed of all persons who purchased any dog or cat food which was produced by the

10 defendants and/or has had a dog or cat become ill as a result of eating the food. Mr. Whaley

11 reserves the right to modify this class definition prior to moving for class certification.

12      4.2    This action has been brought and may be properly maintained as a class action

13 pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

14         a.    The Class is ascertainable and there is a well-defined community of

15 interest among the members of the Class;

16         b.    Membership in the Class is so numerous as to make it impractical to bring

17 all Class members before the Court. The identity and exact number of Class members is

18 unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that

19 Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to pets.

20         c.    Mr. Whaley's claims are typical of those of other Class members, all of

21 whom have suffered harm due to Defendants' uniform course of conduct.

22         d.    Mr. Whaley is a member of the Class.

23

24

25

CLASS ACTION COMPLAINT - 3

e.    There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3).  The common issues include, but are not limited to, the following:

i.    Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

ii.    Were the defendants' representations regarding the safety of the dog and cat food false?

iii.    Did the defendants' dog and cat food cause Mr. Whaley and other Class members' pets to become ill?

iv.    Were Mr. Whaley and other Class members damaged?

f.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.    Mr. Whaley will fairly and adequately protect the interests of the Class in that Mr. Whaley has no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent himself and the Class;

h.    Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if

CLASS ACTION COMPLAINT - 4

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1    any, Class members could afford to seek legal redress individually for the wrongs Defendants

2    have committed against them;

3          j.      This action will foster an orderly and expeditious administration of Class

4    claims, economies of time, effort and expense, and uniformity of decision;

5          k.      Inferences and presumptions of materiality and reliance are available to

6    obtain class-wide determinations of those elements within the Class claims, as are accepted

7    methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants'

8    common liability, the Court can efficiently determine the claims of the individual Class

9
10    members;

11          l.      This action presents no difficulty that would impede the Court's

12    management of it as a class action, and a class action is the best (if not he only) available means

13    by which members of the Class can seek legal redress for the harm caused them by Defendants.

14          m.      In the absence of a class action, Defendants would be unjustly enriched

15    because they would be able to retain the benefits and fruits of their wrongful conduct.

16          4.3      The Claims in this case are also properly certifiable under applicable law.

17              **V.      STATEMENT OF FACTS**

18          5.1      Plaintiff Tom Whaley was the owner of a female cat named Samoya.

19          5.2      Mr. Whaley purchased Iams brand cuts and gravy wet-style cat food from Wal-

20    Mart for Samoya to consume.

21          5.3      Samoya ate the Iams brand cuts and gravy wet-style cat food between December

22    2006 and February 2007.

23

24

25

CLASS ACTION COMPLAINT - 5

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

5.4    Samoya became extremely ill and Mr. Whaley took her to a veterinarian who informed him that Samoya had suffered kidney failure, also known as acute renal failure. Samoya had to be euthanized.

5.5    In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure, also known as acute renal failure.

5.6    The Iams brand cuts and gravy wet-style cat food that Samoya consumed between December 2006 and February 2007 is one of the brands that Menu Foods recalled.

5.7    As a result of Defendants' acts and omissions Mr. Whaley and other Class members have suffered emotional and economic damage.

## VI.    CAUSES OF ACTION

A.    <u>Breach of Contract</u>

6.1    Plaintiff realleges all prior allegations as though fully stated herein.

6.2    Plaintiff and Class members purchased pet food produced by the defendants based on the understanding that the food was safe for their pets to consume.

6.3    The pet food produced by the defendants was not safe for pets to consume and caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of contract.

6.4    As a result of the breach Plaintiffs and Class members suffered damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

CLASS ACTION COMPLAINT - 6

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B.    Unjust Enrichment

6.5    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.6    Defendants were and continue to be unjustly enriched at the expense of Mr. Whaley and other Class members.

6.7    Defendants should be required to disgorge this unjust enrichment.

C.    Unlawful, Deceptive and Unfair Business Practices

6.8    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.9    Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

6.10    Defendants' sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

6.11    As a result of Defendants' unfair or deceptive acts or practices Mr. Whaley and other class members suffered injuries in an amount to be proven at trial.

D.    Breach of Warranties

6.12    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.13    Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

6.14    Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

6.15    Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

CLASS ACTION COMPLAINT - 7

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

6.16    Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

6.17    As a proximate result of the aforementioned wrongful conduct and breach, Mr. Whaley and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

E.    Negligent Misrepresentation

6.18    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.19    Defendants owed Mr. Whaley and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

6.20    Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

6.21    In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

6.22    Mr. Whaley and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

6.23    As a proximate cause of Defendants' false representations Mr. Whaley and other Class members suffered damages in an amount to be proven at trial.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Whaley and Class members request that the Court enter an order of judgment against Defendants including the following:

A.    Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

CLASS ACTION COMPLAINT - 8

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B.      Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with defendants and their acts or omissions) and such other relief as provided by the statutes cited herein;

C.      Prejudgment and post-judgment interest on such monetary relief;

D.      Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

E.      Other appropriate injunctive relief;

F.      The costs of bringing this suit, including reasonable attorneys' fees; and

G.      Such other relief as this Court may deem just, equitable and proper.

DATED this 19th day of March, 2007.

MYERS & COMPANY, P.L.L.C.

Attorneys for Plaintiffs and Class members


By:    /s/ Michael David Myers
       Michael David Myers
       WSBA No. 22486
       Myers & Company, P.L.L.C.
       1809 Seventh Avenue, Suite 700
       Seattle, Washington 98101
       Telephone: (206) 398-1188
       Facsimile: (206) 400-1112
       E-mail: mmyers@myers-company.com

CLASS ACTION COMPLAINT - 9

# U.S. District Court (Live Database)
## U.S. District Court - Eastern District of Tennessee (Knoxville)
## CIVIL DOCKET FOR CASE #: 3:07-cv-00094

Holt v. Menu Foods Inc.
Assigned to: Honorable Thomas W Phillips
Referred to: Magistrate C Clifford Shirley
Cause: 28:1391 Personal Injury

Date Filed: 03/19/2007
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Lizajean Holt**

represented by **A James Andrews**
A. James Andrews, Attorney at Law
905 Locust Street
Knoxville, TN 37902
865-660-3993
Fax: 865-523-4623
Email: andrewsesq@icx.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole Bass**
905 Locust Street
Knoxville, TN 37902
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Perry A Craft**
Craft & Sheppard
214 Centerview Drive
Suite 233
Brentwood, TN 37027
615-309-1707
Fax: 615-309-1717
Email:
perrycraft@craftsheppardlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Menu Foods Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2007 | 1 | COMPLAINT against Menu Foods Inc. (Filing fee $ 350), filed by Lizajean Holt. (Phillips/Shirley)(RLK) (Entered: 03/20/2007) |

Case 2:07-cv-00734-DSC    Document 5    Filed 05/31/2007    Page 72 of 155

| 03/19/2007 | | Filing fee: $ 350, receipt number K3004752 (RLK) (Entered: 03/20/2007) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/27/2007 16:24:16 | | | |
| **PACER Login:** | mw0078 | **Client Code:** | 060228-00001/91103 |
| **Description:** | Docket Report | **Search Criteria:** | 3:07-cv-00094 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| LIZAJEAN HOLT, | ) | |
| | ) | |
| Individually, and on behalf of similarly situated persons, | ) | |
| | ) | No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Class action |
| | ) | |
| MENU FOODS, INC., | ) | JURY DEMAND |
| | ) | CLASS ACTION |
| Defendant. | ) | |

CLASS ACTION COMPLAINT

**I. Class Action**

1. Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendant for offering for sale and **selling** to Plaintiff and Class members pet food and food products – "cut and gravy" pet products – formally **recalled** on March 16, 2007. Defendant is a corporation doing business and operating in the United States. Defendant recalled cat and dog food products that are sold under numerous brands by several national chain stores in Tennessee and other States in the United States. The pet food products were produced by Defendant(s), a private label manufacturer, labeled by the Defendant, and then distributed and ultimately sold to Plaintiff, Class Members, and others. Defendant issued or caused to be issued a press release announcing the recall, and the United States Food and Drug Administration issued a press release the same day. These pet food products were intended to be placed in the stream of commerce and distributed and offered for sale

and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their

pets, cats and dogs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and

subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005);

and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391

and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving

rise to the claim occurred in this judicial district, or a substantial part of property that is

the subject of the action is situated in this judicial district.

4. In this judicial district, Plaintiff purchased the recalled pet food product made

by or for Defendant, and her pet ate or consumed it.   Thousands of other

consumers/customers – including Plaintiff and other Class Members – purchased the

recalled or contaminated products in this judicial district from retailers that Defendant, its

agents, affiliates, or others it or they controlled sold or made available to them.  In turn,

retailers or others sold these recalled products to the general public, including Plaintiff,

Class members and other purchasers. These products were purchased for consumption by

the pets of Plaintiff and the Class members.  Defendant made or caused these products to

be offered for sale and sold to the public, including Plaintiff.

5. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as

well.

## III. Plaintiff

6.  At all times material hereto, Plaintiff Lizajean Holt was and is a citizen of the State of Tennessee and the United States and resides in Knox County, Tennessee.

**IV. Plaintiff's Purchase(s)/Defendant's Recall**

7.  Plaintiff purchased recalled brands of Pet Pride and Iams pet food from a national chain grocery store, Kroger, operating in Knox County, Tennessee.  Kroger, like other retailers, did not alter the product produced by the Defendant in any way prior to selling it to Tennessee consumers and other consumers throughout the United States.

8.  Without knowing that Defendants would recall the product after it was offered for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet.  Her pet became lethargic and began drinking large amounts of water and Plaintiff discontinued feeding the Defendant's products to her cat prior to the recall notice. Plaintiff and thousands of other consumers will now face veterinary bills to have their pets evaluated for kidney damage.

9.  Before her purchase, Defendant never warned Plaintiff that the pet food product that she purchased for feeding her pet may or would cause it have health problems or concerns or that she would have to take her pet to a veterinarian due to a health concern relating to or resulting from the tainted pet food.

10.  On or on about March 16, 2007, Defendant issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States.

11.  Defendant's business consists substantially of providing private label pet foods at its plants or pet foods under other brands, not its own.  In turn, Defendant's

3

products are sold under a variety of labels or brands listed on its website as of March 17,

2007 and set forth below.

12.  The product that Plaintiff purchased at a Kroger in Knoxville was a product

recalled by Defendant.

13.  After Plaintiff purchased the pet food and fed it to her cat, she learned about

the recall and the actual or potential problems and concerns from purchasing and feeding

the product to her pet.

14.  Plaintiff bought the product(s) for their intended purposes: to feed her pet.

15.  Defendant placed these pet products in the stream of commerce in Tennessee

and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the

general public would feed these products to their pets.

**V. Defendant, Its Business, and the Recall**

16.  At all times material hereto, Defendant Menu Foods, Inc. was and is a New

Jersey corporation with its principal place of business in the State of New Jersey,

specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.  Defendant is

ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal

entity.  Some of Defendant's high managerial or officers or agents with substantial

authority are also high managerial officers or agents of Menu Foods Income Group.

Defendant may be served through the Secretary of State for Tennessee or as provided by

law.

17.  Defendant Menu Foods, Inc. owns, controls, is related to or an affiliate of a

firm with plants where the pet food is manufactured or processed that are located in the

United States.  These plants are located in Emporia, Kansas and, Pennsauken, New

4

Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

18. Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc. It produces hundreds of millions of containers of pet food annually.

19. Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

20. Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

21. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion,

Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn Dixie, and Your Pet.

     22.  On Defendant's website as of March 17, 2007, it listed by brands, the size of the container or pouch, the dates of manufacture, and the products subject to recall. Thus, each container or pouch and size of each brand or label listed – subject to the recall above – was noted specifically on its web site.  Thus, a 3 ounce can or pouch of Pet Pride Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC" number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled. The other brands also generally listed numerous separate pouches or containers bearing the major private label or brand with a further sub-description similar to the manner described above, by brand or label.

     23.  After reports or complaints from pet owners about symptoms – such as vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports of deaths of certain pets, from or through its Canadian office or affiliation, Defendant caused or issued a recall of certain specified pet products, reportedly totaling between 40 and 60 million cans.

     24.  Defendant also advised a governmental agency of the United States about the recall and certain events leading to the recall, namely the Food and Drug Administration (FDA).

25. Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee or for Tennesseans who purchase the products for their pets. Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets.

26. Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee to Tennesseans who purchase and buy them for their pets for consumption by their pets in the State of Tennessee and in this judicial district.

27. Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in Tennessee and this judicial district, including a significant or substantial part of the recalled pet food.

28. Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

29. Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

30. Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

7

31. Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

32. In the last few days, Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006 and concluding about March 6, 2007.

33. Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

34. Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

35. Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition.

36. Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

37. There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets. Defendant knew or should have known about the risks and possible injury.

**VI. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

38. As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss,

8

damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sale tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## VII. Breach of Warranties & Remedies

39. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

38. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

40. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

41. Defendant breached the implied warranty of merchantability. In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable. This breach violated the Uniform Commercial Code.

42. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

## VIII. Negligence

9

43. Defendants owed Plaintiff and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

44. Though its failure to exercise due care Defendant owed Plaintiff, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

45. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

46. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiff, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

47. The loss, damage, and injuries were foreseeable.

48. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

**IX. Statutory Unfair or Deceptive Trade Practices Act**

49. Plaintiff, the Class, purchasers, others, and Defendant are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

50. Defendant's offer for sale or sale of their recalled pet food products is in or affects trade or commerce in Tennessee.

51. Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

52. In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

53. Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

54. Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

55. Plaintiffs brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including the ascertainable loss of money or property by each such person.

**X. Rule 23**

56. Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006 up to and including March 6, 2007.

57. Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

58. There are questions of law or fact common to the Class. These common questions include but are not limited to the following:

11

a. Whether Defendant sold pet food products that were recalled or subject to a recall?

b. Whether Defendant advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members?

c. Whether Defendant expressly warranted these products?

d. Whether Defendant impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendant impliedly warranted these products for merchantability?

f. Whether Defendant purported to disclaim any express warranty?

g. Whether Defendant purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendant intended that the pet food products be purchased by Plaintiff, Class members, or others?

j. Whether Defendant intended or foresaw that Plaintiff, class members, or others would feed their pet food products to their pets?

k. Whether Defendant recalled the pet food products?

l. Whether Defendant was negligent in manufacturing or processing the pet food products?

m Whether using the products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class?

n. Whether Defendant's negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses or damages?

p. Whether Class members suffered indirect losses or damages?

12

q. Whether Defendants' acts or practices violated state Deceptive Trade Practices Acts?

59. The claims or defenses of the representative parties are typical of the claims or defenses of the Class.

60. The representative parties will fairly and adequately protect the interests of the Class.

61. Prosecuting separate actions by individual members of the Class would create a risk of <u>either</u> –

a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

d. Plaintiff is unaware of any litigation concerning the controversy already commenced by members of the class;

e. It is desirable to concentrate the litigation of the claims in this forum;

f. No unusual difficulties are likely to be encountered in the management of a class action.

62. The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

63. They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

64. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## XII. Jury Demand

65. The Class demands a jury trial on all issues triable by a jury.

## XIII. Prayer for Relief

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1.  That process issue and Defendant be served.  (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2.  That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3.  That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

4.  That the Court find that Defendant manufactured or processed the pet food products that were sold or offered to sale to Plaintiff and the Class.

5.  That the Court find that Defendant intended Plaintiff and Class members to believe that the pet foods sold were fit and safe for consumption by their pets.

6.  That a trial be held and Defendants be held liable to the Class for -- breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7.  That the Class be awarded an amount sufficient for direct damages occasioned by Defendants' acts and practices.

8.  That the Class be awarded an amount sufficient for indirect, consequential, and incidental damages occasioned by Defendant's acts and practices.

9.  That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Dated:  March 19, 2007.

Respectfully submitted,

/s/ A. James Andrews
A. James Andrews, BPR # 15772
905 Locust Street
Knoxville, Tennessee 37902
(865) 660-3993
Fax: (865) 523-4623

/s/Perry A. Craft
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)


/s/Nichole Bass
Nicole Bass, BPR # 021383
905 Locust Street
Knoxville, Tennessee 37902
(865) 310-6804


Cost Bond

We are sureties for costs not to exceed $1,000.

/s/ A. James Andrews

16

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.0 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:07-cv-01543

Majerczyk v. Menu Foods, Inc.
Assigned to: Honorable Wayne R. Andersen
Demand: $75,000
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/20/2007
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

### Plaintiff

**Dawn Majerczyk**
*individually and on behalf of a class of*
*similarity situated individuals*

represented by **Jay Edelson**
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, IL 60604
(312)913-9400
Email: jay@blimlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Menu Foods, Inc.**
*a New Jersey Corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/20/2007 | 1 | COMPLAINT filed by Dawn Majerczyk; Jury Demand.(gej, ) (Entered: 03/21/2007) |
| 03/20/2007 | 2 | CIVIL Cover Sheet (gej, ) (Entered: 03/21/2007) |
| 03/20/2007 | 3 | ATTORNEY Appearance for Plaintiff Dawn Majerczyk by Jay Edelson. (gej, ) (Entered: 03/21/2007) |
| 03/20/2007 | 5 | SUMMONS Issued as to Defendant Menu Foods, Inc. (gej, ) (Entered: 03/21/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/27/2007 15:28:46 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| | Docket | Search | |

| Description: | Report | Criteria: | 1:07-cv-01543 |
| Billable Pages: | 1 | Cost: | 0.08 |

KC **FILED**

MAR 3 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAWN MAJERCZYK individually and on )
behalf of a class of similarly situated individuals, )
)
)                                                    **07CV1543**
Plaintiff,                      )                    **JUDGE ANDERSEN**
)                                                    **MAGISTRATE JUDGE NOLAN**
v.                                 )
)                                    **Jury Trial Demanded**
MENU FOODS, Inc., a New Jersey Corporation,          )
)
Defendant.                      )
--------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff Dawn Majerczyk brings this class action complaint against defendant Menu

Foods, Inc. ("Menu Foods") to seek redress for herself and all other individuals injured by its sale

of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.      Menu Foods, one of the largest pet food manufacturers in the world, recently

issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.      That recall was issued – belatedly – as a result of evidence that the pet food in

question was contaminated with a potentially lethal agent.

3.      When ingested by an animal, the contaminated pet food can cause immediate

renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its

death.

4.      Menu Foods' actions in selling the contaminated food and failing to issue the

recall sooner were reckless and in breach its duties and warranties to its customers.

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Dawn Majerczyk's cat, as described more fully below.

6.    On behalf of a nationwide class, Majerczyk seeks redress for that misconduct.

## PARTIES

7.    Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

8.    Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principle place of business in New Jersey. It does business throughout the United States, including Cook County, Illinois.

## JURISDICTION

9.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332(d) because (a) plaintiff and numerious members of her putative class are citizens of states different from those of which Menu Foods is a citizen, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

## VENUE

10.    Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

## FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

2

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between Dec. 3, 2006, and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that the pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaint, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational.

### FACTS RELATING TO THE NAMED PLAINTIFF

20.    On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

21.    Menu Foods is the manufacturer of Special Kitty Select Cuts.

22.    On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went into renal failure. Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

23.    Majerczyk incurred over $300 in veterinary expenses relating to the attempts to save Phoenix's life.

24.    Phoenix had been with Majerczyk's family from birth.

25.    The loss was devasting not only to Majerczyk, but also to her seventeen-year-old son and fourteen-year-old daughter as well.

## CLASS ALLEGATIONS.

26.    Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.    Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.    Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

(a)    Did Menu Foods act negligently in failing to prevent the contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

4

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.    Majerczyk will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT 1

### (Breach of Warranties)

31.    Plaintiff incorporates by reference the foregoing allegations.

32.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.    Menu Foods breached the implied warranty of merchantability.

35.    As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

5

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

## COUNT II
### (Negligence)

36.    Plaintiff incorporates by reference the foregoing allegations.

37.    Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.    Menu Foods breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

39.    Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

40.    As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following

relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 20, 2007                    Dawn Majerczyk, individually and on behalf of a
                                  class of similarly situated individuals


                                  _____
                                  one of her attorneys

John Blim
Jay Edelson
Myles McGuire (Of Counsel)
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
(312) 913-9400
(312) 913-9401 (Fax)

7

# U. S. District Court
## Western District of Arkansas (Fayetteville)
### CIVIL DOCKET FOR CASE #: 5:07-cv-05053-JLH

Sims et al v. Menu Foods Income Fund et al
Assigned to: Honorable Jimm Larry Hendren
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/21/2007
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

### Plaintiff
**Charles Ray Sims**
*Individually and on behalf of all others
similarly situated*

represented by **Jason M. Hatfield**
Lundy & Davis, LLP
300 North College Ave.
Suite 309
Fayetteville, AR 72701
(479) 527-3921
Fax: (479) 587-9196
Email: jhatfield@lundydavis.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

### Plaintiff
**Pamela Sims**
*individually and on behalf of all others
similarly situated*

represented by **Jason M. Hatfield**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

V.

### Defendant
**Menu Foods Income Fund**

### Defendant
**Menu Foods Midwest Corporation**

### Defendant
**Menu Foods South Dakota Inc.**

### Defendant
**Menu Foods, Inc.**

### Defendant
**Menu Foods Holdings, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/21/2007 | 1 | COMPLAINT against Menu Foods Holdings, Inc., Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota |

| | | Inc., Menu Foods, Inc. ( Filing fee $ 350 receipt number 5000049.), filed by Charles Ray Sims, Pamela Sims.(ct) (Entered: 03/21/2007) |
|---|---|---|
| 03/21/2007 | | 6 Summons Issued as to Menu Foods Holdings, Inc., Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota Inc., Menu Foods, Inc. and returned to attorney/plaintiff for service (ct) (Entered: 03/21/2007) |
| 03/23/2007 | 2 | Remark copy of complaint and docket sheet sent to MDL (ct) (Entered: 03/23/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/27/2007 15:21:04 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 5:07-cv-05053-JLH |
| Billable Pages: | 1 | Cost: | 0.08 |

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 1 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES RAY SIMS and PAMELA SIMS,** | § | CIVIL ACTION NO. 07-5053 |
| **Individually and on behalf of all others** | § | |
| **similarly situated,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VERSUS** | § | |
| | § | |
| **MENU FOODS INCOME FUND,** | § | |
| **MENU FOODS MIDWEST CORPORATION,** | § | |
| **MENU FOODS SOUTH DAKOTA INC.,** | § | |
| **MENU FOODS, INC., MENU FOODS** | § | |
| **HOLDINGS, INC.,** | § | |
| **Defendants.** | § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, CHARLES RAY SIMS and PAMELA SIMS (hereinafter collectively "Plaintiff," "Plaintiffs", or "SIMS"), major residents in the State of Arkansas, individually and on behalf of all others similarly situated, who file this Class Action Complaint pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), seeking monetary relief for themselves and the class they seek to represent. This suit is brought against MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC., representing as follows:

## GENERAL ALLEGATIONS

1.     This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

## PARTIES, JURISDICTION AND VENUE

4.     Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada.  It is doing business in the State of Arkansas.  Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.     MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

2

6.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or "MENU."

10.    Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food. MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States,

whether measured by number of products produced and sold, revenues, or market capitalization.

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

15.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

16.    Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States.  These consumers compose the putative class in this action and have rights that are substantially the same.

4

17.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

18.    The consumers composing the putative class in this action consist of: (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

19.    The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses of the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

20.    While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

21.    The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a

5

class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action. There would be a failure of justice but for the maintenance of this class action.

## FACTUAL BACKGROUND

23.    Plaintiff's dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product. Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

6

26.    As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

27.    Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers, Arkansas, who performed tests and surgery on the dog.

28.    Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16, 2007.

29.    Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

30.    Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

31.    Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper

7

warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

32.    Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product. As such, said consumers' dogs and cats, including Plaintiff's dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

33.    Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

34.    Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

35.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

36.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, ABBY, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct,

8

in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

37.    As a direct and proximate result of Defendants' negligence as described herein, Plaintiff SIMS sustained damages in the loss of their family pet.

### AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

38.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

39.    Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

40.    Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

41.    As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

42.    Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing,

9

conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

43.    Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

44.    Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

45.    Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

46.    As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

47.    Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be

determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

48. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

49. Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

50. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

51. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

52. The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

53. Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

54.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

   a.    When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

   b.    The Product was insufficiently tested;

   c.    The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

   d.    In light of the potential and actual risk of harm associated with ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

55.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was

expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

56.    At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

57.    As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

58.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

59.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, required reasonable and necessary veterinary treatment and services and incurred expenses for which Plaintiff is entitled to damages, along with the expenses of disposal/burial of the family pet.

60.    As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

61.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant

13

to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

62.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A THIRD CAUSE OF ACTION, SOUNDING IN FRAUD

63.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

64.    At all material times, Defendants were engaged in the business of manufacturing, marketing, distributing, promoting, and selling Defendants' Product.

65.    Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

66.    Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from, consumers, including Plaintiff SIMS, that Defendants' Product was safe when ingested by dogs and cats.    Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

a.    Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

b.    Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

14

c.    Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

d.    Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

67.    Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

68.    Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations that Defendants' Product was safe for its intended purpose were false, as Defendants' Product was, in fact, dangerous to the health of and ultimately fatal to Plaintiff SIMS' dog, ABBY.

69.    Defendants knew that their statements were false, knew of incidents of serious illnesses and deaths in dogs and cats, and knew that their omissions rendered their statements false or misleading.

70.    Further, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Defendants' Product, and failed to disclose that Defendants' Product caused possible death in dogs and cats, among other serious adverse effects.    Defendants also failed to exercise reasonable care in communicating the information concerning Defendants' Product to Plaintiff SIMS, and/or concealed facts that were known to Defendants.

71.    Plaintiff SIMS was not aware of the falsity of the foregoing representations, nor was Plaintiff SIMS aware that one or more material facts concerning the safety of Defendants' Product had been concealed or omitted.

15

72.    In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff SIMS fed Defendants' Product to their dog, ABBY. Had Plaintiff SIMS known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

73.    The reliance by Plaintiff SIMS upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

74.    Plaintiff SIMS was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff SIMS to purchase Defendants' Product.

75.    As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiffs suffered damages as previously alleged herein.

76.    Defendants' conduct in concealing material facts and making the foregoing misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

77.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FOURTH CAUSE OF ACTION, SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTY OF MERCHANTABILITY

78.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

79.    Defendants manufactured, marketed, sold, and distributed Defendants' Product.

80.    At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff SIMS, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

81.    Plaintiff SIMS reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

82.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff SIMS could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff SIMS' dog, ABBY.

83.    Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

84.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff SIMS. suffered damages as previously alleged herein.

85.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at

trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

86.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FIFTH CAUSE OF ACTION
## SOUNDING IN BREACH OF EXPRESS WARRANTY

87.    Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

88.    Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

89.    The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

90.    As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

91.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SIXTH CAUSE OF ACTION
## SOUNDING IN NEGLIGENCE

92.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

93.    Defendants owed a duty to consumers of Defendants' Product, including the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing,

marketing, supplying, distribution and selling Defendants' Product, including a duty to ensure that Defendants' Product did not cause the dogs and cats ingesting the Product to suffer from unreasonable, unknown, and/or dangerous side effects.

94.    Defendants failed to exercise reasonable care in warning about, designing, testing, labeling, manufacture, marketing, selling and/or distributing of Defendants' Product and breached their duties to Plaintiff in that, and not by way of limitation, they did not warn of the known risks associated with the ingestion of Defendants' Product and did not exercise an acceptable standard of care, i.e., what a reasonably prudent manufacturer or seller would have known and warned about.

95.    Moreover, the product lacked sufficient warnings of the hazards and dangers to users of said Product, and failed to provide safeguards to prevent the injuries sustained by Plaintiff's dog, ABBY.    Defendants failed to properly test Defendants' Product prior to its sale, and as a result subjected users to an unreasonable risk of injury when this Product was used as directed and recommended.

96.    Defendants additionally breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff, in part, in the following ways:

    a.    Failed to exercise due care in designing, developing, and manufacturing Defendants' Product so as to avoid the aforementioned risks to individuals using these products;

    b.    Failed to include adequate warnings with Defendants' Product that would alert Plaintiff SIMS and other purchasers to its potential risks and serious side effects;

19

c.    Failed to adequately and properly test Defendants' Product before placing it on the market;

d.    Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.    Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.    Placed an unsafe product into the stream of commerce; and

h.    Was otherwise careless or negligent.

97.    Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants' Product knowing of its unreasonable risks of injury.

98.    Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff SIMS' dog, ABBY, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

99.    Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits

at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

100.    Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff SIMS of the information necessary for them to weigh the true risks of purchasing Defendants' Product against the benefits.

101.    As a direct and proximate result of Plaintiff SIMS' feeding Defendants' Product to their dog, ABBY, Plaintiff SIMS' dog, ABBY, suffered serious health problems and ultimate death.

102.    By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff SIMS' dog, ABBY, to suffer serious health problems and ultimate death.  As a result, the imposition of punitive damages against Defendants is warranted.

103.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, the class of putative plaintiffs pray for relief, in an amount which exceeds the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005, as follows:

    a.    Awarding damages including but not limited to the money expended on Defendants' defective Product, veterinary bills associated with the treatment, testing, and diagnosis resulted from ingestion of the defective Product, disposal fees after death of the pet and the pecuniary value of the pet;

    b.    Awarding punitive damages to Plaintiffs;

    c.    Awarding pre-judgment and post-judgment interest to Plaintiffs,

    d.    Awarding the costs and expenses of this litigation to Plaintiffs,

    e.    Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

    f.    For such further relief as this Court deems necessary, just, and proper.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this civil action.

Dated:  March 21, 2007.

CHARLES RAY SIMS and PAMELA SIMS,
Plaintiffs

LUNDY & DAVIS, L.L.P.
300 N. College Ave., Suite 309
Fayetteville, AR 72701
(479) 527-3921
(479) 587-9196 (fax)
jhatfield@lundydavis.com

By:

Jason M. Hatfield
Ark. Bar No. 97143

Attorneys for Plaintiffs

23

# U. S. District Court
## Western District of Arkansas (Fayetteville)
## CIVIL DOCKET FOR CASE #: 5:07-cv-05055-RTD

Widen et al v. Menu Foods et al
Assigned to: Robert T. Dawson
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/23/2007
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Richard Scott Widen**
*individually and all other persons
similarly situated*

represented by **Jeremy Young Hutchinson**
Patton, Roberts, McWilliams & Capshaw
111 Center Street, Suite 1315
Little Rock, AR 72201
US
501-372-3480
Fax: 501-372-3488
Email: jhutchinson@pattonroberts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barbara Widen**
*individually and all other persons
similarly situated*

represented by **Jeremy Young Hutchinson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
**Menu Foods**

**Defendant**
**Menu Foods Income Fund**

**Defendant**
**Menu Foods Gen Par Limited**

**Defendant**
**Menu Foods Limited Partnership**

**Defendant**
**Menu Foods Operating Partnership**

**Defendant**
**Menu Foods Midwest Corporation**

**Defendant**

**Menu Foods South Dakota**

**Defendant**

**Menu Foods, Inc.**

**Defendant**

**Menu Foods Holdings, Inc.**

**Defendant**

**Wal-Mart Stores, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/23/2007 | 1 | COMPLAINT against Menu Foods Operating Partnership, Menu Foods Midwest Corporation, Menu Foods South Dakota, Menu Foods, Inc., Menu Foods Holdings, Inc., Wal-Mart Stores, Inc., Menu Foods, Menu Foods Income Fund, Menu Foods Gen Par Limited, Menu Foods Limited Partnership ( Filing fee $ 350 receipt number 5000051.), filed by Richard Scott Widen, Barbara Widen.(ct) (Entered: 03/23/2007) |
| 03/23/2007 | | Summons Issued as to Menu Foods Operating Partnership, Menu Foods Midwest Corporation, Menu Foods South Dakota, Menu Foods, Inc., Menu Foods Holdings, Inc., Wal-Mart Stores, Inc., Menu Foods, Menu Foods Income Fund, Menu Foods Gen Par Limited, Menu Foods Limited Partnership and returned to attorney/plaintiff for service (ct) (Entered: 03/23/2007) |
| 03/23/2007 | 2 | Remark copy of complaint and docket sheet sent to MDL (ct) (Entered: 03/23/2007) |
| 03/26/2007 | | CLERK'S NOTICE re Multiple Attorneys Listed on Pleading directed to Plaintiffs Richard Scott Widen, Barbara Widen. Complaint, 1 lists multiple attorneys, Jeremy Hutchinson, Jack Patterson, Richard Adams, James Wyly and Sean Rommel, appearing for the filer. All listed attorneys, other than the attorney signing the pleading, must enter a separate Notice of Appearance in order to receive electronic notification of future activity in the case. TEXT ONLY ENTRY, NO DOCUMENT ATTACHED (ct) (Entered: 03/26/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/27/2007 15:17:13 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 5:07-cv-05055-RTD |
| Billable Pages: | 1 | Cost: | 0.08 |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 23 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

| | |
|---|---|
| RICHARD SCOTT AND BARBARA WIDEN, individually and All others Persons Similarly Situated, ) ) ) ) | Case No. 07-5055 |
| Plaintiffs ) ) | |
| v. ) ) | |
| MENU FOODS; MENU FOODS INCOME FUND; MENU FOODS GEN PAR LIMITED; MENU FOODS LIMITED PARTNERSHIP; MENU FOODS OPERATING PARTNERSHIP; MENU FOODS MIDWEST CORP; MENU FOODS SOUTH DAKOTA; MENU FOODS, INC.; MENU FOODS HOLDINGS, INC.; WAL-MART STORES, INC ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | |

## CLASS ACTION COMPLAINT

Plaintiffs Scott and Barbara Widen through their undersigned counsel, on behalf of themselves and all others similarly situated, upon both personal knowledge and information and belief, alleges as follows:

1.     This class action is brought against Defendants for negligently contaminating the pet food supply making the food unfit for animal consumption and harmful and for purposefully failing to warn consumers of the contaminated pet food. As a result of Defendant's actions, Plaintiff and other similarly situated pet owners have been damaged.

## PARTIES

2.     Plaintiffs Richard and Barbara Widen are a married couple and residents

of Benton County, Arkansas. Plaintiffs lost two cats due to the contaminated food produced, distributed, marketed, and sold by the Defendants.

3.     Defendant, Menu Foods Income Fund (Menu Foods) is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas and has availed themselves of the protections of the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Ark. Code Ann. 16-4-101 and service may be effected through the Hague convention on service abroad of judicial and extrajudicial documents and civil or commercial matters at 8 Falconer Drive, Streetsville, ON, Canada L5N 1B1.

Menu Foods Midwest Corp. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE. Defendant, Menu Foods Holding, Inc., is a Delaware corporation and may be served through it registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware. Menu Foods operates two manufacturing plants in the United States and distributes their pet food products throughout the entire United States including Arkansas.

Defendant, Menu Foods, Inc. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey. Upon information and belief, Defendants Menu Food Midwest Corp., Menu Foods South Dakota Inc., Menu Foods, Inc., and Menu Foods Holdings, Inc., are wholly owned subsidiaries of Menu Foods Income Fund, a business registered in and headquartered in Ontario, Canada. The above listed Defendants are hereinafter referred to collectively as "Defendants" or "Menu Foods"

4.      Defendant Wal-Mart Stores, Inc, (Wal-Mart) is a Delaware corporation headquartered in Bentonville, Arkansas that sells Menu Food products throughout their retail stores in Arkansas and throughout the United States.  Wal-Mart is the single largest distributor of Menu Foods products. Plaintiffs purchased the contaminated pet food at the Wal-Mart store in Bentonville, AR.  Menu Foods produced some brands of pet food exclusively for Wal-Mart under a private label agreement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d)(2).  The matter in controversy exceeds $5,000,000, is a class action and there are members of the proposed Class that are citizens of States different than at least one of the Defendants.

6.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (d).   Defendant Wal-Mart is headquartered in the District. Defendant Menu Foods Income Fund is a foreign corporation headquartered outside the United States and distributes, through retailers such as Wal-Mart, the pet food products in issue in the District.  Additionally, Plaintiffs purchased the tainted pet food in the District.

## FACTS

7.      Defendant, Menu Foods told the U. S. Food and Drug Administration, that they had become aware of the contamination on February 20, 2007.  Menu Foods believed that the contamination came from their supplier of Wheat Gluten.  Defendant, Menu Foods conducted test to determine if the contamination was harmful to pets on February 27, 2007. The results of the test resulted in death to one out of every six pets who consumed the contaminated pet food.

8.    Defendants Menu Foods and Wal-Mart did nothing to prevent the distribution of the contaminated pet food until weeks after the discovery occurred. This action, or lack thereof, permitted and caused additional harm to thousands of pet owners in Arkansas and throughout the country.

9.    Plaintiffs owned two cats that were very healthy middle aged cats. The two cats were named "Fred" and "Grinch." Plaintiffs fed the two cats "Special Kitty" cat food which was made by Menu Foods exclusively for Wal-Mart under a private label agreement.

10.    Beginning around February, 2007, Plaintiffs noticed that both cats were acting differently and had begun to lose weight. In a tragic irony, Plaintiff forced the cats to eat more of the contaminated pet food, unaware that the pet food was contaminated and the cause of the poor health.

11.    On March 18, 2007, Plaintiff was finally made aware through the media that a recall had been issued for the pet food by the Defendant, Menu Foods and that the pet food could cause kidney failure and other symptoms that were being experienced by the Plaintiffs' cats. On March 19, 2007, Plaintiffs took their cats to their veterinarian for examination. That same day, the veterinarian ran some tests and informed the Plaintiffs that both cats were suffering from kidney failure due to the consumption of the contaminated pet food. The veterinarian suggested that the only chance of survival for the cats was a very expensive procedure in which the likelihood of success was very small.

12.    The veterinarian diagnosed the kidney failure to be the result of the cats

consumption of contaminated pet food.  The veterinarian recommended that the Plaintiffs call a

Menu Foods hotline number which she provided to the Plaintiffs.  The hotline had been set up on

or around March 17, 2007, nearly three weeks after Menu Foods had become aware of the

problem. The veterinarian suggested that Menu Foods should pay for the expensive procedure.

13.    The Plaintiffs called the hotline number around a hundred times to determine if

Menu Foods would pay for the procedure and never reached an operator or answering machine.

Finally, out of desperation the Plaintiffs called another number for Menu Foods and left a

message for somebody from Menu Foods to call them.  The message was never returned.

14.    Around 3:30 p.m. on the afternoon of March 19, 2007, Plaintiffs made the

decision that their cats could not suffer any further and euthanized the cats.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs brings all claims as class claims pursuant to Rule 23 of the Federal

Rules of Civil Procedure.  The requirements of Rule 23 are met with respect to the Class defined

below.

16.    Plaintiffs bring their claims on their own behalf, and on behalf of the following

Class:

> All persons in the United States who purchased contaminated pet
> food from Wal-Mart that was produced by Menu Foods.

17.    The Class is so numerous that joinder of the individual members of the proposed

Class is impracticable.  The Class, upon information and belief, includes millions of members.

18.    Questions of law or fact common to the Class exist as to Plaintiff and all Class

Members, and these common questions predominate over any questions affecting only individual

members of the Class.  Among the common questions of law or fact are the following:

    a.    Whether Defendants were negligent in allowing pet food products in the United States to be contaminated with a dangerous ingredient that was not safe for consumption.

    b.    Whether Defendants owed a duty to pet owners by ensuring that the pet food was not contaminated with dangerous ingredients;

    c.    Whether Defendants' conduct amounted to breach of such a duty;

    d.    Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class Members' damages;

    e.    Whether Defendants are responsible for the contamination of the pet food;

    f.    Whether Defendants were negligent per se;

    g.    Whether Defendants are strictly liable;

    h.    Whether Defendants breached their warranty of merchantability.

    i.    Whether Defendants produced, marketed, distributed, and sold a defective product

    j.    Whether Defendants failed to adequately warn consumers of contaminated pet food.

    k.    Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

    l.    Whether Plaintiff and the Class Members are entitled to damages, and, if so, the proper amount of such damages; and

    m.    Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

## COUNT I

### Negligence

19.    Plaintiff incorporates by reference all of the allegations contained above.

20.    Defendants owed a duty to Plaintiff to ensure that the pet food was not contaminated with dangerous and harmful ingredients.

21. Defendants breached that duty by allowing the contamination of the pet food supply with a dangerous and harmful ingredient during the approximate time of time January 2007 to March, 2007.

22. Defendants' actions proximately caused damage to Plaintiff and the Class.

23. Plaintiff and the Class have suffered damages by a loss of property, cost of medical bills, and cost of purchasing new, uncontaminated pet food.

## COUNT II

### Negligence Per Se

24. Plaintiff incorporates by reference all of the allegations contained above.

25. Defendants' acts and/or omissions as described herein constitute negligence per se.

26. Defendants had a duty to ensure that their pet food was produced, transported, marketed, distributed, and sold in a manner consistent with governmental regulations.

27. Defendants breached this duty in violation of regulatory standards.

28. Such breaches directly and proximately caused damages to the Plaintiff and the Class.

29. Plaintiff and the Class have suffered damages due to Defendants failure to conform to the United States Food and Drug Administration regulations.

## COUNT III

### Strict Liability- Defective in Design or Manufacture

30. Plaintiff incorporates by reference all of the allegations contained above.

31.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption and in violation of the Defendants Warranty of Merchantability owed to Plaintiff.

32.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

33.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

34.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## COUNT IV

### Strict Product Liability - Failure to Warn

35.    Plaintiff incorporates by reference all of the allegations contained above.

36.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption.

37.    Defendant failed to warn Plaintiff or Class Members of the dangers on the Defendants' labels or through other means of advertising until after enormous damage had been suffered by the Plaintiffs and the Class Members.

38.    Even after Defendant became aware of the dangerous contamination of its pet food, they still refused to warn the consumers and allowed countless other consumers to purchase the contaminated pet food and suffer great harm.

39.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

40.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

41.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## JURY TRIAL DEMANDED

42.    Plaintiff demands a jury of twelve.

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, request that he and the other Class Members have judgment entered in their favor and against Defendants, as follows:

A.    An order certifying that this action, involving Plaintiff's and the Class Members' separate and distinct claims, be maintained as a nationwide class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their undersigned counsel to represent the Class;

B.    An award, for Plaintiff's and each Class Members' separate and distinct claims, of compensatory damages and pre- and post-judgment interest thereon;

C.    An award for Plaintiff's and the Class Members of punitive damages for reckless and wanton conduct;

    D.    Injunctive relief to prevent further contamination of the American pet food supply; and

    E.    All other appropriate and just relief.

DATED: March 23, 2007        **PATTON, ROBERTS, MCWILLIAMS & CAPSHAW, L.L.P.**

Jeremy Y. Hutchinson

Jeremy Y. Hutchinson
Jack Thomas Patterson II
Stephens Building
111 Center St., Suite 1315
Little Rock, AR 72201
Phone: (501) 372-3480
Fax: (501) 372-3488

Richard Adams
James C. Wyly
Sean F. Rommel
**PATTON, ROBERTS, MCWILLIAMS & CAPSHAW, L.L.P.**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
Phone: (903) 334-7000
Fax: (903) 334-7007

**ATTORNEYS FOR PLAINTIFF**

**U.S. District Court**
**District of New Jersey [LIVE] (Camden)**
**CIVIL DOCKET FOR CASE #: 1:07-cv-01338-NLH-AMD**

WORKMAN et al v. MENU FOODS LIMITED et al
Assigned to: Judge Noel L. Hillman
Referred to: Magistrate Judge Ann Marie Donio
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/23/2007
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**JARED WORKMAN**                            represented by **DONNA SIEGEL MOFFA**
                                             TRUJILLO, RODRIGUEZ &
                                             RICHARDS, LLP
                                             8 KINGS HIGHWAY WEST
                                             HADDONFIELD, NJ 08033
                                             (856) 795-9002
                                             Email: donna@trrlaw.com
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARK COHEN**                               represented by **DONNA SIEGEL MOFFA**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MONA COHEN**                               represented by **DONNA SIEGEL MOFFA**
*on behalf of themselves and all others*     (See above for address)
*similarly situated*                         *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MENU FOODS LIMITED**

**Defendant**

**MENU FOODS INC.**

**Defendant**

**MENU FOODS MIDWEST**
**CORPORATION**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/23/2007 | 1 | COMPLAINT against MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. (Filing fee $350 |

| | | receipt number 1403626.) JURY DEMAND, filed by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Civil Cover Sheet)(sk) (Entered: 03/23/2007) |
|---|---|---|
| 03/23/2007 | 2 | Summons Issued as to MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. Days Due - 20. (sk) (Entered: 03/23/2007) |
| 03/27/2007 | 3 | MOTION to Authorize Service of Process of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Memorandum of Law in Support of Plaintiffs' Motion to Authorize Service of P rocess of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention# 2 Text of Proposed Order)(MOFFA, DONNA) (Entered: 03/27/2007) |
| 03/28/2007 | | Setting Deadlines as to 3 MOTION to Authorize Service of Process of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention. Motion Returnable for 4/20/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 03/28/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/28/2007 13:31:46 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 1:07-cv-01338-NLH-AMD Start date: 1/1/1970 End date: 3/28/2007 |
| Billable Pages: | 1 | Cost: | 0.08 |

TRUJILLO RODRIGUEZ & RICHARDS, LLC
Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
8 Kings Highway West
Haddonfield, NJ  08033
TEL: (856)795-9002
FAX: (856)795-9887

BERGER & MONTAGUE, P.C.
Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs and the Class

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | : : : |
|  | : Civil Action No. _____ |
| Plaintiffs, | : |
|  | : |
| vs. | : |
|  | : |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | : COMPLAINT - CLASS ACTION : JURY TRIAL DEMANDED |
| Defendants, | : |

---

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Jared Workman, and Mark and Mona Cohen, by their attorneys, allege upon

information and belief, the following:

1.    This class action is brought, and these proceedings instituted, to redress the harms

resulting from the manufacture, production, and sale by Menu Foods Limited, Menu Foods Inc.

and Menu Foods Midwest Corporation of dog and cat food marketed under over 90 brand names.

Plaintiffs make the following allegations, except as to the allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, based upon the investigation undertaken by Plaintiffs' counsel, which included, inter alia, review and analysis of Defendant's website, press releases, news articles, and pleadings filed in other suits.

## PRELIMINARY STATEMENT

2.     Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the parent company of Menu Foods Limited issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3.     The recalled pet food that Plaintiffs and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4.     Plaintiffs here seek damages, injunctive relief, attorneys' fees, and costs against Defendants.

2

## PARTIES

5.      Plaintiff Jared Workman resides at 1150 Unit D, Monroe Drive, Boulder, CO, 80303. Plaintiff Workman purchased and fed his cat Iams pet food that was manufactured by Defendants during the Class Period. This cat, named Seth, became ill with kidney disease, was hospitalized, and subsequently died of acute renal failure. In addition to the cost of purchasing the contaminated food, Plaintiff Workman incurred economic costs in connection with the medical treatment and burial of his cat, as well as continuous medical monitoring of his other two cats.

6.      Plaintiffs Mark and Mona Cohen reside at 1415 Brighton Street, Philadelphia, PA 19111. Plaintiffs purchased and fed their dog Iams pet food that was manufactured by Defendants during the Class Period. This dog, named Cookie, subsequently developed symptoms of acute renal failure. In addition to the cost of purchasing the contaminated food, the Cohens incurred economic costs in connection with the medical treatment and damage to personal property caused by their dog's illness.

7.      Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N 1B1. Menu Foods Limited has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

8.      Defendant Menu Foods Inc. is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. Menu Foods Inc. has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Inc. is a wholly-owned subsidiary of Menu Foods Limited and manufactures pet food for distribution in the United States.

3

9.    Defendant Menu Foods Midwest Corporation is a Delaware corporation, with its headquarters at PO Box 1046, 1400 East Logan Ave., Emporia, KS 66801. Menu Foods Midwest Corporation has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Midwest Corporation is a wholly-owned subsidary of Menu Foods Limited and manufactures pet food for distribution in the United States.

10.    The events complained of occurred throughout the United States and in the State of New Jersey.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

12.    Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

## STATEMENT OF FACTS

13.    Defendant Menu Foods Limited purports to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, Menu Foods Limited produced more than one billion containers of pet food.

14.    Defendant Menu Foods Limited is the parent company of, and wholly-owns, both

4

Defendant Menu Foods, Inc. ("MFI"), located in Pennsauken, New Jersey, and Defendant Menu Foods Midwest Corporation ("MFMC"), located in Emporia, Kansas. MFI and MFMC are two of Menu Food Limited's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and sold was free from contamination. More specifically, on March 16, 2007, the parent company of Menu Foods Limited issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Food Limited's facilities - MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.    Reportedly, 60 million cans and pouches of the pet food were recalled.

17.    The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Addendum A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.    Menu Foods Limited acknowledges receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19.    Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian,

said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, 7 animals died. Menu Foods announced its recall weeks later, on March 16, 2007.

20.     The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

21.     To date, there are 15 confirmed death. The FDA expects the death toll to rise.

22.     The FDA said that the investigation is focused on problems with wheat gluten, which Menu Foods Limited said had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

23.     Plaintiff Jared Workman owned a cat named Seth. During December 2006, Plaintiff Workman fed his cat Iams pet food, as well as other brand name cat foods which are now listed on the Company's recall list as contaminated products.

24.     In December 2006, Plaintiff Workman noticed that his cat, Seth, was acting strangely. He was lethargic and eating less than usual. Plaintiff called his cat veterinarian, who came to the house to perform blood work. The vet reported that Seth was dying of kidney failure. Plaintiff Workman then took Seth to an animal hospital in Greeley, Colorado. After several days in the hospital, it became clear that Seth was most likely suffering from acute renal failure. After about one week in the hospital, and despite constant medical treatment, Seth died.

25.     In addition to Plaintiff Workman suffering emotional distress from the loss of his cat, he spent approximately $2,500 in veterinarian bills and burial costs, which was not covered

6

by insurance. In addition, Plaintiff Workman spend almost $300 to have his other two cats

tested, and will incur additional costs to have them continually monitored. In addition to these

costs, Plaintiff Workman has not received any refunds for the cost of the contaminated pet food

that he initially purchased. Finally, he estimates that it will cost him approximately $1,000 to

purchase a new cat.

26.    Plaintiffs Mark and Mona Cohen own an 11 month old dog named Cookie that is

a Yorkie-Bijain mix. Beginning January 2007, the Cohens' dog Cookie became violently ill

with severe vomiting. The Cohens had been feeding Cookie Iams dog food.

27.    In January and February 2007, Cookie's condition worsened and Cookie

developed symptoms of kidney disease, including vomiting, lethargy, excessive thirst, loss of

appetite and dehydration. The Cohens took Cookie to the veterinarian on four separate

occasions, including a midnight visit on February 9, 2007 to a veterinarian emergency room

which required an x-ray at an additional cost of $300.

28.    Although the Cohens' suspected that the Iams food might be involved in Cookie's

condition, they were assured by their salesperson at PetSmart that this was unequivocally not the

case and that Cookie should not be switched to a different dog food. The Cohens, however,

insisted a switch be made, and purchased, at the recommendation of their PetSmart salesperson,

a dog food under the brand name Nutro. Both Iams and Nutro were manufactured and recalled

by Defendants.

29.    Cookie is currently on an anti-nausea medication called Reglin and requires

additional vetrinarian visits and monitoring of her kidney functions.

30.    In addition to suffering emotional distress, the Cohens have incurred the costs of

7

medical bills not covered by their pet insurance, prescription medication bills, damage to their personal property including rugs and carpets caused by their's pet's illness, and the costs of future medical monitoring of their dog.

31.     As a result of Defendants' wrongful actions, Plaintiffs and Class members have sick or deceased pets, and have suffered economic damages, including, but not limited to, the costs of the recalled pet food, the costs of medical treatment for their pets, burial costs, the costs to replace their pets, and the costs to replace or clean personal property damaged as a result of their pets' illnesses.

32.     In addition, their pets will require continuous medical monitoring to gauge the long-term effects of the contaminated pet food on their kidney functions and overall health. Therefore, because the precise impact on the health of class members' pets is not currently known, Plaintiffs and the Class seek the cost of medical monitoring for their pets.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.

34.     The class which Plaintiffs seek to represent are composed of all persons in the United States who purchased any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

35.     The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. Defendants have recalled 60 million cans of pet food that it sold

8

throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if not impossible.

36.    There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

1.    Whether Defendants breached any express or implied warranties when they manufactured and sold the recalled pet food;

2.    Whether Defendants' negligently manufactured and sold the recalled pet food; and

3.    Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

37.    The above common issues of fact and law predominate over any arguable individualized issues.

38.    Plaintiffs' claims are typical of the claims of the other members of the class because Plaintiffs' and all of the Class members' damages arise from and were caused by having purchased and fed the recalled pet food to their pets. As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiffs and all of the Class members.

39.    Plaintiffs will fairly and adequately protect the interests of the members of the Class, and Plaintiffs have no interests which are contrary to or in conflict with those of the Class they seek to represent. Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

40.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the

9

class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiffs do not believe that any difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiffs believe and therefore aver that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.     Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

42.     Plaintiffs and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiffs and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

### COUNT I - BREACH OF EXPRESS WARRANTY

43.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

44.     Defendants expressly warranted that the recalled brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

45.     In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program

10

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

46.     Members of the Class were induced by Defendants' labeling, advertising and marketing the recalled brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the recalled brands of pet food and feeding them to their pets.

47.     In reliance on Defendants' untrue warranties, Plaintiffs and the Class purchased the recalled pet food and fed that food to their pets.

48.     Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT II - BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY

49.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

50.     Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

51.     Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food, which was sold to Plaintiffs and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

52.     Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiffs and Class members would purchase the recalled pet food at issue for the ordinary purpose of feeding their pets.

53.     Defendants manufactured, labeled, advertised, sold, and distributed the recalled pet foods at issue for the ordinary purpose for which it was purchased by Plaintiffs.

54.     Plaintiffs and Class members purchased and used the recalled pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

55.     Plaintiffs and Class members relied upon Defendants' representations and claims in purchasing the recalled pet foods.

56.     The recalled pet foods purchased by Plaintiffs and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods at issue.

57.     Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

### COUNT III - NEGLIGENCE

58.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

59.     Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

60.     Defendants breached said duty as described herein above when they failed to

12

adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiffs and members of the Class.

61.     As a proximate result of the Defendants' conduct described herein, Plaintiffs and members of the Class have suffered damages as a result and continue to suffer damages as a result.

### JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues triable by right before a jury.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for judgment as follows:

1. That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiffs and their counsel to represent the Class;

2. That this Court enter judgment and award damages in favor of Plaintiffs and the Class, and against Defendants under the theories alleged herein;

3. That this Court establish a fund for the medical monitoring of Plaintiffs' pets to discover and treat the extent of kidney damage these pets have suffered as a result of consuming Defendants' recalled pet food;

4. That this Court award Plaintiffs all attorneys' fees, expenses and costs of this suit;

5. That this Court award Plaintiffs pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

13

6.    That this Court grant such other, further, and different relief that the Court deems

necessary, just, and proper.

Dated: March 22, 2007           Respectfully submitted,

                        TRUJILLO RODRIGUEZ & RICHARDS, LLC

                        By  /s Donna Siegel Moffa
                                Donna Siegel Moffa, Esquire
                                Lisa J. Rodriguez, Esquire
                                8 Kings Highway West
                                Haddonfield, NJ  08033
                                TEL: (856)795-9002
                                FAX: (856)795-9887

                        BERGER & MONTAGUE, P.C.
                        Sherrie R. Savett, Esquire
                        Michael T. Fantini, Esquire
                        Russell D. Paul, Esquire
                        1622 Locust Street
                        Philadelphia, PA 19103
                        (215) 875-3000

                        ROVNER, ALLEN, ROVNER ZIMMERMAN &
                        NASH
                        Robert A. Rovner, Esquire
                        Jeffrey I. Zimmerman, Esquire
                        175 Bustleton Pike
                        Feasterville, PA 19053-6456
                        (215) 698-1800

                        Attorneys for Plaintiffs and the Class

14

Schedule A

Recalled Menu Foods' Pet Food Brands[1]

---

[1]     http://www.menufoods.com/recall/product_cat.html, accessed March 21, 2007;
http://www.menufoods.com/recall/product_dog.html, accessed March 21, 2007.



**MENU FOODS INCOME FUND**

Home
**Recall Information**
  Press Release
  Cat Product Information
  Dog Product Information

## Recalled Dog Product Information

### Recall Information 1-866-895-2708

Menu Foo
8 Falcone
Streetsvill
Canada L!

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws
32. Pet Essentials
33. Pet Pride - Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US

http://www.menufoods.com/recall/product_dog.html                    3/21/2007

38.  Publix
39.  Roche Brothers
40.  Save-A-Lot
41.  Schnucks
42.  Shep Dog
43.  Springsfield Prize
44.  Sprout
45.  Stater Brothers
46.  Stop & Shop Companion
47.  Tops Companion
48.  Wegmans Bruiser
49.  Weis Total Pet
50.  Western Family US
51.  White Rose
52.  Winn Dixie
53.  Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.



# MENU FOODS INCOME FUND

Home

**Recall Information**

Press Release

Cat Product Information

Dog Product Information

## Recalled Cat Product Information

### Recall Information 1-866-895-2708

Menu Foo
8 Falcone
Streetsvill
Canada L!

1. Americas Choice, Preferred Pets
2. Authority
3. Best Choice
4. Companion
5. Compliments
6. Demoulas Market Basket
7. Eukanuba
8. Fine Feline Cat
9. Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat
32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion

Menu Foods Income Fund - Annual General Meeting                          Page 2 of 2

38.  Wegmans
39.  Weis Total Pet
40.  Western Family US
41.  White Rose
42.  Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

http://www.menufoods.com/recall/product_cat.html                        3/21/2007