

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE MENU FOODS POISONED PET      No. MDL DOCKET NO.
FOOD LITIGATION

## PLAINTIFFS' MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS TO THE WESTERN DISTRICT OF WASHINGTON UNDER 28 U.S.C. § 1407

Plaintiffs Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and

Terrence Mitchell, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith,

Michele Suggett and Don James ("Plaintiffs"), respectfully move the Judicial Panel on

Multidistrict Litigation for an Order, under 28 U.S.C. § 1407, that (i) transfers eight putative

class actions, currently pending in the Western District of Arkansas, Southern District of Florida,

Northern District of Illinois, Eastern District of Tennessee, District of New Jersey, District of

Connecticut, Central District of California, as well as any cases that may subsequently be filed

asserting similar or related claims, to the United States District Court for the Western District of

Washington; and (ii) consolidates these proceedings with the five other similar actions that are

currently pending in the Western District of Washington, *Tom Whaley v. Menu Foods, et al.*, No.

C07-0411M; *Stacey Heller, et al. v. Menu Foods*, No. C07-0453JJC; *Suzanne E. Johnson, et al.*

*v. Menu Foods*, No. C07-0455JCC; *Audrey Kornelius, et al. v. Menu Foods*, No. C07-0454MJP;

**OFFICIAL FILE COPY**

ORIGINAL

- 1 -

001958-12 161589 V1

IMAGED APR 2 2007

and *Michele Suggett, et al. v. Menu Foods, et al.,* No. C07-0457RSM, before the Honorable

Ricardo Martinez. In support of their Motion for Transfer and Consolidation, Plaintiffs state as

follows:

1.      The class actions for which transfer and consolidation are proposed arise out of

the same conduct and allege virtually identical claims. Each action is brought on behalf of a

class of purchasers of dog or cat food produced by Menu Foods and sold under various labels,

and alleges that Menu Foods produced tainted pet food that sickened their dogs or cats and

caused the death of many of them.

2.      The eight actions proposed for transfer, *Sims, et al. v. Menu Foods Income Fund,*

*et al.,* No. 07-5053 (W.D. Ark.); *Scott, et al. v. Menu Foods, et al.,* No. 07-5055 (W.D. Ark.);

*Troiano v. Menu Foods, Inc., et al.,* No. 07-60428 CIV-COHN (S.D. Fla.); *Majerczyk v. Menu*

*Foods, Inc.,* No. 07CV1543 (N.D. Ill.); *Holt v. Menu Foods, Inc.,* No. 07-cv-00094 (E.D.

Tenn.); *Workman, et al. v. Menu Foods Limited, et al.,* No. 07-cv-1338-NLH-AMD (D.N.J.);

*Osborne v. Menu Foods, Inc.,* No. 07CV00469RNC (D. Conn.); and *Sexton v. Menu Foods, Inc.,*

*et al.,* No. CV07-01958 GHK (AJWx) (C.D. Cal.), are the only actions on file outside the

Western District of Washington of which Plaintiffs are aware.

3.      Plaintiffs propose that the *Sims, Scott, Troiano, Majerczyk, Holt, Workman,*

*Obsborne* actions and the action pending in the Central District of California be consolidated

with the five actions currently pending in the Western District of Washington before Judge

Martinez, the lowest numbered of which is *Tom Whaley v. Menu Foods, et al.,* C07-0411M.

4.      The centralization of these actions in a single judicial district for consolidated

pretrial proceedings will promote the just and efficient conduct of these actions, will serve the

convenience of all parties and witnesses and will promote the interest of justice because all

actions involve common factual and legal issues, including:

a.      whether the Defendant's dog and cat food was materially defective, and

unfit for use as dog or cat food;

b.    whether Defendant breached any contract, implied contract or warranties relating to the sale of the dog and cat food;

c.    whether Defendant's dog and cat food caused Plaintiffs' and other Class members' pets to become ill;

d.    whether Plaintiffs and other Class members have been damaged, and, if so, what is the proper measure thereof;

e.    what is the appropriate form of injunctive, declaratory and other relief.

5.    Consolidation of the actions before a single court will conserve judicial resources, reduce litigation costs, prevent potentially inconsistent pretrial rulings, eliminate duplicative discovery and permit the cases to proceed to trial more efficiently.

6.    All 13 actions are in the very early stages of litigation; no responsive pleadings have been filed nor has any discovery been conducted.

7.    The proposed transfer and consolidation in the Western District of Washington will be for the convenience of parties and witnesses and will promote the just and efficient conduct of these actions because it is expected that plaintiffs' counsel in all actions will take discovery of the same witnesses and documents.

8.    The Western District of Washington has the resources and judicial expertise to properly conduct this case.

9.    Plaintiffs' motion is based on the accompanying memorandum of law, the filed pleadings and papers, and other materials that may presented to the Panel before or at the time of any hearing in this matter.

WHEREFORE, Plaintiffs respectfully request that the Panel order that the *Sims, Scott, Troiano, Majerczyk, Holt, Workman, Obsborne* and *Sexton* actions, as well as any cases that may be subsequently filed asserting related or similar claims, be transferred to the Western District of Washington for consolidated and coordinated pretrial proceedings.

- 3 -

Dated:  March 28, 2007

HAGENS BERMAN SOBOL SHAPIRO LLP


By_____
    Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292
steve@hbsslaw.com

MYERS & COMPANY, P.L.L.C.
Michael David Myers
1809 Seventh Avenue, Suite 700
Seattle, Washington  98101
Telephone:  (206) 398-1188
Facsimile:  (206) 400-1112
E-mail:  mmyers@myers-company.com

Philip H. Gordon
Bruce S. Bistline
Gordon Law Offices
623 West Hays St.
Boise, ID  83702
Telephone:  (208) 345-7100
Facsimile: (206) 623-0594
E-mail:  pgordon@gordonlawoffices.com

Adam P. Karp
Animal Law Offices of Adam P. Karp
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
Telephone: (360) 738-7273
Facsimile (360) 392-3936
Email: adam@animal-lawyer.com


*Attorneys for Plaintiffs Tom Whaley, Stacey
Heller, Toinette Robinson, David Rapp, Cecily
and Terrence Mitchell, Suzanne E. Johnson,
Craig R. Klemann, Audrey Kornelius, Barbara
Smith, Michele Suggett and Don James*

- 4 -

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MENU FOODS POISONED PET FOOD LITIGATION | No. MDL DOCKET NO. |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS TO THE WESTERN DISTRICT OF WASHINGTON UNDER 28 U.S.C. § 1407**

Plaintiffs Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and Terrence Mitchell, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith, Michele Suggett and Don James ("Plaintiffs") submit this memorandum of law in support of their motion for transfer and consolidation of related actions to the Western District of Washington under 28 U.S.C. § 1407.

## I.    FACTS

### A.    Background

Defendant Menu Foods, a Canadian corporation doing business in the United States, makes cat and dog food. Menu Foods' cat and dog food is sold under many brands, including such familiar brand names as Iams, Eukanuba and Science Diet. Menu Foods distributes its cat and dog food throughout the United States to retailers such as Wal-Mart, Kroger and Safeway. These and other retailers also sell Menu Food pet food under their own respective private labels.

ORIGINAL



001958-12 161590 V1

Plaintiffs assert their claims against Menu Foods as class actions under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased any cat or dog food that was produced by Menu Foods and whose cat or dog became ill or died as a result of eating the food. Cat and dog food that Menu Foods produced caused an unknown number of cats and dogs to become ill, and many of them to die (the current reported known tally is over 100 deaths).

A tragically typical example is the cat belonging to plaintiff Stacy Heller (Case No. C07-0453JJC, W.D. Wash.). Ms. Heller purchased a Menu Foods wet cat food from Wal-Mart under the brand, Special Kitty, for Callie, her cat. Callie ate the Special Kitty cat food for several years before her death. She became extremely ill during the week of March 12, 2007. On March 14, 2007, Ms. Heller took Callie to a veterinarian, who told her that Callie had suffered kidney failure, also known as acute renal failure. Callie's condition quickly worsened, and on March 19, 2007, she had to be euthanized.

To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat food that have sickened and killed dogs and cats. All recalled food to date is of the "cuts and gravy wet" style and was produced during a three-month period between December 3, 2006 and March 6, 2007. While the contaminant in the recalled Menu Foods pet food has not yet been conclusively identified, preliminary testing at the New York State Food Laboratory indicates a rodent poison, aminopterin, which is banned in the United States, as the likely culprit.

Menu Foods' actions have injured Plaintiffs and other Class members, who seek to recover damages that include veterinary expenses, burial and cremation expenses, work disruptions and other such losses.

**B.    The Menu Foods Poisoned Pet Food Class Actions**

Following these events, several class-action complaints were filed against Menu Foods. These lawsuits assert claims for injuries arising from the sickening and deaths of pets that had consumed Menu Foods' pet food sold under various labels:

- 2 -

- *Tom Whaley v. Menu Foods, et al.*, No. C07-0411M (W.D. Wash.);

- *Stacey Heller, et al. v. Menu Foods*, No. C07-0453JJC (W.D. Wash.);

- *Suzanne E. Johnson, et al. v. Menu Foods*, No. C07-0455JCC (W. D. Wash.);

- *Audrey Kornelius, et al. v. Menu Foods*, No. C07-0454MJP (W.D. Wash.);

- *Michele Suggett, et al. v. Menu Foods, et al.*, No. C07-0457RSM (W.D. Wash.);

- *Sims, et al. v. Menu Foods Income Fund, et al.*, No. 07-5053 (W.D. Ark.);

- *Scott, et al. v. Menu Foods, et al.*, No. 07-5055 (W.D. Ark.);

- *Troiano v. Menu Foods, Inc., et al.*, No. 07-60428 CIV-COHN (S.D. Fla.);

- *Majerczyk v. Menu Foods, Inc.*, No. 07CV1543 (N.D. Ill.);

- *Holt v. Menu Foods, Inc.*, No. 07-cv-00094 (E.D. Tenn.);

- *Workman, et al. v. Menu Foods Limited, et al.*, No. 07-cv-1338-NLH-AMD (D.N.J.);

- *Osborne v. Menu Foods, Inc.*, No. 07CV00469RNC (D. Conn.); and

- *Sexton v. Menu Foods, Inc., et al.*, No. CV07-01958 GHK (AJWx) (C.D. Cal.).

These cases seek to recover damages on behalf of all persons whose cats and/or dogs became sick or died as a result of consuming pet food produced by Menu Foods. Submitted herewith is a Schedule of Actions Involved under 28 U.S.C. § 1407 that lists the actions to be transferred and consolidated.

Plaintiffs seek to have the latter eight class actions listed above transferred to the Western District of Washington for centralization with the five class actions already pending in that jurisdiction. Transfer and consolidation is appropriate because these cases involve common factual questions, transfer will further the convenience of the parties and the witnesses, and transfer will promote the just and efficient conduct of these actions. The Western District of Washington is the appropriate place for transfer and consolidation because the district has the

- 3 -

resources and judicial expertise to properly conduct this case; defendant Menu Foods transacts business in the district; five class actions are already filed there, and the Western District of Washington is easily accessed by all parties.

## II.    ARGUMENT

### A.    Transfer and Consolidation of All Menu Foods Poisoned Pet Food Actions for Coordinated Pretrial Proceedings Is Appropriate

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon a determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the actions." The requirements for transfer under Section 1407 are clearly satisfied here. The 13 related Menu Foods poisoned pet food class actions are characterized almost entirely by common questions of fact. In addition, transfer and consolidation will promote convenience for the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification.

### 1.    The related actions involve common questions of fact

The first requirement of § 1407 – that the actions to be transferred involve common questions of fact – is satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct and, hence, are identical. *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004); *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004).

Among the many common questions of law and fact at issue in the related actions are:

a.    whether the Defendant's dog and cat food was materially defective, and unfit for use as dog or cat food;

- 4 -

b.    whether Defendant breached any contract, implied contract or warranties relating to the sale of the dog and cat food;

c.    whether Defendant's dog and cat food caused Plaintiffs' and other Class members' pets to become ill;

d.    whether Plaintiffs and other Class members have been damaged, and, if so, what is the proper measure thereof;

e.    what is the appropriate form of injunctive, declaratory and other relief.

The factual issues to be determined in all of the class actions are nearly identical, making transfer to a single forum highly appropriate. *See, e.g., Neurontin*, 342 F. Supp. 2d at 1351. In *Neurontin*, for example, the Panel ruled that there were common issues warranting transfer and consolidation where "[a]ll actions [we]re purported class actions involving allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label' use." *Id.*; *see also In re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) ("[c]ommon factual questions arise because these actions focus on alleged side effects of ephedra-containing products, and whether defendants knew of these side effects and either concealed, misrepresented or failed to warn of them"); *In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004) (common questions existed where "[a]ll actions can thus be expected to share factual and legal questions with respect to the '275 patent concerning patent validity and related questions such as double patenting, prosecution laches, and inequitable conduct").

2.    **Consolidating the class actions will further the convenience of the parties and the witnesses**

Consolidating the class actions will meet the second requirement for consolidation under § 1407 because it will serve the convenience of the parties and witnesses. It is expected that counsel for plaintiffs in all actions will seek documents from the same defendants on such issues as, *inter alia*: (a) where the recalled Menu Foods pet food was processed, (b) the manufacturing

- 5 -

processes for the recalled Menu Foods pet food, (c) the intended ingredients of the recalled Menu Foods pet food, (d) the name, composition and character of the contaminant(s) of the recalled Menu Foods pet food that poisoned the Class members' cats and dogs, (e) the contaminant(s)' pathway into the recalled Menu Foods pet food, and (f) when Defendants learned or should have learned that the recalled Menu Foods pet food was contaminated. Issues such as these will be central in all of the class actions.

Because the actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Consolidation will enable a single judge to establish a pretrial program that will minimize the inconvenience to the witnesses and expenses to the parties. These savings are precisely the types of savings that this Panel has traditionally used to justify the consolidation of actions in different jurisdictions. *See, e.g., Neurontin*, 342 F. Supp. 2d at 1351; *Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1385.

### 3.    Transfer and consolidation will promote the just and efficient conduct of the related actions

Finally, transferring and consolidating these class actions is appropriate because coordinating the pretrial proceedings will promote the just and efficient conduct of the actions. In light of the nearly identical factual allegations, and especially given that discovery has not yet begun in any action, transfer under § 1407 will avoid duplicative discovery and save judicial time and resources. *See Neurontin*, 342 F. Supp. 2d at 1351; *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004); *Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d at 1375; *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975); *see also In re European Rail Pass Antitrust Litig.*, 2001 U.S. Dist. Lexis 1417, at *3 (J.P.M.L. Feb. 7, 2001) (ordering cases transferred to a single district to "eliminate duplicative discovery").

The plaintiffs in each action will seek to depose many of the same individuals from Menu Foods and its various affiliates and request production of a substantially similar set of documents. Failing to consolidate these actions will therefore result in duplicative discovery

- 6 -

efforts, requiring witnesses to appear for multiple depositions and defendants to produce several sets of the same documents. The consolidation and coordination of these actions would avoid this inconvenience and needless waste of resources. *See In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002). Moreover, the corresponding savings in time and expense would confer benefits upon both the plaintiffs and defendants. *See In re Cygnus Telcoms. Tech., LLC Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001); *see also In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (consolidation and coordination is appropriate to "conserve the resources of the parties, their counsel and the judiciary"); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978).

Where, as here, consolidation and coordination will avoid duplicative discovery and potentially conflicting pretrial rulings, transfer for pretrial purposes is warranted to promote the interests of judicial economy and efficiency.

**B.    The Western District of Washington Is The Proper Forum for Coordinated Pretrial Proceedings**

   **1.    The Western District of Washington has the resources and judicial expertise to properly conduct this case**

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers the speed and efficiency with which alternative districts manage their respective caseloads. *See In re Preferential Drug Prods. Pricing Antitrust*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (faster docket cited as reason for selecting transferee court). Here, this factor favors transferring the actions to the Western District of Washington.

If transferred to the Western District of Washington and consolidated with the five actions already pending there, all 13 actions could proceed expeditiously to trial. The Western

- 7 -

District of Washington has a well-managed docket that is relatively undertaxed by multidistrict litigation and capable of ensuring expeditious resolution of this multi-party litigation. When the Panel has concluded that any of several forums would be appropriate for M.D.L. transfer, it has examined the relative caseloads in each district court to tip the balance in favor of the less burdened district. *See, e.g., In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1231 (J.P.M.L. 1977); *In re Air Crash Disaster at Taipei Intl. Airport on July 31, 1975*, 433 F. Supp. 1120, 1122 (J.P.M.L. 1977); *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764 (J.P.M.L. 1975); *In re Peruvian Road Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974).

The rationale for these decisions goes to the very heart of a decision to transfer a great number of cases before a single district-court judge. The worthwhile purposes of consolidating multidistrict litigation would be frustrated if the transferee court is already too overburdened to give these complex cases the close study and attention they will require. As this Panel stated in the *Eastern Airlines* decision:

> On balance, however, we favor the Eastern District of Virginia because that district has a significantly lighter civil action docket than the District of Massachusetts and, therefore, is in the best position to expeditiously process this particular litigation. [391 F. Supp. at 764-65.]

This rationale would be well served by transferring the other eight cases to the Western District of Washington for consolidation with the five class actions there. The Western District of Washington enjoys a swift civil action docket. The median time for civil cases from filing to "disposition" in the Western District of Washington is only 9.1 months, and only 19.0 months to trial.[1] This indicates an ability on the part of the Western District to move civil cases along

---

[1] The district has experienced a two-year bump in its case disposition median times occasioned by several judges' transitioning to senior status. But those vacancies have been or are now being filled, so we expect a return to the district's long-standing record of highly expeditious resolutions.

The Movants cite to Federal Court Management statistics for 2006 available on this Panel's website, at http://www.uscourts.gov/cgi-bin/cmsd2006.pl . For the Panel's convenience, we attach copies of the relevant

quickly during the pretrial phase of litigation, precisely the task that will be before the transferee court here. The comparable figures for the District of New Jersey, for example, is 33.0 months to trial; Northern District of Illinois, 26.4 months; and Central District of California, 21.3 months.

While these differences in the overall civil action docket are significant, the disparity between some of the districts in regard to complex M.D.L. cases is enormous. The Western District of Washington, while possessing the resources necessary to oversee a complex multi-party action such as this, is under-utilized as a transferee court for centralized proceedings. As of September 30, 2006, the Western District of Washington has only two M.D.L. cases still pending, while the District of New Jersey has 15 pending litigations; Northern District of Illinois – 16 litigations; and Central District of California – 9 litigations. As this Panel has recognized, this alone can be reason to transfer multidistrict actions to such districts for centralization:

> centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that (i) is not currently overtaxed with other multidistrict dockets, and (ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1380. *See also In re Air Crash near Palembang Indon.*, 1999 U.S. Dist. Lexis 4910, at *3-4 (J.P.M.L. Apr. 13, 1999). This Panel's rationale for transferring the *Phenylpropanolamine* and *Air Crash near Palembang* multidistrict litigations to the Western District of Washington applies to the present litigations as well.

Of course, these figures do not suggest that the next ten matters on the M.D.L. docket be assigned to the Western District of Washington. Certainly there will continue to be a relatively greater number of M.D.L. transfers to busy jurisdictions such as the Northern District of Illinois and the District of New Jersey on the basis of convenience of the particular parties. But where

---

district courts' 2006 caseload profile available from that site, at Ex. A-H hereto.

the advantages in the expeditious processing of these cases are apparent in a transfer to the Western District of Washington, this Panel should welcome the opportunity to spare its overburdened colleagues in other jurisdictions.

We also note that while currently un-taxed with M.D.L. litigations, the Western District of Washington has extensive experience in managing consolidated multi-district litigation. *See, e.g., In re Mailblocks, Inc.*, 279 F. Supp. 2d 1379, 1381 (J.P.M.L. 2003) (transferring action to Western District of Washington); *In re Burlington Northern & Santa Fe Ry. Emple. Settlement Agreements Litig.*, 162 F. Supp. 2d 699, 700 (J.P.M.L. 2001) (same); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1380 (same); *In re Amazon.com/Alexa Internet Privacy Litig.*, 2000 U.S. Dist. Lexis 8201, at *3-4 (J.P.M.L. June 7, 2000) (same); *In re Air Crash near Palembang Indon.*, 1999 U.S. Dist. Lexis 4910, at *3-4 (same); *In re Ford Motor Co. /Citibank N.A. Cardholder Rebate Program Litig.*, 1998 U.S. Dist. Lexis 205, at *3 (J.P.M.L. Jan. 8, 1998) (same). Indeed, the Panel has specifically recognized that the Western District of Washington is equipped with the resources necessary to manage substantial consolidated multi-district litigation. *See, e.g., In re Phenylpropanolamine*, 173 F. Supp. 2d at 1380. The Panel has also previously transferred to the Western District of Washington multi-district litigation that, like the present cases, challenges the safety of products ingested into the body. See, for example, *id.* The District thus has an established track record of managing this type of complex litigation.

The Honorable Judge Ricardo Martinez, to whom the *Whaley* litigation, the first filed of the five Washington cases, is assigned, has ample experience with class action and complex commercial litigation. A judge since 1989, Judge Martinez has been on the federal bench since 1998, first as a federal magistrate, and since 2004 as a district court judge. Judge Martinez is not currently handling any other MDL matters.

- 10 -

2.    **The Western District of Washington is an equally convenient forum for the parties and witnesses**

The convenience of the parties and witnesses is a factor in determining to which district related actions should be transferred. 28 U.S.C. § 1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). In deciding whether a particular forum is convenient, the Panel may consider the location of the parties, documents and potential witnesses relative to that district. *See In re Cigarette Antitrust Litig.*, 2000 U.S. Dist. Lexis 8209, at *4 (J.P.M.L. June 7, 2000).

This factor is neutral in this litigation. Plaintiffs and class members reside across the country, likely in all 50 states. Defendant Menu Foods is a Canadian corporation with its principle office in Ontario, Canada. Five of the actions (with 12 plaintiffs) were filed in the Western District of Washington. These 12 plaintiffs all concur that the Western District of Washington would be the most appropriate jurisdiction.

No particular district court is more conveniently located for the parties and witnesses than another. We note that Seattle has a major international airport that serves as a transportation hub for the region, so parties traveling by air will have easy access to the district court there.

### III.    CONCLUSION

Consolidation is necessary to avoid duplication and wasted efforts. Transfer to the Western District of Washington is appropriate because five of the 13 related actions were filed there; the Western District of Washington has the resources and judicial expertise to promptly and efficiently conduct this case; and the Western District of Washington is easily accessed and as conveniently located as any district for all the parties. Accordingly, Plaintiffs respectfully request that the Panel order that the *Sims*, *Scott*, *Troiano*, *Majerczyk*, *Holt*, *Sexton* and *Workman* actions (as well as any tag-along cases that may be subsequently filed asserting related or similar

- 11 -

claims) be transferred to the Western District of Washington for consolidated and coordinated pretrial proceedings.

DATED: March 28, 2007

HAGENS BERMAN SOBOL SHAPIRO LLP

By_____
    Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

MYERS & COMPANY, P.L.L.C.
Michael David Myers
1809 Seventh Avenue, Suite 700
Seattle, Washington 98101
Telephone: (206) 398-1188
Facsimile: (206) 400-1112
E-mail: mmyers@myers-company.com

Philip H. Gordon
Bruce S. Bistline
Gordon Law Offices
623 West Hays St.
Boise, ID 83702
Telephone: (208) 345-7100
Facsimile: (206) 623-0594
E-mail: pgordon@gordonlawoffices.com

Adam P. Karp
Animal Law Offices of Adam P. Karp
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
Telephone: (360) 738-7273
Facsimile (360) 392-3936
Email: adam@animal-lawyer.com

*Attorneys for Plaintiffs Tom Whaley, Stacey
Heller, Toinette Robinson, David Rapp, Cecily
and Terrence Mitchell, Suzanne E. Johnson,
Craig R. Klemann, Audrey Kornelius, Barbara
Smith, Michele Suggett and Don James*

- 12 -

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MENU FOODS POISONED PET FOOD LITIGATION | No. MDL DOCKET NO. |

## SCHEDULE OF ACTIONS RELATED TO PLAINTIFFS MOTION FOR CENTRALIZATION AND COORDINATION OF PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

1.      *Tom Whaley, individually and on behalf of all others similarly situated v. Menu Foods, a foreign corporation, The Iams Company, a foreign corporation, Dog Food Producers Numbers 1-50 and Cat Food Producers 1-40,* No. C07-0411M, pending in the Western District of Washington at Seattle (Hon. Judge Ricardo S. Martinez);

2.      *Stacey Heller, Toinette Robinson, David Rapp, and Cecily and Terrence Mitchell, individually and on behalf of all others similarly situated, v. Menu Foods, a foreign corporation,* No. C07-0453JJC, pending in the Western District of Washington at Seattle (Hon. Judge John C. Coughenour);

3.      *Suzanne E. Johnson and Craig R. Klemann, individually and on behalf of all others similarly situated, v. Menu Foods, a foreign corporation,* No. C07-0455JCC, pending in the Western District of Washington at Seattle (Hon. Judge John C. Coughenour);

4.      *Audrey Kornelius and Barbara Smith, individually and on behalf of all others similarly situated, v. Menu Foods, a foreign corporation,* No. C07-0454MJP, pending in the Western District of Washington at Seattle (Hon. Judge Marsha J. Pechman);

5.      *Michele Suggett and Don James, individually and on behalf of all similarly situated v. Menu Foods, a foreign corporation; The Iams Company, a foreign corporation; Eukanuba, a foreign corporation; Dog Food Producers Numbers 1-100 and Cat Food Producers 1-100; and DOES1-100,* No. C07-0457RSM, pending in the Western District of Washington at Seattle (Hon. Judge Ricardo S. Martinez);

001958-12  161370 V1

ORIGINAL

RECEIVED
CLERK'S OFFICE

6.      *Charles Ray Sims and Pamela Sims, individually and on behalf of all others similarly situated v. Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota, Inc., Menu Foods, Inc., Menu Foods Holdings, Inc.*, No. 07-5053, pending in the Western District of Arkansas, Fayetteville Division (Hon. Judge Jimm Larry Hendren);

7.      *Richard Scott and Barbara Widen, individually and all others persons similarly situated v. Menu Foods, Menu Foods Income Fund, Menu Foods Gen Par Limited, Menu Foods Limited Partnership, Menu Foods Operating Partnership, Menu Foods Midwest Corp, Menu Foods South Dakota, Menu Foods, Inc., Menu Foods Holdings, Inc., Wal-Mart Stores, Inc.*, No. 07-5055, pending in the Western District of Arkansas, Fayetteville Division (Hon. Judge Robert T. Dawson);

8.      *Christina Troiano, individually and on behalf of all others similarly situated v. Menu Foods, Inc. and Menu Foods Income Fund,* No. 07-60428 CIV-COHN, pending in the Southern District of Florida (Hon. Judge James I. Cohn);

9.      *Dawn Majerczyk, individually and on behalf of a class of similarly situated individuals v. Menu Foods, Inc., a New Jersey Corporation*, No. 07CV1543, pending in the Northern District of Illinois, Eastern Division (Hon. Judge Wayne R. Anderson);

10.     *Lizajean Holt, individually and on behalf of similarly situated persons v. Menu Foods, Inc.*, No. 07-cv-00094, pending in the Eastern District of Tennessee, Knoxville Division (Hon. Judge Thomas W. Phillips);

11.     *Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated v. Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation*, No. 07-cv-1338-NLH-AMD, pending in the District of New Jersey (Hon. Judge Noel L. Hillman);

12.     *Lauri A. Osborne, individually and on behalf of all others similarly situated v. Menu Foods, Inc.*, No. 07CV00469RNC, pending in the District of Connecticut (Hon. Judge Robert N. Chatigny); and

13.     Shirley *Sexton v. Menu Foods Income Fund, Menu Foods, Inc., a New Jersey Corporation, and Menu Foods Midwest Corp., a Delaware aorporation*, No. CV07-01958 GHK (AJWx), pending in the Central District of California (Hon. Judge George H. King).

Copies of the Complaints are attached as Exhibits A - M hereto.

-2-

Dated: March 28, 20007

HAGENS BERMAN SOBOL SHAPIRO LLP


By_____
    Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

MYERS & COMPANY, P.L.L.C.
Michael David Myers
1809 Seventh Avenue, Suite 700
Seattle, Washington 98101
Telephone: (206) 398-1188
Facsimile: (206) 400-1112
E-mail: mmyers@myers-company.com

Philip H. Gordon
Bruce S. Bistline
Gordon Law Offices
623 West Hays St.
Boise, ID 83702
Telephone: (208) 345-7100
Facsimile: (206) 623-0594
E-mail: pgordon@gordonlawoffices.com

Adam P. Karp
Animal Law Offices of Adam P. Karp
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
Telephone: (360) 738-7273
Facsimile (360) 392-3936
Email: adam@animal-lawyer.com

*Attorneys for Plaintiffs Tom Whaley, Stacey Heller, Toinette Robinson, David Rapp, Cecily and Terrence Mitchell, Suzanne E. Johnson, Craig R. Klemann, Audrey Kornelius, Barbara Smith, Michele Suggett and Don James*

-3-

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 3 0 2007

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE MENU FOODS POISONED PET
FOOD LITIGATION

No. MDL DOCKET NO.

### PROOF OF SERVICE

Pursuant to Rule 5.2 of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, and the Federal Rules of Civil Procedure, I hereby certify that on March

27, 2007, I caused a copy of **Plaintiffs' Motion For Transfer and Consolidation of Related**

**Actions To The Western District of Washington Under 28 U.S.C. § 1407, Plaintiffs'**

**Memorandum of Law In Support of Their Motion For Transfer and Consolidation of**

**Related Actions To The Western District of Washington Under 28 U.S.C. § 1407, Schedule**

**of Actions Related To Plaintiffs Motion For Centralization and Coordination of Pretrial**

**Proceedings Pursuant To 28 U.S.C. § 1407** and **Proof of Service** to be served via U.S. Mail on

all parties on the accompanying Service List including the Clerk of each district court where an

affected actions is pending.

RECEIVED
CLERK'S OFFICE

2007 MAR 29 A 11:48

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

- 1 -

ORIGINAL

001958-12 161422 V1

I further certify that on March 27, 2007, I caused the original and four copies of the above documents, along with a computer generated disk, to be sent via UPS Overnight Mail for filing with the clerk of the Judicial Panel On Multidistrict Litigation.

Dated:  March 28, 2007.

_____
Steve W. Berman

001958-12 161422 V1

## SERVICE LIST

### DEFENDANTS

Menu Foods
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

Menu Foods Income Fund
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

Menu Foods, Inc.
c/o The Corporation Trust Company
820 Bear Tavern Road
West Trenton, NJ 08628

The Iams Company
One Proctor & Gamble Plaza C-2
Cincinnati, Ohio 45202

Eukanuba
One Proctor & Gamble Plaza C-2
Cincinnati, Ohio  45202

Menu Foods Midwest Corporation
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Menu Foods South Dakota, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Menu Foods Holdings, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

001958-12 161422 V1

Menu Foods Gen Par Limited
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Menu Foods Limited Partnership
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Menu Foods Operating Partnership
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Wal-Mart Stores, Inc.
c/o The Corporation Company
425 W. Capitol Ave., Ste. 1700
Little Rock, AR 72201

## OTHER PLAINTIFFS COUNSEL IN THESE ACTIONS

**Counsel for Plaintiffs in the *Sims* Action:**

Jason M. Hatfield
LUNDY & DAVIS, LLP
300 North College Ave., Suite 309
Fayetteville, AR 72701
Tel: (479) 527-3921
Fax: (479) 587-9196
Email: jhatfield@lundydavis.com

**Counsel for Plaintiffs in the *Scott, et al.* Action:**

Jeremy Young Hutchinson
PATTON, ROBERTS, McWILLIAMS & CAPSHAW
111 Center Street, Suite 1315
Little Rock, AR 72201
Tel: (501) 372-3480
Fax: (501) 372-3488

001958-12 161422 V1

Email: jhutchinson@pattonroberts.com

Richard Adams
PATTON, ROBERTS, McWILLIAMS & CAPSHAW
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, TX 75505-6128

**Counsel for Plaintiffs in the *Workman, et al.* Action:**

Donna Siegel Moffa
TRUJILLO, RODRIGUEZ & RICHARDS, llp
8 Kings Highway West
Haddonfield, NJ 08033
Tel: (856) 795-9002
Email: donna@trrlaw.com

Sherrie R. Savett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103

Robert A. Rovner
ROVNER, ALLEN, ROVNER, ZIMMERMAN & NASH
175 Bustleton Pike
Feasterville, PA 19053-6456

**Counsel for Plaintiff in the *Troiano* Action:**

Paul J. Geller
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Tel: (561) 750-3000

Lawrence Kopelman
KOPELMAN & BLANKMAN
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL 33301
Tel: (954) 462-6899

**Counsel for Plaintiff in the *Holt* Action:**

A. James Andrews
Nicole Bass

- 5 -

905 Locust Street
Knoxville, TN 37902
Tel: (865) 660-3993
Fax: (865) 523-4623
Email: andrewsesq@icx.net

Perry A. Craft
CRAFT & SHEPPARD
214 Centerview Dr., Suite 233
Brentwood, TN 37027
Tel: (615) 309-1707
Fax: (615) 309-1717
Email: perrycraft@craftsheppardlaw.com

Nicole Bass
905 Locust Street
Knoxville, TN 37902

**Counsel for Plaintiff in the *Whaley, Heller, et al. and Kornelius, et al.* Actions:**

Michael David Myers
MYERS & COMPANY
1809 7th Ave., Suite 700
Seattle, WA 98101
206-398-1188
Fax: 206-398-1189
Email: mmyers@myers-company.com

**Counsel for Plaintiff in the *Majerczyk* Action:**

Jay Edelson
BLIM & EDELSON, LLC
53 West Jackson Blvd., Suite 1642
Chicago, IL 60604
Tel: (312) 913-9400
Email: jay@blimlaw.com

**Counsel for Plaintiffs in the *Suggett, et al.* Action:**

Adam P. Karp, Esq.
ANIMAL LAW OFFICES
114 W. Magnolia St., Suite 425
Bellingham, WA 98225
Tel: (360) 392-3936
Email: adam@animal-lawyer.com

- 6 -

**Counsel for Plaintiff in the *Osborn* Action:**

Bruce E. Newman
NEWMAN, CREED & ASSOCIATES
99 North Street, Routee 6
P. O. Box 575
Bristol, CT  06011-0575
Tel:  (860) 583-5200

**Counsel for Plaintiff in the *Johnson, et al.* Action:**

Mr. Philip H. Gordon
Gordon Law Offices
623 West Hays St.
Boise, ID  83702
Tel:  (208) 345-7100
pgordon@gordonlawoffices.com

**Counsel for Plaintiff in the *Sexton* Action:**

Mark J. Tamblyn
WEXLER TORISEVA WALLACE LLP
1610 Arden Way, Suite 290
Sacramento, CA 95815


Stuart C. Talley
KERSHAW, CUTTER & RATINOFF, LLP
980 9th Street, 19th Floor
Sacramento, California 95814


## <u>COURTS</u>

Clerk of Court
U.S. District Court, Western District of Washington
700 Stewart Street
Seattle, WA  98101

Clerk of Court
U.S. District Court, Western District of Arkansas
35 E. Mountain Street, Suite 510

Fayetteville, AR  72701-5354

Clerk of Court
U.S. District Court, District of New Jersey
4th & Cooper Streets, Suite 1050
Camden, NJ  08101

Clerk of Court
Southern District of Florida
299 E. Broward Blvd., Suite 108
Fort Lauderdale, FL  33301

Clerk of Court
Eastern District of Tennessee
800 Market Street, Suite 130
Knoxville, TN  37902

Clerk of Court
Northern District of Illinois
209 S. Dearborn Street
Chicago, Il  60604

Clerk of Court
District of Connecticut
450 Main
Hartford, CT  06103

Clerk of Court
Central District of California
312 N. Spring St., Rm G-8
Los Angeles, CA 90012

001958-12  161422 V1

A

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **ARKANSAS WESTERN** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | 1,078 | 1,083 | 1,478 | 1,425 | 1,563 | 1,450 | U.S. | Circuit |
| | Terminations | 1,140 | 1,337 | 1,514 | 1,399 | 1,446 | 1,227 | | |
| | Pending | 808 | 854 | 1,108 | 1,139 | 1,111 | 997 | | |
| | % Change in Total Filings — Over Last Year | | -.5 | | | | | 25 | 3 |
| | % Change in Total Filings — Over Earlier Years | | | -27.1 | -24.4 | -31.0 | -25.7 | 91 | 10 |
| | Number of Judgeships | 3 | 3 | 3 | 3 | 3 | 3 | | |
| | Vacant Judgeship Months** | .0 | .0 | .0 | .0 | .0 | .0 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS — Total | 359 | 361 | 493 | 475 | 521 | 483 | 67 | 8 |
| | FILINGS — Civil | 283 | 281 | 421 | 403 | 449 | 438 | 56 | 6 |
| | FILINGS — Criminal Felony | 65 | 69 | 60 | 59 | 56 | 45 | 53 | 9 |
| | FILINGS — Supervised Release Hearings** | 11 | 11 | 12 | 13 | 16 | - | 78 | 10 |
| | Pending Cases | 269 | 285 | 369 | 380 | 370 | 332 | 81 | 8 |
| | Weighted Filings** | 399 | 348 | 423 | 411 | 436 | 411 | 65 | 8 |
| | Terminations | 380 | 446 | 505 | 466 | 482 | 409 | 65 | 8 |
| | Trials Completed | 13 | 14 | 19 | 17 | 24 | 14 | 71 | 8 |
| **MEDIAN TIMES (months)** | From Filing to Disposition — Criminal Felony | 6.3 | 5.8 | 5.1 | 5.6 | 6.5 | 5.7 | 11 | 2 |
| | From Filing to Disposition — Civil** | 11.9 | 12.0 | 10.2 | 11.6 | 10.1 | 7.4 | 79 | 8 |
| | From Filing to Trial** (Civil Only) | 13.0 | 13.0 | 15.4 | 14.0 | 13.7 | 12.0 | 3 | 1 |
| **OTHER** | Civil Cases Over 3 Years Old** — Number | 10 | 5 | 4 | 0 | 0 | 1 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 1.5 | .7 | .4 | .0 | .0 | .1 | 2 | 1 |
| | Average Number of Felony Defendants Filed Per Case | 1.1 | 1.1 | 1.3 | 1.2 | 1.1 | 1.1 | | |
| | Jurors — Avg. Present for Jury Selection | 53.35 | 40.59 | 64.04 | 68.94 | 55.00 | 51.17 | | |
| | Jurors — Percent Not Selected or Challenged | 53.4 | 47.5 | 59.7 | 59.6 | 50.5 | 56.6 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 848 | 196 | 53 | 193 | 15 | 10 | 35 | 66 | 68 | 12 | 104 | 1 | 95 |
| Criminal* | 191 | 1 | 56 | 48 | 20 | 33 | 1 | 8 | 1 | 7 | 5 | 3 | 8 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

B

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA CENTRAL** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 12,909 | 14,630 | 16,938 | 14,720 | 15,440 | 15,342 | | |
| | Terminations | 13,680 | 16,173 | 15,269 | 15,800 | 16,936 | 16,906 | | |
| | Pending | 12,401 | 13,180 | 14,720 | 13,129 | 14,525 | 16,142 | | |
| | % Change in Total Filings — Over Last Year | | -11.8 | | | | | 83 | 13 |
| | % Change in Total Filings — Over Earlier Years | | | -23.8 | -12.3 | -16.4 | -15.9 | 81 | 13 |
| | Number of Judgeships | 28 | 28 | 28 | 28 | 27 | 27 | | |
| | Vacant Judgeship Months** | 53.9 | 24.8 | 2.3 | 23.6 | 63.9 | 57.3 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 461 | 523 | 605 | 526 | 572 | 568 | 36 | 7 |
| | FILINGS — Civil | 397 | 450 | 515 | 451 | 490 | 521 | 18 | 4 |
| | FILINGS — Criminal Felony | 36 | 45 | 60 | 49 | 58 | 47 | 84 | 14 |
| | FILINGS — Supervised Release Hearings** | 28 | 28 | 30 | 26 | 24 | - | 30 | 11 |
| | Pending Cases | 443 | 471 | 526 | 469 | 538 | 598 | 26 | 7 |
| | Weighted Filings** | 518 | 565 | 651 | 590 | 584 | 557 | 24 | 6 |
| | Terminations | 489 | 578 | 545 | 564 | 627 | 626 | 32 | 7 |
| | Trials Completed | 12 | 13 | 12 | 14 | 12 | 14 | 79 | 11 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 12.4 | 10.3 | 8.2 | 9.4 | 8.6 | 9.1 | 82 | 14 |
| | From Filing to Disposition — Civil** | 7.2 | 7.4 | 7.3 | 7.5 | 7.9 | 7.1 | 10 | 2 |
| | From Filing to Trial** (Civil Only) | 21.3 | 20.5 | 17.8 | 21.2 | 20.0 | 21.0 | 29 | 4 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 1,240 | 809 | 624 | 609 | 650 | 541 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 11.6 | 7.2 | 5.0 | 5.4 | 5.2 | 3.8 | 79 | 14 |
| | Average Number of Felony Defendants Filed Per Case | 1.6 | 1.5 | 1.4 | 1.4 | 1.4 | 1.5 | | |
| | Jurors — Avg. Present for Jury Selection | 64.08 | 47.33 | 49.01 | 49.49 | 54.63 | 61.75 | | |
| | Jurors — Percent Not Selected or Challenged | 55.7 | 48.3 | 49.4 | 51.6 | 55.5 | 58.8 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 11104 | 994 | 211 | 2833 | 274 | 58 | 754 | 1330 | 497 | 1425 | 1188 | 80 | 1460 |
| Criminal* | 999 | 3 | 151 | 234 | 88 | 228 | 54 | 46 | 43 | 43 | 25 | 35 | 49 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

C

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **CONNECTICUT** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 2,460 | 2,530 | 2,717 | 2,752 | 2,816 | 2,858 | U.S. | Circuit |
| | Terminations | 2,641 | 2,690 | 2,644 | 2,596 | 3,027 | 2,969 | | |
| | Pending | 3,121 | 3,276 | 3,407 | 3,337 | 3,190 | 3,415 | | |
| | % Change in Total Filings — Over Last Year | | -2.8 | | | | | 38 | 4 |
| | % Change in Total Filings — Over Earlier Years | | | -9.5 | -10.6 | -12.7 | -13.9 | 73 | 4 |
| | Number of Judgeships | 8 | 8 | 8 | 8 | 8 | 8 | | |
| | Vacant Judgeship Months** | 12.0 | 11.0 | .0 | 6.5 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 308 | 317 | 340 | 345 | 353 | 357 | 75 | 5 |
| | FILINGS — Civil | 261 | 272 | 293 | 294 | 307 | 330 | 62 | 5 |
| | FILINGS — Criminal Felony | 36 | 32 | 35 | 37 | 36 | 27 | 84 | 5 |
| | FILINGS — Supervised Release Hearings** | 11 | 13 | 12 | 14 | 10 | - | 78 | 6 |
| | Pending Cases | 390 | 410 | 426 | 417 | 399 | 427 | 42 | 5 |
| | Weighted Filings** | 376 | 379 | 409 | 396 | 420 | 415 | 70 | 5 |
| | Terminations | 330 | 336 | 331 | 325 | 378 | 371 | 75 | 5 |
| | Trials Completed | 12 | 15 | 16 | 17 | 20 | 22 | 79 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 13.9 | 12.2 | 11.4 | 9.5 | 10.9 | 12.6 | 87 | 3 |
| | From Filing to Disposition — Civil** | 11.6 | 11.4 | 11.6 | 10.5 | 10.1 | 12.8 | 71 | 5 |
| | From Filing to Trial** (Civil Only) | 29.8 | 32.4 | 31.0 | 30.0 | 31.0 | 28.7 | 62 | 3 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 339 | 358 | 325 | 318 | 231 | 292 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 12.5 | 12.3 | 10.7 | 10.6 | 8.1 | 9.3 | 82 | 3 |
| | Average Number of Felony Defendants Filed Per Case | 1.6 | 1.8 | 1.7 | 1.4 | 1.8 | 1.8 | | |
| | Jurors — Avg. Present for Jury Selection | 52.82 | 56.95 | 63.51 | 54.54 | 46.25 | 52.43 | | |
| | Jurors — Percent Not Selected or Challenged | 32.4 | 38.6 | 32.7 | 31.7 | 34.2 | 27.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2087 | 40 | 46 | 278 | 37 | 23 | 127 | 301 | 216 | 130 | 498 | 1 | 390 |
| Criminal* | 280 | 1 | 69 | 14 | 46 | 70 | 9 | 21 | 3 | 4 | 5 | 8 | 30 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

**D**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA SOUTHERN** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 8,511 | 9,097 | 8,479 | 9,058 | 9,490 | 10,790 | | |
| | Terminations | | 8,979 | 9,463 | 8,904 | 9,370 | 9,797 | 10,170 | | |
| | Pending | | 6,538 | 6,948 | 7,302 | 7,788 | 8,203 | 9,099 | | |
| | % Change in Total Filings | Over Last Year | | -6.5 | | | | | 57 | 8 |
| | | Over Earlier Years | | | .4 | -6.0 | -10.3 | -21.1 | 86 | 9 |
| | Number of Judgeships | | 18 | 18 | 18 | 18 | 17 | 17 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 7.5 | 12.8 | 29.5 | 21.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 473 | 505 | 470 | 503 | 559 | 635 | 30 | 5 |
| | | Civil | 373 | 397 | 373 | 396 | 441 | 527 | 28 | 5 |
| | | Criminal Felony | 76 | 87 | 79 | 90 | 103 | 108 | 40 | 5 |
| | | Supervised Release Hearings** | 24 | 21 | 18 | 17 | 15 | - | 39 | 4 |
| | Pending Cases | | 363 | 386 | 406 | 433 | 483 | 535 | 52 | 5 |
| | Weighted Filings** | | 501 | 525 | 513 | 558 | 606 | 667 | 28 | 5 |
| | Terminations | | 499 | 526 | 495 | 521 | 576 | 598 | 28 | 4 |
| | Trials Completed | | 19 | 20 | 20 | 21 | 23 | 23 | 47 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 5.8 | 5.8 | 6.1 | 6.2 | 6.5 | 6.3 | 9 | 2 |
| | | Civil** | 6.7 | 6.6 | 6.3 | 6.3 | 7.7 | 7.3 | 9 | 1 |
| | From Filing to Trial** (Civil Only) | | 16.3 | 16.7 | 18.0 | 18.3 | 15.0 | 19.3 | 7 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 962 | 902 | 1,047 | 714 | 223 | 278 | | |
| | | Percentage | 16.9 | 14.9 | 16.7 | 10.6 | 3.2 | 3.8 | 86 | 9 |
| | Average Number of Felony Defendants Filed Per Case | | 1.6 | 1.5 | 1.7 | 1.6 | 1.5 | 1.5 | | |
| | Jurors | Avg. Present for Jury Selection | 49.48 | 41.83 | 42.54 | 44.00 | 42.51 | 45.57 | | |
| | | Percent Not Selected or Challenged | 26.9 | 21.7 | 19.2 | 23.8 | 22.8 | 28.8 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6716 | 152 | 357 | 1225 | 107 | 42 | 1433 | 1045 | 502 | 334 | 763 | 16 | 740 |
| Criminal* | 1348 | 33 | 339 | 280 | 103 | 313 | 32 | 44 | 31 | 46 | 31 | 44 | 52 |

¹ Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
²* See "Explanation of Selected Terms."

E

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| ILLINOIS NORTHERN | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 8,093 | 9,056 | 10,584 | 11,126 | 11,135 | 10,957 | U.S. | Circuit |
| | Terminations | 8,255 | 8,805 | 11,461 | 10,888 | 10,709 | 10,319 | | |
| | Pending | 7,711 | 7,914 | 7,706 | 8,699 | 8,587 | 8,271 | | |
| | % Change in Total Filings — Over Last Year | | -10.6 | | | | | 78 | 6 |
| | % Change in Total Filings — Over Earlier Years | | | -23.5 | -27.3 | -27.3 | -26.1 | 92 | 7 |
| Number of Judgeships | | 22 | 22 | 22 | 22 | 22 | 22 | | |
| Vacant Judgeship Months** | | 5.7 | 12.0 | 9.6 | 22.1 | 17.8 | 3.3 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 367 | 412 | 481 | 505 | 506 | 498 | 66 | 5 |
| | FILINGS — Civil | 330 | 369 | 437 | 461 | 459 | 470 | 46 | 4 |
| | FILINGS — Criminal Felony | 26 | 34 | 32 | 38 | 39 | 28 | 90 | 7 |
| | FILINGS — Supervised Release Hearings** | 11 | 9 | 12 | 6 | 8 | - | 78 | 6 |
| | Pending Cases | 351 | 360 | 350 | 395 | 390 | 376 | 61 | 4 |
| | Weighted Filings** | 443 | 485 | 512 | 526 | 525 | 503 | 43 | 4 |
| | Terminations | 375 | 400 | 521 | 495 | 487 | 469 | 66 | 5 |
| | Trials Completed | 11 | 13 | 12 | 12 | 14 | 15 | 86 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 13.9 | 12.9 | 10.3 | 9.9 | 10.3 | 9.9 | 87 | 7 |
| | From Filing to Disposition — Civil** | 6.5 | 6.9 | 5.9 | 5.5 | 5.5 | 5.6 | 7 | 2 |
| | From Filing to Trial** (Civil Only) | 26.4 | 27.0 | 28.4 | 26.0 | 26.0 | 26.3 | 51 | 5 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 500 | 388 | 337 | 442 | 461 | 485 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 7.4 | 5.6 | 5.0 | 5.6 | 6.0 | 6.4 | 61 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.8 | 1.9 | 1.9 | 1.7 | 1.7 | 1.6 | | |
| | Jurors — Avg. Present for Jury Selection | 45.07 | 51.46 | 39.36 | 45.57 | 43.63 | 39.43 | | |
| | Jurors — Percent Not Selected or Challenged | 30.9 | 36.9 | 31.0 | 37.3 | 34.8 | 36.7 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 7265 | 112 | 175 | 631 | 42 | 110 | 1401 | 977 | 565 | 496 | 1490 | 39 | 1227 |
| Criminal* | 576 | 1 | 161 | 44 | 63 | 140 | 60 | 23 | 12 | 17 | 5 | 18 | 32 |

*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

**F**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| NEW JERSEY | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 7,275 | 7,539 | 7,567 | 7,270 | 7,555 | 6,972 | U.S. | Circuit |
| | Terminations | | 7,480 | 7,605 | 7,373 | 6,998 | 7,125 | 7,057 | | |
| | Pending | | 6,855 | 6,987 | 6,986 | 6,765 | 6,538 | 6,101 | | |
| | % Change in Total Filings | Over Last Year | | -3.5 | | | | | 43 | 3 |
| | | Over Earlier Years | | | -3.9 | .1 | -3.7 | 4.3 | 45 | 4 |
| | Number of Judgeships | | 17 | 17 | 17 | 17 | 17 | 17 | | |
| | Vacant Judgeship Months** | | 32.3 | 27.8 | 12.0 | 11.0 | 47.8 | 7.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 428 | 444 | 446 | 428 | 445 | 410 | 46 | 3 |
| | | Civil | 369 | 387 | 390 | 370 | 387 | 369 | 29 | 3 |
| | | Criminal Felony | 51 | 48 | 46 | 48 | 49 | 41 | 70 | 3 |
| | | Supervised Release Hearings** | 8 | 9 | 10 | 10 | 9 | - | 85 | 3 |
| | Pending Cases | | 403 | 411 | 411 | 398 | 385 | 359 | 38 | 4 |
| | Weighted Filings** | | 481 | 493 | 500 | 486 | 482 | 463 | 33 | 2 |
| | Terminations | | 440 | 447 | 434 | 412 | 419 | 415 | 48 | 3 |
| | Trials Completed | | 11 | 10 | 10 | 10 | 12 | 11 | 86 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 12.1 | 10.0 | 9.8 | 9.0 | 9.4 | 8.0 | 81 | 5 |
| | | Civil** | 8.2 | 7.3 | 7.6 | 7.9 | 8.4 | 7.5 | 21 | 3 |
| | From Filing to Trial** (Civil Only) | | 33.0 | 36.7 | 33.4 | 33.8 | 30.0 | 33.0 | 68 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 306 | 346 | 252 | 236 | 231 | 179 | | |
| | | Percentage | 5.2 | 5.7 | 4.2 | 4.0 | 4.0 | 3.3 | 41 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.3 | 1.2 | 1.2 | 1.2 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 88.98 | 75.41 | 40.79 | 51.72 | 41.77 | 51.55 | | |
| | | Percent Not Selected or Challenged | 39.2 | 38.3 | 24.1 | 40.3 | 37.7 | 38.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6274 | 240 | 343 | 904 | 82 | 26 | 845 | 1031 | 721 | 377 | 869 | 39 | 797 |
| Criminal* | 862 | 3 | 268 | 48 | 124 | 176 | 53 | 39 | 19 | 22 | 27 | 28 | 55 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

G

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **TENNESSEE EASTERN** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | |
| OVERALL CASELOAD STATISTICS | Filings* | 1,774 | 2,079 | 2,268 | 2,375 | 2,237 | 2,056 | U.S. | Circuit |
| | Terminations | 1,961 | 2,331 | 2,241 | 2,121 | 2,145 | 2,127 | | |
| | Pending | 1,908 | 2,067 | 2,292 | 2,270 | 1,976 | 1,872 | | |
| | % Change in Total Filings — Over Last Year | | -14.7 | | | | | 85 | 8 |
| | % Change in Total Filings — Over Earlier Years | | | -21.8 | -25.3 | -20.7 | -13.7 | 71 | 8 |
| | Number of Judgeships | 5 | 5 | 5 | 5 | 5 | 5 | | |
| | Vacant Judgeship Months** | .6 | .0 | .0 | 16.5 | 17.0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 355 | 416 | 453 | 475 | 448 | 411 | 69 | 9 |
| | FILINGS — Civil | 251 | 297 | 337 | 344 | 335 | 311 | 66 | 8 |
| | FILINGS — Criminal Felony | 83 | 87 | 99 | 112 | 92 | 100 | 33 | 3 |
| | FILINGS — Supervised Release Hearings** | 21 | 32 | 17 | 19 | 21 | - | 51 | 5 |
| | Pending Cases | 382 | 413 | 458 | 454 | 395 | 374 | 46 | 7 |
| | Weighted Filings** | 402 | 443 | 496 | 552 | 481 | 458 | 62 | 8 |
| | Terminations | 392 | 466 | 448 | 424 | 429 | 425 | 60 | 8 |
| | Trials Completed | 23 | 29 | 21 | 21 | 18 | 20 | 28 | 4 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 10.3 | 10.8 | 8.3 | 6.5 | 7.7 | 6.9 | 66 | 6 |
| | From Filing to Disposition — Civil** | 12.7 | 11.2 | 11.7 | 11.0 | 11.6 | 10.0 | 84 | 7 |
| | From Filing to Trial** (Civil Only) | 26.5 | 22.0 | 21.5 | 16.3 | 21.5 | 20.0 | 53 | 5 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 97 | 81 | 78 | 69 | 39 | 45 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.6 | 5.0 | 4.3 | 3.7 | 2.3 | 2.9 | 47 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.6 | 1.4 | 1.4 | 1.6 | 1.5 | 1.4 | | |
| | Jurors — Avg. Present for Jury Selection | 34.29 | 36.35 | 37.80 | 40.52 | 32.59 | 33.00 | | |
| | Jurors — Percent Not Selected or Challenged | 27.9 | 28.1 | 33.5 | 40.0 | 34.0 | 36.6 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1257 | 108 | 60 | 262 | 9 | 17 | 84 | 169 | 174 | 27 | 280 | 6 | 61 |
| Criminal* | 412 | 6 | 139 | 25 | 122 | 38 | 20 | 14 | 10 | 3 | 9 | 10 | 16 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**H**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| WASHINGTON WESTERN | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | 3,471 | 4,167 | 4,858 | 5,038 | 4,103 | 3,257 | U.S. | Circuit |
| | Terminations | 4,101 | 4,584 | 4,337 | 3,491 | 4,041 | 3,396 | | |
| | Pending | 3,280 | 4,303 | 4,608 | 3,890 | 2,373 | 2,325 | | |
| | % Change in Total Filings — Over Last Year | | -16.7 | | | | | 89 | 14 |
| | % Change in Total Filings — Over Earlier Years | | | -28.6 | -31.1 | -15.4 | 6.6 | 38 | 6 |
| | Number of Judgeships | 7 | 7 | 7 | 7 | 7 | 7 | | |
| | Vacant Judgeship Months** | 14.1 | 6.7 | 14.0 | 2.6 | 12.0 | 11.0 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS — Total | 496 | 595 | 694 | 720 | 586 | 465 | 27 | 6 |
| | FILINGS — Civil | 396 | 487 | 582 | 616 | 498 | 416 | 19 | 5 |
| | FILINGS — Criminal Felony | 69 | 74 | 78 | 68 | 56 | 49 | 49 | 8 |
| | FILINGS — Supervised Release Hearings** | 31 | 34 | 34 | 36 | 32 | - | 24 | 8 |
| | Pending Cases | 469 | 615 | 658 | 556 | 339 | 332 | 21 | 6 |
| | Weighted Filings** | 572 | 626 | 611 | 621 | 617 | 557 | 8 | 3 |
| | Terminations | 586 | 655 | 620 | 499 | 577 | 485 | 14 | 3 |
| | Trials Completed | 19 | 16 | 13 | 10 | 12 | 17 | 47 | 5 |
| **MEDIAN TIMES (months)** | From Filing to Disposition — Criminal Felony | 7.9 | 7.3 | 6.3 | 6.2 | 5.8 | 6.3 | 33 | 4 |
| | From Filing to Disposition — Civil** | 9.1 | 9.6 | 7.2 | 6.4 | 5.8 | 8.1 | 41 | 6 |
| | From Filing to Trial** (Civil Only) | 19.0 | 19.4 | 16.4 | 16.7 | 18.0 | 15.0 | 16 | 3 |
| **OTHER** | Civil Cases Over 3 Years Old** — Number | 310 | 259 | 32 | 23 | 36 | 32 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 11.2 | 6.9 | .8 | .7 | 1.8 | 1.6 | 78 | 13 |
| | Average Number of Felony Defendants Filed Per Case | 1.7 | 1.6 | 1.7 | 1.6 | 1.6 | 1.6 | | |
| | Jurors — Avg. Present for Jury Selection | 45.30 | 36.80 | 42.94 | 38.85 | 36.51 | 36.96 | | |
| | Jurors — Percent Not Selected or Challenged | 39.9 | 25.5 | 42.2 | 29.1 | 32.8 | 29.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2772 | 254 | 101 | 580 | 48 | 19 | 258 | 355 | 302 | 133 | 378 | 9 | 335 |
| Criminal* | 474 | 36 | 97 | 98 | 82 | 55 | 22 | 22 | 1 | 20 | 14 | 5 | 22 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

A

SEA3079 SJS

1
2
3
4
5
6

```
_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

        MAR 1 9 2007   DJ

            AT SEATTLE
        CLERK U.S. DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
   BY                          DEPUTY
```

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

TOM WHALEY individually and on behalf of
all others similarly situated,

11

Plaintiff,

12

vs.

13
14
15

MENU FOODS, a foreign corporation, THE
IAMS COMPANY, a foreign corporation, DOG
FOOD PRODUCERS NUMBERS 1- 50 and
CAT FOOD PRODUCERS 1- 40,

16

Defendants.

No. CV7   0411 M

CLASS ACTION COMPLAINT

07-CV-00411-CMP

17

18

Plaintiff Tom Whaley, by and through his undersigned attorneys, Myers & Company,

19

P.L.L.C., brings this civil action for damages on behalf of himself and all others similarly

20

situated against the above-named Defendants and complains and alleges as follows:

21

### I.     NATURE OF ACTION

22
23

1.1     Mr. Whaley brings this action as a Class Action pursuant to Rule 23 of the

24

Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food

25

CLASS ACTION COMPLAINT - 1

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

which was produced by any of the above-named defendants and/or has had a dog or cat become ill as a result of eating the food.

    1.2    The defendants are producers and distributors of, *inter alia*, dog and cat food. Menu Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba and Science Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such as Wal-Mart, Kroger and Safeway.

    1.3    Dog and cat food which the defendants produced has caused an unknown number of dogs and cats to become ill and die.

    1.4    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat food which are causing dogs and cats to become ill. All recalled food to date is of the "cuts and gravy wet" style.

    1.5    As a result of the Defendants' actions Mr. Whaley and other Class members have suffered emotional and economic damage.

## II.    PARTIES

    2.1    Plaintiff Tom Whaley has at all material times been a resident of Ontario, Oregon.

    2.2    Defendant Menu Foods is, upon information and belief, a corporation organized under the laws of Canada which transacts business in Washington State and Oregon State.

    2.3    Defendant The Iams Company, is upon information and belief, a foreign corporation which transacts business in Washington State and Oregon State.

## III.    JURISDICTION AND VENUE

    3.1    Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds

CLASS ACTION COMPLAINT - 2

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1  $75,000.00.  This court has supplemental jurisdiction over the state law claims pursuant to 28

2  U.S.C. § 1367.

3       3.2     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because

4  the Defendants systematically and continuously sold their product within this district and

5  Defendants transact business within this district.

## IV.    CLASS ACTION ALLEGATION

     4.1     Mr. Whaley brings this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2)

and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class (the

"Class") composed of all persons who purchased any dog or cat food which was produced by the

defendants and/or has had a dog or cat become ill as a result of eating the food.  Mr. Whaley

reserves the right to modify this class definition prior to moving for class certification.

     4.2     This action has been brought and may be properly maintained as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

     a.     The Class is ascertainable and there is a well-defined community of

interest among the members of the Class;

     b.     Membership in the Class is so numerous as to make it impractical to bring

all Class members before the Court.  The identity and exact number of Class members is

unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that

Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to pets.

     c.     Mr. Whaley's claims are typical of those of other Class members, all of

whom have suffered harm due to Defendants' uniform course of conduct.

     d.     Mr. Whaley is a member of the Class.

CLASS ACTION COMPLAINT - 3

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

e.    There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

i.    Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

ii.    Were the defendants' representations regarding the safety of the dog and cat food false?

iii.    Did the defendants' dog and cat food cause Mr. Whaley and other Class members' pets to become ill?

iv.    Were Mr. Whaley and other Class members damaged?

f.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.    Mr. Whaley will fairly and adequately protect the interests of the Class in that Mr. Whaley has no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent himself and the Class;

h.    Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if

CLASS ACTION COMPLAINT - 4

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

1   any, Class members could afford to seek legal redress individually for the wrongs Defendants

2   have committed against them;

3           j.      This action will foster an orderly and expeditious administration of Class

4   claims, economies of time, effort and expense, and uniformity of decision;

5           k.      Inferences and presumptions of materiality and reliance are available to

6   obtain class-wide determinations of those elements within the Class claims, as are accepted

7   methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants'

8   common liability, the Court can efficiently determine the claims of the individual Class

9   members;

10          l.      This action presents no difficulty that would impede the Court's

11  management of it as a class action, and a class action is the best (if not he only) available means

12  by which members of the Class can seek legal redress for the harm caused them by Defendants.

13          m.      In the absence of a class action, Defendants would be unjustly enriched

14  because they would be able to retain the benefits and fruits of their wrongful conduct.

15      4.3     The Claims in this case are also properly certifiable under applicable law.

16                  **V.      STATEMENT OF FACTS**

17      5.1     Plaintiff Tom Whaley was the owner of a female cat named Samoya.

18      5.2     Mr. Whaley purchased Iams brand cuts and gravy wet-style cat food from Wal-

19  Mart for Samoya to consume.

20      5.3     Samoya ate the Iams brand cuts and gravy wet-style cat food between December

21  2006 and February 2007.

CLASS ACTION COMPLAINT - 5

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

5.4    Samoya became extremely ill and Mr. Whaley took her to a veterinarian who informed him that Samoya had suffered kidney failure, also known as acute renal failure. Samoya had to be euthanized.

5.5    In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and pets to become ill.  One common symptom in the sick animals was kidney failure, also known as acute renal failure.

5.6    The Iams brand cuts and gravy wet-style cat food that Samoya consumed between December 2006 and February 2007 is one of the brands that Menu Foods recalled.

5.7    As a result of Defendants' acts and omissions Mr. Whaley and other Class members have suffered emotional and economic damage.

## VI.    CAUSES OF ACTION

A.    <u>Breach of Contract</u>

6.1    Plaintiff realleges all prior allegations as though fully stated herein.

6.2    Plaintiff and Class members purchased pet food produced by the defendants based on the understanding that the food was safe for their pets to consume.

6.3    The pet food produced by the defendants was not safe for pets to consume and caused dogs and cats to become ill.  The unsafe nature of the pet food constituted a breach of contract.

6.4    As a result of the breach Plaintiffs and Class members suffered damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

CLASS ACTION COMPLAINT - 6

B.     Unjust Enrichment

6.5    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.6    Defendants were and continue to be unjustly enriched at the expense of Mr. Whaley and other Class members.

6.7    Defendants should be required to disgorge this unjust enrichment.

C.     Unlawful, Deceptive and Unfair Business Practices

6.8    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.9    Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

6.10   Defendants' sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

6.11   As a result of Defendants' unfair or deceptive acts or practices Mr. Whaley and other class members suffered injuries in an amount to be proven at trial.

D.     Breach of Warranties

6.12   Mr. Whaley realleges all prior allegations as though fully stated herein.

6.13   Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

6.14   Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

6.15   Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

CLASS ACTION COMPLAINT - 7

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

6.16    Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

6.17    As a proximate result of the aforementioned wrongful conduct and breach, Mr. Whaley and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

E.    Negligent Misrepresentation

6.18    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.19    Defendants owed Mr. Whaley and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

6.20    Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

6.21    In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

6.22    Mr. Whaley and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

6.23    As a proximate cause of Defendants' false representations Mr. Whaley and other Class members suffered damages in an amount to be proven at trial.

### VII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Whaley and Class members request that the Court enter an order of judgment against Defendants including the following:

A.    Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

CLASS ACTION COMPLAINT - 8

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B.      Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with defendants and their acts or omissions) and such other relief as provided by the statutes cited herein;

C.      Prejudgment and post-judgment interest on such monetary relief;

D.      Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

E.      Other appropriate injunctive relief;

F.      The costs of bringing this suit, including reasonable attorneys' fees; and

G.      Such other relief as this Court may deem just, equitable and proper.

DATED this 19th day of March, 2007.

                        MYERS & COMPANY, P.L.L.C.

                        Attorneys for Plaintiffs and Class members


                        By:   /s/ Michael David Myers
                              Michael David Myers
                              WSBA No. 22486
                              Myers & Company, P.L.L.C.
                              1809 Seventh Avenue, Suite 700
                              Seattle, Washington  98101
                              Telephone:  (206) 398-1188
                              Facsimile:  (206) 400-1112
                              E-mail:  mmyers@myers-company.com

CLASS ACTION COMPLAINT - 9

**B**

1

2

```
___ FILED          ___ ENTERED
___ LODGED         ___ RECEIVED
```

3

★   MAR 27 2007   ★

4

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

5

6

7    UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9    STACEY HELLER, TOINETTE ROBINSON,
DAVID RAPP, and CECILY AND

10   TERRENCE MITCHELL, individually and on
behalf of all others similarly situated,

No. **CV 07 - 0453** 

11

CLASS ACTION COMPLAINT

Plaintiff,

12

13   v.

14   MENU FOODS, a foreign corporation,

Defendant.

15

16       Plaintiffs Stacey Heller, Toinette Robinson, David Rapp, and Cecily and Terrence

17   Mitchell ("Plaintiffs"), by and through their undersigned attorneys, bring this civil action for

18   damages on behalf of themselves and all others similarly situated against the above-named

19   Defendant and complain and allege as follows:

20                         I.    **NATURE OF ACTION**

21       1.    Plaintiffs bring this action as a Class Action under Rule 23 of the Federal Rules of

22   Civil Procedure on behalf of all persons who purchased any dog or cat food that was produced

23   by defendant Menu Foods and/or has had a dog or cat become ill or die as a result of eating the

24   food.

25       2.    The Defendant is a producer of, *inter alia*, dog and cat food.  Menu Foods

26   produces dog and cat food sold under familiar brand names such as Iams, Eukanuba and Science

CLASS ACTION COMPLAINT  - 1
Case No.

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP

1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161395 V1

1   Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such

2   as Wal-Mart, Kroger and Safeway.

3      3.  Dog and cat food that the Defendant produced caused an unknown number of

4   dogs and cats to become ill, and many of them to die.

5      4.  To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

6   food that have sickened and killed dogs and cats. All recalled food to date is of the "cuts and

7   gravy wet" style.

8      5.  As a result of the Defendant's actions, Plaintiffs and other Class members have

9   suffered economic damage.

10         **II.  PARTIES**

11     6.  Plaintiff Stacey Heller has at all material times been a resident of Pulaski,

12  Virginia. Ms. Heller had a pet that became sick and died after eating Defendant's pet food.

13     7.  Plaintiff Toinette Robinson has at all material times been a resident of Truckee,

14  California. Ms. Robinson had a pet that became sick and died after eating Defendant's pet food.

15     8.  Plaintiff David Rapp has at all material times been a resident of Hannover

16  Township, Pennsylvania. Mr. Rapp had a pet that became sick and died after eating Defendant's

17  pet food.

18     9.  Plaintiffs Cecily and Terrence Mitchell have at all material times been a resident

19  of Seattle, Washington. The Mitchells had a pet that became sick and died after eating

20  Defendant's pet food.

21     10.  Defendant Menu Foods is, upon information and belief, a corporation organized

22  under the laws of Canada that transacts business in Washington State.

23       **III.  JURISDICTION AND VENUE**

24     11.  Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

25  Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds

26

CLASS ACTION COMPLAINT - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    $75,000.00. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C.

2    § 1367.

3       12.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because the

4    Defendant systematically and continuously sold its product within this district and Defendant

5    transacts business within this district.

6               **IV.    CLASS ACTION ALLEGATION**

7       13.     Plaintiffs bring this suit as a class action under Rules 23(a), (b)(1), (b)(2) and

8    (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the

9    "Class") composed of all persons who purchased any dog or cat food that was produced by the

10    Defendant and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs

11    reserve the right to modify this class definition before moving for class certification.

12       14.     The Class is ascertainable and there is a well-defined community of interest

13    among the members of the Class.

14       15.     Membership in the Class is so numerous as to make it impractical to bring all

15    Class members before the Court. The identity and exact number of Class members is unknown

16    but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu

17    Foods has identified 50 dog foods and 40 cat foods that may be causing harm to pets.

18       16.     Plaintiffs' claims are typical of those of other Class members, all of whom have

19    suffered harm due to Defendant's uniform course of conduct.

20       17.     Plaintiffs are members of the Class.

21       18.     There are numerous and substantial questions of law and fact common to all of

22    the members of the Class that control this litigation and predominate over any questions affecting

23    only individual members of the Class. The common issues include, but are not limited to, the

24    following:

25          (a)     Was the Defendant's dog and cat food materially defective, and unfit for

26    use as dog or cat food?

CLASS ACTION COMPLAINT - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161395 V1

1            (b)     Whether Defendant breached any contract, implied contract or warranties

2    related to the sale of the dog and cat food?

3            (c)     Did the Defendant's dog and cat food cause Plaintiffs' and other Class

4    members' pets to become ill?

5            (d)     Were Plaintiffs and other Class members damaged, and, if so, what is the

6    proper measure thereof?

7            (e)     The appropriate form of injunctive, declaratory and other relief.

8        19.    The prosecution of separate actions by members of the Class would create a risk

9    of establishing incompatible standards of conduct for the Defendant – for example, one court

10   might decide that the Defendant is obligated under the law to pay damages to Class members,

11   and another might decide that the Defendant is not so obligated.  Individual actions may, as a

12   practical matter, be dispositive of the interests of the Class.

13       20.    Plaintiffs will fairly and adequately protect the interests of the Class in that they

14   have no interests that are antagonistic to other members of the Class and have retained counsel

15   competent in the prosecution of class actions to represent themselves and the Class.

16       21.    A class action is superior to other available methods for the fair and efficient

17   adjudication of this controversy.  Given (i) the substantive complexity of this litigation; (ii) the

18   size of individual Class members' claims; and (iii) the limited resources of the Class members,

19   few, if any, Class members could afford to seek legal redress individually for the wrongs

20   Defendant has committed against them.

21       22.    Without a class action, the Class will continue to suffer damage, Defendant's

22   violations of the law or laws will continue without remedy, and Defendant will continue to enjoy

23   the fruits and proceeds of its unlawful misconduct.

24       23.    This action will foster an orderly and expeditious administration of Class claims,

25   economies of time, effort and expense, and uniformity of decision.

26

CLASS ACTION COMPLAINT  - 4
Case No.

HB

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161395 V1

24.     Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Class members.

25.     This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendant.

26.     In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

27.     The Claims in this case are also properly certifiable under applicable law.

## V.     STATEMENT OF FACTS

28.     Plaintiff Stacey Heller was the owner of a female cat named Callie.

29.     Ms. Heller purchased Special Kitty wet cat food from Wal-Mart for Callie to consume.

30.     Callie ate the Special Kitty brand wet-style cat food for several years before her death.

31.     Callie became extremely ill during the week of March 12, 2007. On March 14, 2007, Ms. Heller took Callie to a veterinarian, who informed her that Callie had suffered kidney failure, also known as acute renal failure. On March 19, 2007, Callie had to be euthanized.

32.     Plaintiff Toinette Robinson was the owner of a female dog named Lhotse.

33.     Ms. Robinson purchased Priority U.S. brand wet dog food from Safeway for Lhotse to consume.

34.     Lhotse ate the Priority U.S. brand wet dog food before her death.

CLASS ACTION COMPLAINT - 5
Case No.

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161395 V1

35. Lhotse became extremely ill during the end of January 2007. On February 1, 2007, Ms. Robinson took Lhotse to a veterinarian, who informed her that Lhotse had suffered kidney failure. On February 15, 2007, Lhotse had to be euthanized.

36. Plaintiff David Rapp was the owner of a male dog named Buck.

37. Mr. Rapp purchased Weiss Total Pet wet-style dog food for Buck to consume.

38. Buck became extremely ill in early February 2007. On February 10, 2007, Mr. Rapp took Buck to a veterinarian, who informed him that Buck had suffered kidney failure. Buck died soon afterwards.

39. Plaintiffs Cecily and Terrence Mitchell were the owners of a male cat named Yoda.

40. The Mitchells purchased Iams wet cat food from QFC for Yoda to consume.

41. Yoda became extremely ill and died after eating Iams wet pouches.

42. In March 2007, Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food that had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure.

43. The Special Kitty wet cat food from Wal-Mart that Callie consumed for several years before her death is one of the brands that Menu Foods recalled.

44. The Priority U.S. brand wet dog food from Safeway that Lhotse consumed before her death is also one of the brands that Menu Foods recalled.

45. The Weiss Total Pet wet-style dog food that Buck consumed before his death is another of the brands that Menu Foods recalled.

46. The Iams wet cat food from QFC that Yoda consumed years before his death is also one of the brands that Menu Foods recalled.

47. As a result of Defendant's acts and omissions Plaintiffs and other Class members have suffered economic damage.

CLASS ACTION COMPLAINT - 6
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161395 V1

1

## VI.    BREACH OF CONTRACT

2    48.    Plaintiffs reallege all prior allegations as though fully stated herein.

3    49.    Plaintiffs and Class members purchased pet food produced by the Defendant

4    based on the understanding that the food was safe for their pets to consume.

5    50.    The pet food produced by the Defendant was not safe for pets to consume and

6    caused dogs and cats to become ill.  The unsafe nature of the pet food constituted a breach of

7    contract.

8    51.    As a result of the breach Plaintiffs and Class members suffered damages that may

9    fairly and reasonably be considered as arising naturally from the breach or may reasonably be

10    supposed to have been in the contemplation of the parties, at the time they made the contract, as

11    the probable result of the breach of it.

12

## VII.    UNJUST ENRICHMENT

13    52.    Plaintiffs reallege all prior allegations as though fully stated herein.

14    53.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs

15    and other Class members.

16    54.    Defendant should be required to disgorge this unjust enrichment.

17

## VIII.    UNLAWFUL, DECEPTIVE AND UNFAIR BUSINESS PRACTICES

18    55.    Plaintiffs reallege all prior allegations as though fully stated herein.

19    56.    Defendant's sale of tainted pet food constitutes an unlawful, deceptive and unfair

20    business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et*

21    *seq.*, and similar statutory enactments of other states (including consumer protection and

22    consumer sales practice acts).

23    57.    Defendant's sale of hazardous pet food has the capacity to deceive a substantial

24    portion of the public and to affect the public interest.

25    58.    As a result of Defendant's unfair or deceptive acts or practices, Plaintiffs and

26    other Class members suffered injuries in an amount to be proven at trial.

CLASS ACTION COMPLAINT  - 7
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161395 V1

1

## IX.    BREACH OF WARRANTIES

2    59.    Plaintiffs reallege all prior allegations as though fully stated herein.

3    60.    Cat food and dog food produced by Menu Foods are "goods" within the meaning

4  of Uniform Commercial Code Article 2.

5    61.    Defendant's conduct as described herein constitutes breach of an implied or

6  express warranty of affirmation.

7    62.    Defendant's conduct as described herein constitutes breach of an implied

8  warranty of merchantability.

9    63.    Defendant's conduct as described herein constitutes breach of an implied

10  warranty of fitness for a particular purpose.

11    64.    As a proximate result of the aforementioned wrongful conduct and breach,

12  Plaintiffs and other Class members have suffered damages in an amount to be proven at trial.

13  Defendant had actual or constructive notice of such damages.

14

## X.    PRAYER FOR RELIEF

15    WHEREFORE, Plaintiffs and Class members request that the Court enter an order of

16  judgment against Defendant including the following:

17    Certification of the action as a class action under Rule 23(b)(1) - (3) of the Federal Rules

18  of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class

19  Representative and their counsel of record as Class Counsel;

20    Actual damages (including all general, special, incidental, and consequential damages),

21  statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the

22  states having a legally sufficient connection with Defendant and its acts or omissions) and such

23  other relief as provided by the statutes cited herein;

24    Prejudgment and post-judgment interest on such monetary relief;

25

26

CLASS ACTION COMPLAINT - 8
Case No.

HB

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161395 V1

1    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal

2    profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged

3    herein;

4    Other appropriate injunctive relief;

5    The costs of bringing this suit, including reasonable attorneys' fees; and

6    Such other relief as this Court may deem just, equitable and proper.

7    DATED this 27th day of March, 2007.

8                                  HAGENS BERMAN SOBOL SHAPIRO LLP

9

10   By: /s/ Steve W. Berman
     Steve W. Berman, WSBA #12536

11   1301 Fifth Avenue, Suite 2900
     Seattle, Washington  98101

12   Telephone: (206) 623-7292
     Facsimile: (206) 623-0594

13   E-mail:  steve@hbsslaw.com

14

15   MYERS & COMPANY, P.L.L.C.
     Michael David Myers

16   1809 Seventh Avenue, Suite 700
     Seattle, Washington  98101

17   Telephone:  (206) 398-1188
     Facsimile:  (206) 400-1112

18   E-mail:  mmyers@myers-company.com

19   *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT  - 9
Case No.



001958-11  161395 V1

C

1

2

3

4

5

6

___ FILED    ___ ENTERED
___ LODGED    ___ RECEIVED

★    MAR 2 / 2007    ★

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

7    UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9    SUZANNE E. JOHNSON and CRAIG R.
KLEMANN, individually and on behalf of all

10    others similarly situated,

No. **CV 07 - 0455 JCC**

11                                    Plaintiff,

CLASS ACTION COMPLAINT

12    v.

13    MENU FOODS, a foreign corporation,

14                                    Defendant.

15

16    Plaintiffs Suzanne E. Johnson and Craig R. Klemann ("Plaintiffs"), by and through their

17    undersigned attorneys, bring this civil action for damages on behalf of themselves and all others

18    similarly situated against the above-named Defendant and complain and allege as follows:

**I.    NATURE OF ACTION**

19

20    1.    Plaintiffs bring this action as a Class Action under Rule 23 of the Federal Rules of

Civil Procedure on behalf of all persons who purchased any dog or cat food that was produced

21    by defendant Menu Foods and/or has had a dog or cat become ill or die as a result of eating the

22    food.

23

24    2.    The Defendant is a producer of, *inter alia*, dog and cat food.  Menu Foods

produces dog and cat food sold under familiar brand names such as Iams, Eukanuba and Science

25

26

CLASS ACTION COMPLAINT  - 1
Case No.

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161455 V1

1    Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such

2    as Wal-Mart, Kroger and Safeway.

3        3.    Dog and cat food that the Defendant produced caused an unknown number of

4    dogs and cats to become ill, and many of them to die.

5        4.    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

6    food that have sickened and killed dogs and cats. All recalled food to date is of the "cuts and

7    gravy wet" style.

8        5.    As a result of the Defendant's actions, Plaintiffs and other Class members have

9    suffered economic damage.

10                    **II.    PARTIES**

11       6.    Plaintiffs Suzanne E. Johnson and Craig R. Klemann have at all material times

12    been residents of Meridian, Idaho. Ms. Johnson and Mr. Klemann have a pet that became sick

13    after eating Defendant's pet food.

14       7.    Defendant Menu Foods is, upon information and belief, a corporation organized

15    under the laws of Canada that transacts business in Washington State.

16               **III.    JURISDICTION AND VENUE**

17       8.    Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

18    Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds

19    $75,000.00. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C.

20    § 1367.

21       9.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because the

22    Defendant systematically and continuously sold its product within this district and Defendant

23    transacts business within this district.

24                **IV.    CLASS ACTION ALLEGATION**

25       10.    Plaintiffs bring this suit as a class action under Rules 23(a), (b)(1), (b)(2) and

26    (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the

CLASS ACTION COMPLAINT - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161455 V1

1  "Class") composed of all persons who purchased any dog or cat food that was produced by the

2  Defendant and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs

3  reserve the right to modify this class definition before moving for class certification.

4       11.    The Class is ascertainable and there is a well-defined community of interest

5  among the members of the Class.

6       12.    Membership in the Class is so numerous as to make it impractical to bring all

7  Class members before the Court. The identity and exact number of Class members is unknown

8  but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu

9  Foods has identified 50 dog foods and 40 cat foods that may be causing harm to pets.

10       13.    Plaintiffs' claims are typical of those of other Class members, all of whom have

11  suffered harm due to Defendant's uniform course of conduct.

12       14.    Plaintiffs are members of the Class.

13       15.    There are numerous and substantial questions of law and fact common to all of

14  the members of the Class that control this litigation and predominate over any questions affecting

15  only individual members of the Class. The common issues include, but are not limited to, the

16  following:

17          (a)    Was the Defendant's dog and cat food materially defective, and unfit for

18  use as dog or cat food?

19          (b)    Whether Defendant breached any contract, implied contract or warranties

20  related to the sale of the dog and cat food?

21          (c)    Did the Defendant's dog and cat food cause Plaintiffs' and other Class

22  members' pets to become ill?

23          (d)    Were Plaintiffs and other Class members damaged, and, if so, what is the

24  proper measure thereof?

25          (e)    The appropriate form of injunctive, declaratory and other relief.

26

CLASS ACTION COMPLAINT - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161455 V1

16.    The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for the Defendant – for example, one court might decide that the Defendant is obligated under the law to pay damages to Class members, and another might decide that the Defendant is not so obligated. Individual actions may, as a practical matter, be dispositive of the interests of the Class.

17.    Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests that are antagonistic to other members of the Class and have retained counsel competent in the prosecution of class actions to represent themselves and the Class.

18.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendant has committed against them.

19.    Without a class action, the Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendant will continue to enjoy the fruits and proceeds of its unlawful misconduct.

20.    This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision.

21.    Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Class members.

22.    This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendant.

CLASS ACTION COMPLAINT - 4
Case No.

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161455 V1

23. In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

24. The Claims in this case are also properly certifiable under applicable law.

## V. STATEMENT OF FACTS

25. Plaintiffs Suzanne E. Johnson and Craig R. Klemann are owners of a male cat named Ollie.

26. Ms. Johnson and Mr. Klemann purchased Special Kitty wet cat food from Wal-Mart and Pet Pride wet cat food from Fred Meyer for Ollie to consume.

27. Ollie ate the Special Kitty and Pet Pride brand wet-style cat food for several years before becoming ill.

28. Ollie became extremely ill after consuming Defendant's cat food and now suffers from kidney problems.

29. In March 2007, Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food that had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure.

30. The Special Kitty wet cat food from Wal-Mart and the Pet Pride wet cat food from Fred Meyer that Ollie consumed for several years before becoming ill are brands that Menu Foods recalled.

31. As a result of Defendant's acts and omissions Plaintiffs and other Class members have suffered economic damage.

## VI. BREACH OF CONTRACT

32. Plaintiffs reallege all prior allegations as though fully stated herein.

33. Plaintiffs and Class members purchased pet food produced by the Defendant based on the understanding that the food was safe for their pets to consume.

CLASS ACTION COMPLAINT - 5
Case No.

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161455 V1

34.     The pet food produced by the Defendant was not safe for pets to consume and caused dogs and cats to become ill.  The unsafe nature of the pet food constituted a breach of contract.

35.     As a result of the breach Plaintiffs and Class members suffered damages that may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

### VII.    UNJUST ENRICHMENT

36.     Plaintiffs reallege all prior allegations as though fully stated herein.

37.     Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and other Class members.

38.     Defendant should be required to disgorge this unjust enrichment.

### VIII.    UNLAWFUL, DECEPTIVE AND UNFAIR BUSINESS PRACTICES

39.     Plaintiffs reallege all prior allegations as though fully stated herein.

40.     Defendant's sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

41.     Defendant's sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

42.     As a result of Defendant's unfair or deceptive acts or practices, Plaintiffs and other Class members suffered injuries in an amount to be proven at trial.

### IX.    BREACH OF WARRANTIES

43.     Plaintiffs reallege all prior allegations as though fully stated herein.

44.     Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

CLASS ACTION COMPLAINT  - 6
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

45. Defendant's conduct as described herein constitutes breach of an implied or express warranty of affirmation.

46. Defendant's conduct as described herein constitutes breach of an implied warranty of merchantability.

47. Defendant's conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

48. As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other Class members have suffered damages in an amount to be proven at trial. Defendant had actual or constructive notice of such damages.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members request that the Court enter an order of judgment against Defendant including the following:

Certification of the action as a class action under Rule 23(b)(1) - (3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with Defendant and its acts or omissions) and such other relief as provided by the statutes cited herein;

Prejudgment and post-judgment interest on such monetary relief;

Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

Other appropriate injunctive relief;

The costs of bringing this suit, including reasonable attorneys' fees; and

Such other relief as this Court may deem just, equitable and proper.

CLASS ACTION COMPLAINT  - 7
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161455 V1

1    DATED this 27th day of March, 2007.

2                        HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                        By: _____
                              Steve W. Berman, WSBA #12536
5                             1301 Fifth Avenue, Suite 2900
                              Seattle, Washington  98101
6                             Telephone: (206) 623-7292
                              E-mail:  steve@hbsslaw.com
7
                              Philip H. Gordon
8                             Bruce S. Bistline
                              Gordon Law Offices
9                             623 West Hays St.
                              Boise, ID  83702
10                            Telephone:  (208) 345-7100
                              Facsimile: (206) 623-0594
11                            E-mail:  pgordon@gordonlawoffices.com

12
                              *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT  - 8
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161455 V1

D

___ FILED     ___ ENTERED
___ LODGED    ___ RECEIVED

★  MAR 2 7 2007  ★

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AUDREY KORNELIUS and BARBARA
SMITH, individually and on behalf of all others
similarly situated,

                                    Plaintiff,

        v.

MENU FOODS, a foreign corporation,

                                    Defendant.

No. C 07-0454 MJP 

CLASS ACTION COMPLAINT

        Plaintiffs Audrey Kornelius and Barbara Smith ("Plaintiffs"), by and through their

undersigned attorneys, bring this civil action for damages on behalf of themselves and all others

similarly situated against the above-named Defendant and complain and allege as follows:

## I.        NATURE OF ACTION

        1.      Plaintiffs bring this action as a Class Action under Rule 23 of the Federal Rules of

Civil Procedure on behalf of all persons who purchased any dog or cat food that was produced

by defendant Menu Foods and/or has had a dog or cat become ill or die as a result of eating the

food.

        2.      The Defendant is a producer of, *inter alia*, dog and cat food.  Menu Foods

produces dog and cat food sold under familiar brand names such as Iams, Eukanuba and Science

CLASS ACTION COMPLAINT  - 1
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V1

1    Diet. Menu Foods distributes its dog and cat food throughout the United States to retailers such

2    as Wal-Mart, Kroger and Safeway.

3        3.    Dog and cat food that the Defendant produced caused an unknown number of

4    dogs and cats to become ill, and many of them to die.

5        4.    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

6    food that have sickened and killed dogs and cats.  All recalled food to date is of the "cuts and

7    gravy wet" style.

8        5.    As a result of the Defendant's actions, Plaintiffs and other Class members have

9    suffered economic damage.

10                          **II.    PARTIES**

11        6.    Plaintiff Audrey Kornelius has at all material times been a resident of Ferndale,

12    Washington.  Ms. Kornelius has a pet that became sick after eating Defendant's pet food.

13        7.    Plaintiff Barbara Smith has at all material times been a resident of Bremerton,

14    Washington.  Ms. Smith has a pet that became sick after eating Defendant's pet food.

15        8.    Defendant Menu Foods is, upon information and belief, a corporation organized

16    under the laws of Canada that transacts business in Washington State.

17                  **III.    JURISDICTION AND VENUE**

18        9.    Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

19    Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds

20    $75,000.00.  This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C.

21    § 1367.

22        10.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because the

23    Defendant systematically and continuously sold its product within this district and Defendant

24    transacts business within this district.

25

26

CLASS ACTION COMPLAINT  - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## IV.    CLASS ACTION ALLEGATION

11.    Plaintiffs bring this suit as a class action under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food that was produced by the Defendant and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs reserve the right to modify this class definition before moving for class certification.

12.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class.

13.    Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods that may be causing harm to pets.

14.    Plaintiffs' claims are typical of those of other Class members, all of whom have suffered harm due to Defendant's uniform course of conduct.

15.    Plaintiffs are members of the Class.

16.    There are numerous and substantial questions of law and fact common to all of the members of the Class that control this litigation and predominate over any questions affecting only individual members of the Class. The common issues include, but are not limited to, the following:

(a)    Was the Defendant's dog and cat food materially defective, and unfit for use as dog or cat food?

(b)    Whether Defendant breached any contract, implied contract or warranties related to the sale of the dog and cat food?

(c)    Did the Defendant's dog and cat food cause Plaintiffs' and other Class members' pets to become ill?

CLASS ACTION COMPLAINT - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 VI

1           (d)    Were Plaintiffs and other Class members damaged, and, if so, what is the

2    proper measure thereof?

3           (e)    The appropriate form of injunctive, declaratory and other relief.

4        17.    The prosecution of separate actions by members of the Class would create a risk

5    of establishing incompatible standards of conduct for the Defendant – for example, one court

6    might decide that the Defendant is obligated under the law to pay damages to Class members,

7    and another might decide that the Defendant is not so obligated.  Individual actions may, as a

8    practical matter, be dispositive of the interests of the Class.

9        18.    Plaintiffs will fairly and adequately protect the interests of the Class in that they

10   have no interests that are antagonistic to other members of the Class and have retained counsel

11   competent in the prosecution of class actions to represent themselves and the Class.

12       19.    A class action is superior to other available methods for the fair and efficient

13   adjudication of this controversy.  Given (i) the substantive complexity of this litigation; (ii) the

14   size of individual Class members' claims; and (iii) the limited resources of the Class members,

15   few, if any, Class members could afford to seek legal redress individually for the wrongs

16   Defendant has committed against them.

17       20.    Without a class action, the Class will continue to suffer damage, Defendant's

18   violations of the law or laws will continue without remedy, and Defendant will continue to enjoy

19   the fruits and proceeds of its unlawful misconduct.

20       21.    This action will foster an orderly and expeditious administration of Class claims,

21   economies of time, effort and expense, and uniformity of decision.

22       22.    Inferences and presumptions of materiality and reliance are available to obtain

23   class-wide determinations of those elements within the Class claims, as are accepted

24   methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's

25   common liability, the Court can efficiently determine the claims of the individual Class

26   members.

CLASS ACTION COMPLAINT - 4
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V1

23.    This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendant.

24.    In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

25.    The Claims in this case are also properly certifiable under applicable law.

### V.    STATEMENT OF FACTS

26.    Plaintiff Audrey Kornelius is the owner of a puppy named Shiwa.

27.    Ms. Kornelius purchased Nutro Natural Choice Puppy for Shiwa to consume.

28.    Shewa became extremely ill after consuming Defendant's dog food.

29.    Plaintiff Barbara Smith is the owner of a cat named Neko.

30.    Ms. Smith purchased Priority U.S. brand cat food from Safeway for Neko to consume.

31.    Neko became extremely ill after consuming Defendant's cat food.  Ms. Smith's veterinarian has informed her that Neko will need monitoring for life.

32.    In March 2007, Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food that had caused dogs and pets to become ill.  One common symptom in the sick animals was kidney failure.

33.    The Nutro Natural Choice Puppy food that Shiwa consumed is one of the brands that Menu Foods recalled.

34.    The Priority U.S. brand cat food from Safeway that Neko consumed is also one of the brands that Menu Foods recalled.

35.    As a result of Defendant's acts and omissions Plaintiffs and other Class members have suffered economic damage.

### VI.    BREACH OF CONTRACT

36.    Plaintiffs reallege all prior allegations as though fully stated herein.

CLASS ACTION COMPLAINT - 5
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161466 V1

37.     Plaintiffs and Class members purchased pet food produced by the Defendant based on the understanding that the food was safe for their pets to consume.

38.     The pet food produced by the Defendant was not safe for pets to consume and caused dogs and cats to become ill.  The unsafe nature of the pet food constituted a breach of contract.

39.     As a result of the breach Plaintiffs and Class members suffered damages that may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

## VII.    UNJUST ENRICHMENT

40.     Plaintiffs reallege all prior allegations as though fully stated herein.

41.     Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and other Class members.

42.     Defendant should be required to disgorge this unjust enrichment.

## VIII.    UNLAWFUL, DECEPTIVE AND UNFAIR BUSINESS PRACTICES

43.     Plaintiffs reallege all prior allegations as though fully stated herein.

44.     Defendant's sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

45.     Defendant's sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

46.     As a result of Defendant's unfair or deceptive acts or practices, Plaintiffs and other Class members suffered injuries in an amount to be proven at trial.

## IX.    BREACH OF WARRANTIES

47.     Plaintiffs reallege all prior allegations as though fully stated herein.

CLASS ACTION COMPLAINT  - 6
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11 161466 V1

48.    Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

49.    Defendant's conduct as described herein constitutes breach of an implied or express warranty of affirmation.

50.    Defendant's conduct as described herein constitutes breach of an implied warranty of merchantability.

51.    Defendant's conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

52.    As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other Class members have suffered damages in an amount to be proven at trial. Defendant had actual or constructive notice of such damages.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members request that the Court enter an order of judgment against Defendant including the following:

Certification of the action as a class action under Rule 23(b)(1) - (3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representative and their counsel of record as Class Counsel;

Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with Defendant and its acts or omissions) and such other relief as provided by the statutes cited herein;

Prejudgment and post-judgment interest on such monetary relief;

Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

Other appropriate injunctive relief;

CLASS ACTION COMPLAINT  - 7
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001958-11  161466 V1

1    The costs of bringing this suit, including reasonable attorneys' fees; and

2    Such other relief as this Court may deem just, equitable and proper.

3    DATED this 27th day of March, 2007.

4                          HAGENS BERMAN SOBOL SHAPIRO LLP

5

6    By: /s/ Steve W. Berman
     Steve W. Berman, WSBA #12536
7    1301 Fifth Avenue, Suite 2900
     Seattle, Washington 98101
8    Telephone: (206) 623-7292
     Facsimile: (206) 623-0594
9    E-mail: steve@hbsslaw.com

10

11   MYERS & COMPANY, P.L.L.C.
     Michael David Myers
12   WSBA No. 22486
     Myers & Company, P.L.L.C.
13   1809 Seventh Avenue, Suite 700
     Seattle, Washington 98101
14   Telephone: (206) 398-1188
     Facsimile: (206) 400-1112
15   E-mail: mmyers@myers-company.com

16   *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 8
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

**E**

1

2

3

4

5

6

7

8

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

9

10   MICHELE SUGGETT and DON JAMES, | Case No.:
     individually and on behalf of all similarly
11   situated;

12                    Plaintiffs,                    **CLASS ACTION COMPLAINT**

13          vs.

14   MENU FOODS, a foreign corporation; THE
     IAMS COMPANY, a foreign corporation;
15   EUKANUBA, a foreign corporation; DOG
     FOOD PRODUCERS NUMBERS 1-100 and
16   CAT FOOD PRODUCERS 1-100; and DOES
     1-100;

17               Defendants.

18

19                          **I.  NATURE OF ACTION**

20       1.  Plaintiffs bring this action as a Class Action pursuant to FRCP 23 on behalf of all
21           persons who purchased any dog or cat food produced by any of the above-named
             defendants and/or had a dog or cat become ill or die as a result of eating same.

22       2.  The defendants are producers and distributors of, inter alia, dog and cat food.  Menu
             Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba
23           and Science Diet. Menu Foods distributes its dog and cat food throughout the United

24   CLASS ACTION COMPLAINT - 1          Animal Law Offices of
                                          Adam P. Karp, Esq.
25                                        114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
                                          (360) 738-7273 • Facsimile: (360) 392-3936
                                          adam@animal-lawyer.com

States to retailers such as Wal-Mart, Kroger and Safeway.

3.  Dog and cat food which the defendants produced has caused an unknown number of dogs and cats to become ill and die.

4.  To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat food which are causing dogs and cats to become ill.  All recalled food to date is of the "cuts and gravy wet" style.

5.  As a result of the Defendants' actions, Plaintiffs and other Class members have suffered noneconomic and economic damage.

## II. JURISDICTION, PARTIES, AND VENUE

6.  This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) based on diversity and an amount of controversy in excess of $75,000. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Defendants systematically and continuously sold their product within this district, and Defendants transact business within this district.

8.  Eleven-year-old, female canine named Shasta ("Shasta") was regarded by Plaintiffs as their ward, sentient personalty, and member of their family.

9.  Plaintiffs MICHELE SUGGETT and DON JAMES ("Plaintiffs") are, and at all times herein were, residents of this judicial district and the owners/guardians of Shasta.

10. Defendant Menu Foods is, upon information and belief, a corporation organized under the laws of Canada that transacts business in Washington State and Oregon State.

11. Defendant The Iams Company, is upon information and belief, a foreign corporation that transacts business in Washington State and Oregon State.

12. Defendant Eukanuba, is upon information and belief, a foreign corporation that transacts business in Washington State and Oregon State.

13. There are numerous other persons or entities, DOG FOOD PRODUCERS, CAT FOOD PRODUCERS, AND DOES 1-100, identities presently unknown to Plaintiffs who are, and were at all times mentioned herein, acting in concert or are jointly and severally liable with the above named Defendants. Each of the DOE Defendants sued herein under a fictitious name is responsible in some manner for the events and occurrences referred to herein. When the true names, capacities and involvement of said Defendants are ascertained, Plaintiffs will seek leave to amend the complaint accordingly.

CLASS ACTION COMPLAINT - 2

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

### III. CLASS ACTION ALLEGATION

14. Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food which was produced by the defendants and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs reserve the right to modify this class definition prior to moving for class certification.

15. This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

   a.     The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

   b.     Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to companion animals.

   c.     Plaintiffs' claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

   d.     Plaintiffs are members of the Class.

   e.     There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

   i.     Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

   ii.    Were the defendants' representations regarding the safety of the dog and cat food false?

   iii.   Did the defendants' dog and cat food cause or allow Plaintiffs and other Class members' companion animals to become ill or die?

   iv.    Did the defendants produce a hazardous product for nonhuman animal consumption? If so, did this occur as a result of negligent, grossly negligent, reckless, or intentional conduct?

CLASS ACTION COMPLAINT - 3

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

v.    Were Plaintiffs and other Class members damaged?

f.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent themselves and the Class;

h.    Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

j.    This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision;

k.    Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Class members;

l.    This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendants.

m.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

16.  The Claims in this case are also properly certifiable under applicable law.

## IV. GENERAL ALLEGATIONS

17. Plaintiffs were the owners and guardians of Shasta, a female Pomeranian.

18. Plaintiffs purchased contaminated Eukanuba Adult Bites in Gravy (lamb & rice, beef & gravy, savory chicken) ("contaminated food") on or about February 16, 2007 from Petsmart.

CLASS ACTION COMPLAINT - 4

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

19. Plaintiffs started feeding the contaminated food to Shasta on or about March 15, 2007.

20. After eating the contaminated food, Shasta became extremely ill, causing the Plaintiffs to take her to a veterinarian on or about March 19, 2007. The veterinarian informed them that Shasta suffered devastatingly acute renal failure. On or about March 20, 2007, Shasta arrested and died.

21. Plaintiffs witnessed Shasta's deceased body shortly after she died and before a substantial change in her condition and location.

22. In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and cats to become ill. One common symptom in the sick animals was kidney failure, also known as acute renal failure.

23. The contaminated food that Shasta consumed is one of the brands that Menu Foods recalled.

24. The Plaintiffs lost Shasta's intrinsic value, as based on her unique qualities, characteristics, training, and bond, as well as the loss of her utility, companionship, love, affection, and solace. At the time of her death, Shasta had no fair market value and could not be replaced or reproduced. Rather, she had an intrinsic value.

25. The Plaintiffs owned and formed a relationship with Shasta for 11 years. She was a close family companion throughout that period and had special value, aiding Plaintiffs in their enjoyment of life, well-being, growth, development, and daily activities.

26. As a result of Defendants' actions causing Shasta's death, the Plaintiffs have suffered loss of enjoyment of life, interference with use and quiet enjoyment of their realty and personalty, and general damages pertaining to loss of use.

27. As a result of Defendants' acts and omissions the Plaintiffs and other Class members have suffered emotional and economic damage, including but not limited to mental anguish, loss or reduction of enjoyment of life, interference with use and quiet enjoyment of realty and/or personalty, wage loss, current and future veterinary and health-related bills, depreciation in or extinguishment of intrinsic, special, unique, or peculiar value, loss of use and/or companionship, actual, incidental, and consequential damages.

### FIRST CLAIM FOR RELIEF – UNJUST ENRICHMENT

28. Defendants were and continue to be unjustly enriched at the expense of the Plaintiffs and other Class members.

CLASS ACTION COMPLAINT - 5

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

29. Defendants should be required to disgorge this unjust enrichment.

## SECOND CLAIM FOR RELIEF – UNLAWFUL, DECEPTIVE, UNFAIR BUSINESS PRACTICES

30. Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

31. Defendants' sale of hazardous dog and cat food has the capacity to deceive a substantial portion of the public and to affect the public interest.

32. As a result of Defendants' unfair or deceptive acts or practices, Plaintiffs and other class members suffered injuries in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF – BREACH OF WARRANTY

33. Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

34. Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

35. Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

36. Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

37. As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

## FOURTH CLAIM FOR RELIEF – DECLARATORY RELIEF

38. This court has the authority to render a declaratory judgment pertaining to Plaintiffs and Class Members' rights, status and other legal relations.

39. Plaintiffs and Class Members are entitled to a declaratory judgment that, as a matter of law, their companion animals had no fair market value, no replacement value, but, rather, an intrinsic, peculiar, unique, or special value premised on their non-fungible and irreplaceable nature.

## FIFTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION

CLASS ACTION COMPLAINT - 6

40. Defendants owed Plaintiffs and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

41. Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

42. In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

43. Plaintiffs and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

44. As a proximate cause of Defendants' false representations, Plaintiffs and other Class members suffered damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45. IN THE ALTERNATIVE that Defendants' acts are not deemed intentional or reckless, Defendants' conduct was negligent insofar as they failed to take reasonable care to avoid causing Plaintiff and Class Members emotional distress in relation to the failure to warn and failure to produce safe food for nonhuman animal consumption. These actions or inactions caused Plaintiff and Class Members emotional distress. Said emotional distress was manifested by objective symptomology by some of the Class Members.

## SEVENTH CLAIM FOR RELIEF – NUISANCE

46. Defendants' behavior described above constitutes a private nuisance and public nuisance.

47. Under Washington law, specifically RCW 7.48.010 and 7.48.150 (private nuisance) and RCW 7.48.130 and RCW 7.48.210 (public nuisance), and similar anti-nuisance laws (at common law and by statute), Defendants are liable to plaintiffs for general damages sustained by virtue of their omission to perform a duty, which act, namely, allowing contaminated and poisoned food products to enter Plaintiff and Class Members' households under false pretenses of safety, resulting in pain, suffering, illness, and death to Class Members' companion animals, annoyed, injured, and endangered the comfort, repose, and safety of Plaintiffs and Class Members, essentially interfering in the comfortable enjoyment of their real and personal property and their lives.

## EIGHTH CLAIM FOR RELIEF – BREACH OF CONTRACT

48. Plaintiffs and Class members purchased dog and cat food produced by the defendants

CLASS ACTION COMPLAINT - 7

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

based on the understanding that the food was safe for their companion animals to consume.

49. The dog and cat food produced by the defendants was not safe for companion animals to consume and caused dogs and cats to become ill or die. The unsafe nature of the pet food constituted a breach of contract.

50. As a result of the breach, Plaintiffs and Class members suffered damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

51. To the extent defendants' breach was reckless, wanton, or intentional and defendants knew or had reason to know that, when the contract was made, breach would cause mental suffering for reasons other than pecuniary loss, defendants inflicted upon Plaintiffs and Class members emotional distress.

## NINTH CLAIM FOR RELIEF – GROSS NEGLIGENCE

52. In the event Defendants are not found to have acted recklessly, Plaintiffs and Class Members plead IN THE ALTERNATIVE that Defendants knew and/or should have known that there was a strong possibility that harm would be inflicted on Plaintiffs and Class Members as a result of their disregard in ensuring that safe foodstuffs entered the commercial dog and cat food supply, recalling the tainted product before the illness and death toll rose further, and/or not warning consumers of the tainted product.

53. Defendants acted indifferently to the high degree of manifest danger and erroneous destruction of sentient property, to wit, Class Members' companion animals, to which Plaintiffs and Class Members would be and was exposed by such conduct.

54. The proximate cause of Plaintiffs and Class Members' injuries was the grossly negligent conduct of Defendants in the above regard.

## TENTH CLAIM FOR RELIEF – PRODUCTS LIABILITY

55. Defendants are strictly liable under RCW 7.72.030 (and analogous products liability statutes around the nation) for proximately causing harm to Plaintiffs by manufacturing a product that was not reasonable safe in construction.

56. The proximate cause of Plaintiffs and Class Members' injuries was the grossly negligent conduct of Defendants in the above regard.

CLASS ACTION COMPLAINT - 8

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

57. Defendants may also be liable for design defects in the production of the contaminated food, as well as failing to warn of the design and/or manufacturing defects, making them liable under RCW 7.72.030 (and analogous products liability statutes around the nation).

## RESERVATION OF RIGHTS

58. Plaintiffs and Class Members reserve the right to amend the complaint to include additional causes of action and allegations as they are discovered in the course of litigation.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

2. Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with defendants and their acts or omissions) and such other relief as provided by the statutes cited herein;

3. For economic damages, representing the intrinsic, special, peculiar, or unique value of the Plaintiffs and Class Members' injured and/or killed companion animals, subject to proof and modification at trial;

4. For special and general damages relating to loss of the Plaintiffs' and Class Members' companion animals' utility (e.g., companionship) from date of loss to date judgment is entered;

5. For noneconomic damages, including emotional distress, interference with the Plaintiffs and Class Members' lives, and the use and quiet enjoyment of their realty and personalty, loss and/or reduction of enjoyment of life, subject to proof and modification at trial;

6. For incidental and consequential damages arising from breach of contract;

7. For burial, afterdeath, and death investigation expenses;

8. For wage loss and other aftercare expenses incurred during the companion animals'

CLASS ACTION COMPLAINT - 9

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

convalescence;

9. Prejudgment and post-judgment interest on such monetary relief;

10. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

11. Other appropriate injunctive relief;

12. The costs of bringing this suit, including reasonable attorneys' fees; AND

13. Such other relief as this Court may deem just, equitable and proper.

14. **NOTICE: Plaintiffs intend to seek damages in excess of $10,000. Accordingly, this case is not subject to RCW 4.84.250-.280.**

Dated this March 27, 2007.

ANIMAL LAW OFFICES

/s/ Adam P. Karp

Adam P. Karp, WSBA No. 28622
Attorney for Plaintiffs and Class Members
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
(888) 430-0001
Fax: (866) 652-3832
adam@animal-lawyer.com

CLASS ACTION COMPLAINT - 10

F

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 1 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES RAY SIMS and PAMELA SIMS,**<br>**Individually and on behalf of all others**<br>**similarly situated,**<br>　　　　　　　　**Plaintiffs,** | §<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO.** 07-5053 |
| **VERSUS** | §<br>§<br>§ | |
| **MENU FOODS INCOME FUND,**<br>**MENU FOODS MIDWEST CORPORATION,**<br>**MENU FOODS SOUTH DAKOTA INC.,**<br>**MENU FOODS, INC., MENU FOODS**<br>**HOLDINGS, INC.,**<br>　　　　　　**Defendants.** | §<br>§<br>§<br>§<br>§<br>§ | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, CHARLES RAY SIMS and PAMELA SIMS (hereinafter collectively "Plaintiff," "Plaintiffs", or "SIMS"), major residents in the State of Arkansas, individually and on behalf of all others similarly situated, who file this Class Action Complaint pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), seeking monetary relief for themselves and the class they seek to represent. This suit is brought against MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC., representing as follows:

## GENERAL ALLEGATIONS

1.     This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

## PARTIES, JURISDICTION AND VENUE

4.     Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.     MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

6.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or "MENU."

10.    Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food.  MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States,

3

whether measured by number of products produced and sold, revenues, or market capitalization.

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

15.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

16.    Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States. These consumers compose the putative class in this action and have rights that are substantially the same.

4

17.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

18.    The consumers composing the putative class in this action consist of:  (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

19.    The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses of the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

20.    While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

21.    The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a

class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action.  There would be a failure of justice but for the maintenance of this class action.

## FACTUAL BACKGROUND

23.    Plaintiff's dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product.  Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

6

26.    As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

27.    Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers, Arkansas, who performed tests and surgery on the dog.

28.    Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16, 2007.

29.    Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

30.    Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

31.    Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper

7

warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

32.    Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product.  As such, said consumers' dogs and cats, including Plaintiff's dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

33.    Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

34.    Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

35.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

36.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, ABBY, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct,

in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

37.   As a direct and proximate result of Defendants' negligence as described herein, Plaintiff SIMS sustained damages in the loss of their family pet.

## AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

38.   Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

39.   Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

40.   Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

41.   As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

42.   Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing,

conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

43.    Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

44.    Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

45.    Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

46.    As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

47.    Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be

determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

48. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

49. Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

50. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

51. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

52. The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

53. Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

11

54.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.    When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

b.    The Product was insufficiently tested;

c.    The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

d.    In light of the potential and actual risk of harm associated with ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

55.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was

expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

56.    At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

57.    As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

58.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

59.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, required reasonable and necessary veterinary treatment and services and incurred expenses for which Plaintiff is entitled to damages, along with the expenses of disposal/burial of the family pet.

60.    As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

61.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant

to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

62.     The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A THIRD CAUSE OF ACTION,
## SOUNDING IN FRAUD

63.     Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

64.     At all material times, Defendants were engaged in the business of manufacturing, marketing, distributing, promoting, and selling Defendants' Product.

65.     Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

66.     Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from, consumers, including Plaintiff SIMS, that Defendants' Product was safe when ingested by dogs and cats.     Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

   a.     Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

   b.     Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

c.    Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

d.    Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

67.    Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

68.    Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations that Defendants' Product was safe for its intended purpose were false, as Defendants' Product was, in fact, dangerous to the health of and ultimately fatal to Plaintiff SIMS' dog, ABBY.

69.    Defendants knew that their statements were false, knew of incidents of serious illnesses and deaths in dogs and cats, and knew that their omissions rendered their statements false or misleading.

70.    Further, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Defendants' Product, and failed to disclose that Defendants' Product caused possible death in dogs and cats, among other serious adverse effects. Defendants also failed to exercise reasonable care in communicating the information concerning Defendants' Product to Plaintiff SIMS, and/or concealed facts that were known to Defendants.

71.    Plaintiff SIMS was not aware of the falsity of the foregoing representations, nor was Plaintiff SIMS aware that one or more material facts concerning the safety of Defendants' Product had been concealed or omitted.

72.     In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff SIMS fed Defendants' Product to their dog, ABBY. Had Plaintiff SIMS known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

73.     The reliance by Plaintiff SIMS upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

74.     Plaintiff SIMS was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff SIMS to purchase Defendants' Product.

75.     As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiffs suffered damages as previously alleged herein.

76.     Defendants' conduct in concealing material facts and making the foregoing misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

77.     The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

### AS AND FOR A FOURTH CAUSE OF ACTION,
### SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR
### A PARTICULAR PURPOSE AND IMPLIED WARRANTY
### OF MERCHANTABILITY

78.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

79.    Defendants manufactured, marketed, sold, and distributed Defendants' Product.

80.    At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff SIMS, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

81.    Plaintiff SIMS reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

82.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff SIMS could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff SIMS' dog, ABBY.

83.    Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

84.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff SIMS. suffered damages as previously alleged herein.

85.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at

trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

86.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**AS AND FOR A FIFTH CAUSE OF ACTION
SOUNDING IN BREACH OF EXPRESS WARRANTY**

87.    Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

88.    Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

89.    The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

90.    As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

91.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**AS AND FOR A SIXTH CAUSE OF ACTION
SOUNDING IN NEGLIGENCE**

92.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

93.    Defendants owed a duty to consumers of Defendants' Product, including the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing,

18

marketing, supplying, distribution and selling Defendants' Product, including a duty to ensure that Defendants' Product did not cause the dogs and cats ingesting the Product to suffer from unreasonable, unknown, and/or dangerous side effects.

94.    Defendants failed to exercise reasonable care in warning about, designing, testing, labeling, manufacture, marketing, selling and/or distributing of Defendants' Product and breached their duties to Plaintiff in that, and not by way of limitation, they did not warn of the known risks associated with the ingestion of Defendants' Product and did not exercise an acceptable standard of care, i.e., what a reasonably prudent manufacturer or seller would have known and warned about.

95.    Moreover, the product lacked sufficient warnings of the hazards and dangers to users of said Product, and failed to provide safeguards to prevent the injuries sustained by Plaintiff's dog, ABBY.    Defendants failed to properly test Defendants' Product prior to its sale, and as a result subjected users to an unreasonable risk of injury when this Product was used as directed and recommended.

96.    Defendants additionally breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff, in part, in the following ways:

      a.    Failed to exercise due care in designing, developing, and manufacturing Defendants' Product so as to avoid the aforementioned risks to individuals using these products;

      b.    Failed to include adequate warnings with Defendants' Product that would alert Plaintiff SIMS and other purchasers to its potential risks and serious side effects;

c.     Failed to adequately and properly test Defendants' Product before placing it on the market;

d.     Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.     Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.     Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.     Placed an unsafe product into the stream of commerce; and

h.     Was otherwise careless or negligent.

97.     Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants' Product knowing of its unreasonable risks of injury.

98.     Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff SIMS' dog, ABBY, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

99.     Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits

at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

100.    Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff SIMS of the information necessary for them to weigh the true risks of purchasing Defendants' Product against the benefits.

101.    As a direct and proximate result of Plaintiff SIMS' feeding Defendants' Product to their dog, ABBY, Plaintiff SIMS' dog, ABBY, suffered serious health problems and ultimate death.

102.    By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff SIMS' dog, ABBY, to suffer serious health problems and ultimate death.  As a result, the imposition of punitive damages against Defendants is warranted.

103.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

21

## PRAYER FOR RELIEF

**WHEREFORE**, the class of putative plaintiffs pray for relief, in an amount which exceeds the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005, as follows:

a.      Awarding damages including but not limited to the money expended on Defendants' defective Product, veterinary bills associated with the treatment, testing, and diagnosis resulted from ingestion of the defective Product, disposal fees after death of the pet and the pecuniary value of the pet;

b.      Awarding punitive damages to Plaintiffs;

c.      Awarding pre-judgment and post-judgment interest to Plaintiffs,

d.      Awarding the costs and expenses of this litigation to Plaintiffs,

e.      Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

f.      For such further relief as this Court deems necessary, just, and proper.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this civil action.

Dated: March 21, 2007.

CHARLES RAY SIMS and PAMELA SIMS,
Plaintiffs

LUNDY & DAVIS, L.L.P.
300 N. College Ave., Suite 309
Fayetteville, AR 72701
(479) 527-3921
(479) 587-9196 (fax)
jhatfield@lundydavis.com

By: _____
Jason M. Hatfield
Ark. Bar No. 97143

Attorneys for Plaintiffs

23

**G**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 3 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

| | |
|---|---|
| RICHARD SCOTT AND BARBARA WIDEN, individually and All others Persons Similarly Situated, | )<br>)<br>) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| MENU FOODS; MENU FOODS INCOME FUND; MENU FOODS GEN PAR LIMITED; MENU FOODS LIMITED PARTNERSHIP; MENU FOODS OPERATING PARTNERSHIP; MENU FOODS MIDWEST CORP; MENU FOODS SOUTH DAKOTA; MENU FOODS, INC.; MENU FOODS HOLDINGS, INC.; WAL-MART STORES, INC | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants | |

Case No. 07-5055

**CLASS ACTION COMPLAINT**

Plaintiffs Scott and Barbara Widen through their undersigned counsel, on behalf of themselves and all others similarly situated, upon both personal knowledge and information and belief, alleges as follows:

1.      This class action is brought against Defendants for negligently contaminating the pet food supply making the food unfit for animal consumption and harmful and for purposefully failing to warn consumers of the contaminated pet food.  As a result of Defendant's actions, Plaintiff and other similarly situated pet owners have been damaged.

**PARTIES**

2.      Plaintiffs Richard and Barbara Widen are a married couple and residents

of Benton County, Arkansas. Plaintiffs lost two cats due to the contaminated food produced,

distributed, marketed, and sold by the Defendants.

     3.     Defendant, Menu Foods Income Fund (Menu Foods) is an unincorporated

company with its principal place of business in Ontario, Canada. It is doing business in the State

of Arkansas and has availed themselves of the protections of the State of Arkansas. Jurisdiction

is appropriate pursuant to the Arkansas Long Arm Statute, Ark. Code Ann. 16-4-101 and service

may be effected through the Hague convention on service abroad of judicial and extrajudicial

documents and civil or commercial matters at 8 Falconer Drive, Streetsville, ON, Canada L5N

1B1.

     Menu Foods Midwest Corp. is a Delaware corporation and may be served through its

registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209

Orange Street, Wilmington DE. Defendant, Menu Foods Holding, Inc., is a Delaware

corporation and may be served through it registered agent for service, The Corporation Trust

Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware. Menu Foods

operates two manufacturing plants in the United States and distributes their pet food products

throughout the entire United States including Arkansas.

     Defendant, Menu Foods, Inc. is a New Jersey corporation and may be served through its

registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton,

New Jersey. Upon information and belief, Defendants Menu Food Midwest Corp., Menu Foods

South Dakota Inc., Menu Foods, Inc., and Menu Foods Holdings, Inc., are wholly owned

subsidiaries of Menu Foods Income Fund, a business registered in and headquartered in Ontario,

Canada. The above listed Defendants are hereinafter referred to collectively as "Defendants" or

"Menu Foods"

4.      Defendant Wal-Mart Stores, Inc, (Wal-Mart) is a Delaware corporation headquartered in Bentonville, Arkansas that sells Menu Food products throughout their retail stores in Arkansas and throughout the United States.  Wal-Mart is the single largest distributor of Menu Foods products. Plaintiffs purchased the contaminated pet food at the Wal-Mart store in Bentonville, AR.  Menu Foods produced some brands of pet food exclusively for Wal-Mart under a private label agreement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d)(2).  The matter in controversy exceeds $5,000,000, is a class action and there are members of the proposed Class that are citizens of States different than at least one of the Defendants.

6.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (d).   Defendant Wal-Mart is headquartered in the District. Defendant Menu Foods Income Fund is a foreign corporation headquartered outside the United States and distributes, through retailers such as Wal-Mart, the pet food products in issue in the District.  Additionally, Plaintiffs purchased the tainted pet food in the District.

## FACTS

7.      Defendant, Menu Foods told the U. S. Food and Drug Administration, that they had become aware of the contamination on February 20, 2007.  Menu Foods believed that the contamination came from their supplier of Wheat Gluten.  Defendant, Menu Foods conducted test to determine if the contamination was harmful to pets on February 27, 2007. The results of the test resulted in death to one out of every six pets who consumed the contaminated pet food.

8.    Defendants Menu Foods and Wal-Mart did nothing to prevent the distribution of the contaminated pet food until weeks after the discovery occurred. This action, or lack thereof, permitted and caused additional harm to thousands of pet owners in Arkansas and throughout the country.

9.    Plaintiffs owned two cats that were very healthy middle aged cats. The two cats were named "Fred" and "Grinch." Plaintiffs fed the two cats "Special Kitty" cat food which was made by Menu Foods exclusively for Wal-Mart under a private label agreement.

10.    Beginning around February, 2007, Plaintiffs noticed that both cats were acting differently and had begun to lose weight. In a tragic irony, Plaintiff forced the cats to eat more of the contaminated pet food, unaware that the pet food was contaminated and the cause of the poor health.

11.    On March 18, 2007, Plaintiff was finally made aware through the media that a recall had been issued for the pet food by the Defendant, Menu Foods and that the pet food could cause kidney failure and other symptoms that were being experienced by the Plaintiffs' cats. On March 19, 2007, Plaintiffs took their cats to their veterinarian for examination. That same day, the veterinarian ran some tests and informed the Plaintiffs that both cats were suffering from kidney failure due to the consumption of the contaminated pet food. The veterinarian suggested that the only chance of survival for the cats was a very expensive procedure in which the likelihood of success was very small.

12.    The veterinarian diagnosed the kidney failure to be the result of the cats consumption of contaminated pet food.  The veterinarian recommended that the Plaintiffs call a Menu Foods hotline number which she provided to the Plaintiffs.  The hotline had been set up on or around March 17, 2007, nearly three weeks after Menu Foods had become aware of the problem. The veterinarian suggested that Menu Foods should pay for the expensive procedure.

13.    The Plaintiffs called the hotline number around a hundred times to determine if Menu Foods would pay for the procedure and never reached an operator or answering machine. Finally, out of desperation the Plaintiffs called another number for Menu Foods and left a message for somebody from Menu Foods to call them.  The message was never returned.

14.    Around 3:30 p.m. on the afternoon of March 19, 2007, Plaintiffs made the decision that their cats could not suffer any further and euthanized the cats.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs brings all claims as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The requirements of Rule 23 are met with respect to the Class defined below.

16.    Plaintiffs bring their claims on their own behalf, and on behalf of the following Class:

>    All persons in the United States who purchased contaminated pet food from Wal-Mart that was produced by Menu Foods.

17.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable.  The Class, upon information and belief, includes millions of members.

18.    Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual members of the Class.  Among the common questions of law or fact are the following:

     a.     Whether Defendants were negligent in allowing pet food products in the United States to be contaminated with a dangerous ingredient that was not safe for consumption.

     b.     Whether Defendants owed a duty to pet owners by ensuring that the pet food was not contaminated with dangerous ingredients;

     c.     Whether Defendants' conduct amounted to breach of such a duty;

     d.     Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class Members' damages;

     e.     Whether Defendants are responsible for the contamination of the pet food;

     f.     Whether Defendants were negligent per se;

     g.     Whether Defendants are strictly liable;

     h.     Whether Defendants breached their warranty of merchantability.

     i.     Whether Defendants produced, marketed, distributed, and sold a defective product

     j.     Whether Defendants failed to adequately warn consumers of contaminated pet food.

     k.     Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

     l.     Whether Plaintiff and the Class Members are entitled to damages, and, if so, the proper amount of such damages; and

     m.     Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

## COUNT I

### Negligence

19.    Plaintiff incorporates by reference all of the allegations contained above.

20.    Defendants owed a duty to Plaintiff to ensure that the pet food was not contaminated with dangerous and harmful ingredients.

21.    Defendants breached that duty by allowing the contamination of the pet food supply with a dangerous and harmful ingredient during the approximate time of time January 2007 to March, 2007.

22.    Defendants' actions proximately caused damage to Plaintiff and the Class.

23.    Plaintiff and the Class have suffered damages by a loss of property, cost of medical bills, and cost of purchasing new, uncontaminated pet food.

### COUNT II

### Negligence Per Se

24.    Plaintiff incorporates by reference all of the allegations contained above.

25.    Defendants' acts and/or omissions as described herein constitute negligence per se.

26.    Defendants had a duty to ensure that their pet food was produced, transported, marketed, distributed, and sold in a manner consistent with governmental regulations.

27.    Defendants breached this duty in violation of regulatory standards.

28.    Such breaches directly and proximately caused damages to the Plaintiff and the Class.

29.    Plaintiff and the Class have suffered damages due to Defendants failure to conform to the United States Food and Drug Administration regulations.

### COUNT III

### Strict Liability- Defective in Design or Manufacture

30.    Plaintiff incorporates by reference all of the allegations contained above.

31.     Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption and in violation of the Defendants Warranty of Merchantability owed to Plaintiff.

32.     As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

33.     Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

34.     Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## COUNT IV

### Strict Product Liability - Failure to Warn

35.     Plaintiff incorporates by reference all of the allegations contained above.

36.     Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption.

37.     Defendant failed to warn Plaintiff or Class Members of the dangers on the Defendants' labels or through other means of advertising until after enormous damage had been suffered by the Plaintiffs and the Class Members.

38.     Even after Defendant became aware of the dangerous contamination of its pet food, they still refused to warn the consumers and allowed countless other consumers to purchase the contaminated pet food and suffer great harm.

39.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

40.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

41.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## JURY TRIAL DEMANDED

42.    Plaintiff demands a jury of twelve.

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, request that he and the other Class Members have judgment entered in their favor and against Defendants, as follows:

A.    An order certifying that this action, involving Plaintiff's and the Class Members' separate and distinct claims, be maintained as a nationwide class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their undersigned counsel to represent the Class;

B.    An award, for Plaintiff's and each Class Members' separate and distinct claims, of compensatory damages and pre- and post-judgment interest thereon;

C.    An award for Plaintiff's and the Class Members of punitive damages for reckless and wanton conduct;

D.    Injunctive relief to prevent further contamination of the American

pet food supply; and

E.    All other appropriate and just relief.

DATED: March 23, 2007              **PATTON, ROBERTS, MCWILLIAMS
                                    & CAPSHAW, L.L.P.**

Jeremy Y. Hutchinson

Jeremy Y. Hutchinson
Jack Thomas Patterson II
Stephens Building
111 Center St., Suite 1315
Little Rock, AR 72201
Phone:  (501) 372-3480
Fax:  (501) 372-3488

Richard Adams
James C. Wyly
Sean F. Rommel
**PATTON, ROBERTS, MCWILLIAMS
& CAPSHAW, L.L.P.**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
Phone:  (903) 334-7000
Fax:  (903) 334-7007

**ATTORNEYS FOR PLAINTIFF**

**H**

MAGISTRATE JUDGE
SNOW/

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **07-60428**   CIV-COHN

CHRISTINA TROIANO, Individually and On
Behalf of All Others Similarly Situated,

          Plaintiff,

vs.

MENU FOODS, INC. and MENU FOODS
INCOME FUND,

          Defendants.

_____/

**JURY TRIAL DEMAND**

FILED BY
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.-FT. L.
2007 MAR 26 PM 1:1

### CLASS ACTION COMPLAINT

Plaintiff Christina Troiano ("Plaintiff"), individually and on behalf of all others similarly

situated, files this Class Action Complaint against Defendants Menu Foods, Inc., a New Jersey

Corporation and Menu Foods Income Fund, a foreign corporation (collectively "Defendants") and

alleges as follows:

### I.    INTRODUCTION

1.    This is a class action lawsuit brought on behalf of Plaintiff and others similarly

situated who purchased pet food and pet food products produced, manufactured and/or distributed by

Defendants that caused injury, illness, and/or death to Plaintiff's household pets.

2.    Defendants are the leading North American private label/contract manufacturer

of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty

retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger,

PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food

products to or for Proctor & Gamble, Inc. Defendants produce hundreds of millions of containers

of pet food annually.

3.      Defendants designed, manufactured, marketed, advertised and warranted their pet food products. In conjunction with each sale, Defendants marketed, advertised and warranted that the Products were fit for the ordinary purpose for which such goods were used – consumption by household pets – and were free from defects. Defendants produce the pet food products intending that consumers will purchase the pet food products, regardless of brand or label name, place of purchase, or the location where pets actually consume them. The pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiff and purchasers in Florida and the United States and fed to their pets.

4.      Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on her own behalf and as a representative of a class of persons consisting of all persons in the United States who purchased, or incurred damages by using pet food produced manufactured and/or distributed by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007. The pet food products referenced in this paragraph will hereinafter be referred to as the "Products."

5.      As a result of the defective Products, Plaintiff and members of the Class have suffered damages in that they have incurred substantial veterinary bills, death of pets, and purchased and/or own pet food and pet food products that they would not otherwise have bought had they known such products were defective.

6.      Defendants know and have admitted that certain of the Products produced by the Defendants between December 3, 2006 and March 6, 2007 are defective and causing injury and death to household pets, and on March 16, 2007, initiated a recall of some of the Products. Further, the Food and Drug Administration has reported that as many as one in six animals died in tests of the Products by Defendants last month after the Defendants received complaints the products were

poisoning pets around the country. A spokeswoman for the New York State Department of Agriculture and Markets has said that rodent poison was determined to have been mixed into the Products by Defendants.

## II.    PARTIES

7.    Plaintiff is a resident of Broward County, Florida who, in early March of 2007, purchased Iams Select Bytes Cat Food from a Publix grocery store in Deerfield Beach, Florida. The Iams Select Bytes Cat Food purchased by Plaintiff is a part of the group of Products that were produced, manufactured and/or distributed by Defendants.

8.    Defendant Menu Foods, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.

9.    Defendant Menu Foods, Inc. is ultimately owned or controlled by Defendant Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant Menu Foods, Inc.'s high managerial officers or agents with substantial authority are also high managerial officers or agents of Defendant Menu Foods Income Fund.

10.    Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of the Class the Products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and

subsection (d), and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005);

and over supplemental state law claims pursuant to 28 U.S.C. §1367.

12.    Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391

and/or Pub. L. 109-2 because a substantial part of the events or omissions giving

rise to the claim occurred in this judicial district. In this judicial district, Plaintiff purchased the

recalled pet food products made by Defendants, and her household pets ate and consumed the

Products. Thousands of other consumers – including other members of the Class – purchased the

Products in this judicial district from retailers that Defendants, their agents, affiliates, or others

controlled or were in privity with. In turn, retailers or others sold the Products to the general public,

including Plaintiff, and members of the Class. The Products were purchased for consumption by the

pets of Plaintiff and the other members of the Class. Defendants made or caused these products to be

offered for sale and sold to the public, including Plaintiff.

### IV.    SUBSTANTIVE ALLEGATIONS

**Defendants and their Defective Pet Food**

13.    Defendants are in the business of manufacturing, producing, distributing, and/or

selling pet food under various brands or labels, and/or for third party firms, including:

America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments,

Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant

Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving

Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural

Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet

4

Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Winn Dixie.  Defendants has manufactured or produced pet food for private labels for aproximately17 of the 20 leading retailers in the United States.

14.    Defendants' business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride - Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Winn Dixie, and Your Pet.

15.    Defendants produce millions of pouches or containers of pet food products each year, a substantial portion of which are sold or offered for sale in Florida.  Upon information and belief, Defendants have sold, either directly or indirectly, thousands of units of defective pet food and pet food products nationwide and in the State of Florida.

16.    Defendants manufactured, marketed, advertised, warranted and sold, either directly or through their authorized distribution channels, the Products that caused Plaintiff's damages. Plaintiff and members of the Class have been or will be forced to pay for damages caused by the defect in Defendants' Products.

## Factual Allegations Related to Plaintiff

17.     In early March, 2007, Plaintiff purchased Iams Select Bytes Cat Food pet food from a national chain grocery store, Publix, operating in Deerfield Beach, Florida.

18.     Over the course of the next few weeks, Plaintiff fed the cat food to her two cats, Angel and Piescat. Towards the end of that period, Plaintiff began noticing that her cats were not eating much of the Defendants' product, and that the cats were leaving large pools of urine in their litter box with little or no bowel movements.

19.     On or about March 16, 2007, Defendants announced a recall of approximately 42 brands of "cuts and gravy style dog food, all produced by the Defendants between December 3, 2006 and March 6, 2007." Defendants had initially received complaints from consumers as far back as February 20, 2007 indicating that certain of Defendants' pet food was causing kidney failure and death in dogs and cats. Unfortunately, Plaintiff and the Class were not made aware of this recall for several more days.

20.     On March 20, 2007, following another few days of unusual behavior from her cats, Plaintiff took her cats to the veterinarian. The veterinarian advised Plaintiff that both of her cats were suffering from kidney failure directly and proximately caused by the cat food. One of the Plaintiff's cats, Angel, died shortly thereafter, while the other cat, Piescat, remains at a veterinary hospital receiving treatment.

21.     Thereafter, Plaintiff learned about the recall and the potential problems that could occur from feeding the Products to her pets. Prior to the recall, Defendants never warned Plaintiff or any other member of the Class that the Products would cause their pets to have health problems. As referenced above, Defendants knew about the risks of injury or death at least one month prior to the time that Plaintiff fed the Products to her cat.

22.     As a result of their purchases of the Products, as set forth above, Plaintiff and other members of the Class have suffered and will suffer damages, including consequential and incidental damages, such as the loss and disability of their household pets, costs of purchasing the Products and replacing it with a safe product, including sales tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendants, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## V.     CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on her own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.[1]

24.     Numerosity: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate

---

[1]     *See* Canon 3.C(3)(a) of the Code of Conduct for United States Judges.

7

discovery, Plaintiffs believe and therefore aver that there are thousands of Class members throughout the United States.

25.    <u>Commonality</u>: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

(a)    Whether Defendants sold pet food and pet food products that were recalled or subject to a recall.

(b)    Whether Defendants advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members.

(c)    Whether Defendants expressly warranted these products.

(d)    Whether Defendants purported to disclaim any express warranty.

(e)    Whether Defendants purported to disclaim any implied warranty.

(f)    Whether any limitation on warranty fails to meet its essential purpose.

(g)    Whether Defendants intended that the Products be purchased by Plaintiff, Class members, or others.

(h)    Whether Defendants intended or foresaw that Plaintiff, class members, or others would feed the Products to their pets.

(i)    Whether Defendants recalled the pet food products.

(j)    Whether Defendants was negligent in manufacturing or processing the Products.

(k)    Whether using the Products as intended - to feed their pets - resulted in loss, injury, damage, or damages to the Class.

(l)    Whether Defendants' negligence proximately caused loss or injury to damages.

(m)     Whether Class members suffered direct losses or damages,

(n)     Whether Class members suffered indirect losses or damages.

(o)     Whether Defendants' acts or practices violated the Florida Deceptive and Unfair Trade Practices Acts.

26.     Typicality:  Plaintiff's claims are typical of the claims of the other members of the Class in that all such claims arise out of Defendants' conduct in manufacturing, producing and entering into the stream of commerce defective pet food and pet food products, Defendants' conduct surrounding the recall of its product, and Plaintiff's and Class Members' purchase and use of Defendants' products.  Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

27.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact (identified in paragraph 25 above) predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issue in this action is whether Defendants' pet food and pet food products are defective and have caused damages to Plaintiff and the members of the Class.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods

for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

29.     The undersigned counsel for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

30.     Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Breach of Implied Warranty

31.     Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

32.     Defendants manufactured, marketed, sold and distributed the Products.

33.     At the time that Defendants marketed, sold, and distributed the Products, Defendants knew of the purpose for which the Products were intended and impliedly warranted that the Products were of merchantable quality and safe and fit fur such use.

34.     Plaintiff reasonably relied upon the skill, superior knowledge and judgment of the Defendants as to whether the Products were of merchantable quality and safe and fit for its intended use.

35.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff could not have known about the risks and side effects associated with the Products until after ingestion by Plaintiff's cats.

36.    Contrary to such implied warranty, the Products were not of merchantable quality and were not safe or fit for their intended use.

37.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered damages as alleged herein.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### SECOND CAUSE OF ACTION

#### Breach of Express Warranty

38.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

39.    Defendants expressly warranted that the Products were safe for consumption by pets.

40.    The Products did not conform to these express representations because the Products are not safe and cause serious side effects in pets, including death.

41.    As a direct and proximate result of the breach of said warranties, and as the direct and legal result of the defective condition of the Products as manufactured and/or supplied by Defendants, and other wrongdoing of Defendants described herein, Plaintiff was caused to suffer damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### THIRD CAUSE OF ACTION

#### Negligence

42.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

43.    Defendants owed Plaintiff a duty to only offer safe, non-contaminated products for consumption by household pets.

12

44.     Through its failure to exercise the due care, Defendants breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was unhealthy to the Plaintiff's pets.

45.     Additionally, Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the Products from being offered for sale, sold, or fed to pets.

46.     Defendants knew or, in the exercise of reasonable care should have known, that the Products presented an unacceptable risk to the pets of the Plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

47.     As a direct and proximate result of Defendants' above-referenced negligence, Plaintiff and has suffered loss and damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)     Awarding actual and consequential damages;

(c)     Granting injunctive relief;

(d)     For pre- and post-judgment interest to the Class, as allowed by law;

(e)     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)     Granting such other and further relief as is just and proper.

## FOURTH CAUSE OF ACTION

### Strict Product Liability

48.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

49.    Defendants are producers, manufacturers and/or distributors of the Products.

50.    The Products produced, manufactured and/or distributed by Defendants were defective in design or formulation in that, when the Products left the hands of the Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

51.    Defendants' Products were expected to and did reach the Plaintiff without substantial change in condition.

52.    Alternatively, the Products manufactured and/or supplied by Defendants were defective in design or formulation, in that, when they left the hands of the Defendants, they were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other pet food products without concomitant accurate information and warnings accompanying the product for the Plaintiff to rely upon.

53.    The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results of same.

54.    The Products produced, manufactured and/or distributed by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from the Products, Defendants failed to immediately provide adequate warnings to the Plaintiff and the public.

55.    As the direct and legal result of the defective condition of the Products as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and their legal counsel to represent the Class;

(b)    Awarding actual and consequential damages;

(c)    Granting injunctive relief;

(d)    For pre- and post-judgment interest to the Class, as allowed by law;

(e)    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Class; and

(f)    Granting such other and further relief as is just and proper.

### FIFTH CAUSE OF ACTION

#### Unjust Enrichment

56.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-30 as if more fully set forth herein.

57.    As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited form the sale of the Products, even as the Products caused Plaintiff to incur damages.

58.    Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of

Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that she expected would be safe and healthy for her cats and instead has had to now endure the death of one of her beloved pets and the hospitalization of the other.

59.      By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(a)      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

(b)      Awarding reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

(c)      For pre- and post-judgment interest to the Class, as allowed by law;

(d)      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

(e)      Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff and the Class demands a jury trial on all issues triable by a jury.

DATED:  March 26, 2007

LERACH COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
PAUL J. GELLER
Florida Bar No. 984795
*pgeller@lerachlaw.com*
STUART A. DAVIDSON
Florida Bar No. 84824
*sdavidson@lerachlaw.com*
JAMES L. DAVIDSON
Florida Bar No. 072371
*jdavidson@lerachlaw.com*


STUART A. DAVIDSON

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)


KOPELMAN & BLANKMAN
LAWRENCE KOPELMAN
Florida Bar No. 288845
*lmk@kopelblank.com*
350 E. Las Olas Blvd., Suite 980
Ft. Lauderdale, FL  33301
Telephone: 954/462-6855
954/462-6899 (fax)

Attorneys for Plaintiff and the Class

I:\Pot Lit 2007\Menu Foods\Complaint FINAL.doc

17

KC **F I L E D**

MAR 3 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAWN MAJERCZYK individually and on )
behalf of a class of similarly situated individuals, )
)
          Plaintiff, )
)
      v. )
)
MENU FOODS, Inc., a New Jersey Corporation, )
)
          Defendant. )
------------------------------------------------------------x

**07CV1543**
**JUDGE ANDERSEN**
**MAGISTRATE JUDGE NOLAN**

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

Plaintiff Dawn Majerczyk brings this class action complaint against defendant Menu Foods, Inc. ("Menu Foods") to seek redress for herself and all other individuals injured by its sale of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.     Menu Foods, one of the largest pet food manufacturers in the world, recently issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.     That recall was issued – belatedly – as a result of evidence that the pet food in question was contaminated with a potentially lethal agent.

3.     When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its death.

4.     Menu Foods' actions in selling the contaminated food and failing to issue the recall sooner were reckless and in breach its duties and warranties to its customers.

5.      Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Dawn Majerczyk's cat, as described more fully below.

6.      On behalf of a nationwide class, Majerczyk seeks redress for that misconduct.

## PARTIES

7.      Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

8.      Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principle place of business in New Jersey. It does business throughout the United States, including Cook County, Illinois.

## JURISDICTION

9.      The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332(d) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Menu Foods is a citizen, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

## VENUE

10.     Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

## FACTS

11.     Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.     It makes numerous express warranties about the quality of its food and its manufacturing facilities.

2

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between Dec. 3, 2006, and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that the pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaint, Menu Foods tested its food on approximately 40 to 50 pets.  Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner.  For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational.

**FACTS RELATING TO THE NAMED PLAINTIFF**

20.    On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

21.    Menu Foods is the manufacturer of Special Kitty Select Cuts.

3

22.     On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went

into renal failure.  Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

23.     Majerczyk incurred over $300 in veterinary expenses relating to  the attempts to

save Phoenix's life.

24.     Phoenix had been with Majerczyk's family from birth.

25.     The loss was devasting not only to Majerczyk, but also to her seventeen-year-old

son and fourteen-year-old daughter as well.


## CLASS ALLEGATIONS.

26.     Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and

a class (the "Class") consisting of herself and all others who purchased pet food in the United

States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.     Upon information and belief, there are over 100,000 members of the Class such

that joinder of all members is impracticable.

28.     Common questions of law and fact exist as to all members of the Class and

predominate over questions affecting individual members.  Common questions for the Class

include:

(a)     Did Menu Foods act negligently in failing to prevent the contamination of

its pet food?

(b)     Did Menu Foods act negligently in failing to warn its customers in a

timely and effective manner of the danger of its pet food?

4

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.    Majerczyk will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

**COUNT I**

**(Breach of Warranties)**

31.    Plaintiff incorporates by reference the foregoing allegations.

32.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.    Menu Foods breached the implied warranty of merchantability.

35.    As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

5

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

    1.    An order certifying the Class as defined above;

    2.    An award of actual damages;

    3.    Appropriate injunctive relief;

    4.    Medical monitoring damages;

    5.    Reasonable attorney's fees and costs; and

    6.    Such further and other relief the Court deems appropriate.

## COUNT II
### (Negligence)

36.    Plaintiff incorporates by reference the foregoing allegations.

37.    Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.    Menu Foods breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

39.    Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

40.    As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

6

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 20, 2007                           Dawn Majerczyk, individually and on behalf of a
                                         class of similarly situated individuals


                                         _____
                                                 one of her attorneys


John Blim
Jay Edelson
Myles McGuire (Of Counsel)
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
(312) 913-9400
(312) 913-9401 (Fax)

7

J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

LIZAJEAN HOLT,                                    )
                                                 )
Individually, and on behalf of similarly         )
situated persons,                                )
                                                 )    No. _____
     Plaintiff,                               )
                                                 )
v.                                               )    Class action
                                                 )
MENU FOODS, INC.,                                )    JURY DEMAND
                                                 )    CLASS ACTION
     Defendant.                               )

### CLASS ACTION COMPLAINT

**I. Class Action**

    1. Plaintiff, individually and as representative of a Class of similarly situated

persons more defined below, brings suit against the named Defendant for offering for sale

and **selling** to Plaintiff and Class members pet food and food products – "cut and gravy"

pet products – formally **recalled** on March 16, 2007.  Defendant is a corporation  doing

business and operating in the United States.  Defendant recalled cat and dog food

products that are sold under numerous brands by several national chain stores in

Tennessee and other States in the United States.   The pet food products were produced

by Defendant(s), a private label manufacturer, labeled by the Defendant, and then

distributed and ultimately sold to Plaintiff, Class Members, and others.   Defendant issued

or caused to be issued a press release announcing the recall, and the United States Food

and Drug Administration issued a press release the same day.  These pet food products

were intended to be placed in the stream of commerce and distributed and offered for sale

and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their

pets, cats and dogs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and

subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005);

and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391

and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving

rise to the claim occurred in this judicial district, or a substantial part of property that is

the subject of the action is situated in this judicial district.

4. In this judicial district, Plaintiff purchased the recalled pet food product made

by or for Defendant, and her pet ate or consumed it.   Thousands of other

consumers/customers – including Plaintiff and other Class Members – purchased the

recalled or contaminated products in this judicial district from retailers that Defendant, its

agents, affiliates, or others it or they controlled sold or made available to them.  In turn,

retailers or others sold these recalled products to the general public, including Plaintiff,

Class members and other purchasers. These products were purchased for consumption by

the pets of Plaintiff and the Class members.  Defendant made or caused these products to

be offered for sale and sold to the public, including Plaintiff.

5. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as

well.

## III. Plaintiff

6.  At all times material hereto, Plaintiff Lizajean Holt was and is a citizen of the State of Tennessee and the United States and resides in Knox County, Tennessee.

## IV. Plaintiff's Purchase(s)/Defendant's Recall

7.  Plaintiff purchased recalled brands of Pet Pride and Iams pet food from a national chain grocery store, Kroger, operating in Knox County, Tennessee.  Kroger, like other retailers, did not alter the product produced by the Defendant in any way prior to selling it to Tennessee consumers and other consumers throughout the United States.

8.  Without knowing that Defendants would recall the product after it was offered for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet.  Her pet became lethargic and began drinking large amounts of water and Plaintiff discontinued feeding the Defendant's products to her cat prior to the recall notice.  Plaintiff and thousands of other consumers will now face veterinary bills to have their pets evaluated for kidney damage.

9.  Before her purchase, Defendant never warned Plaintiff that the pet food product that she purchased for feeding her pet may or would cause it have health problems or concerns or that she would have to take her pet to a veterinarian due to a health concern relating to or resulting from the tainted pet food.

10.  On or on about March 16, 2007, Defendant issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States.

11.  Defendant's business consists substantially of providing private label pet foods at its plants or pet foods under other brands, not its own.  In turn, Defendant's

3

products are sold under a variety of labels or brands listed on its website as of March 17, 2007 and set forth below.

12.  The product that Plaintiff purchased at a Kroger in Knoxville was a product recalled by Defendant.

13.  After Plaintiff purchased the pet food and fed it to her cat, she learned about the recall and the actual or potential problems and concerns from purchasing and feeding the product to her pet.

14.  Plaintiff bought the product(s) for their intended purposes: to feed her pet.

15.  Defendant placed these pet products in the stream of commerce in Tennessee and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the general public would feed these products to their pets.

**V. Defendant, Its Business, and the Recall**

16.  At all times material hereto, Defendant Menu Foods, Inc. was and is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.  Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal entity.  Some of Defendant's high managerial or officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Defendant may be served through the Secretary of State for Tennessee or as provided by law.

17.  Defendant Menu Foods, Inc. owns, controls, is related to or an affiliate of a firm with plants where the pet food is manufactured or processed that are located in the United States.  These plants are located in Emporia, Kansas and, Pennsauken, New

4

Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

18.  Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc.  It produces hundreds of millions of containers of pet food annually.

19.  Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

20.  Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

21. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion,

Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn Dixie, and Your Pet.

22.  On Defendant's website as of March 17, 2007, it listed by brands, the size of the container or pouch, the dates of manufacture, and the products subject to recall. Thus, each container or pouch and size of each brand or label listed – subject to the recall above – was noted specifically on its web site.  Thus, a 3 ounce can or pouch of Pet Pride Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC" number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled. The other brands also generally listed numerous separate pouches or containers bearing the major private label or brand with a further sub-description similar to the manner described above, by brand or label.

23.  After reports or complaints from pet owners about symptoms – such as vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports of deaths of certain pets, from or through its Canadian office or affiliation, Defendant caused or issued a recall of certain specified pet products, reportedly totaling between 40 and 60 million cans.

24.  Defendant also advised a governmental agency of the United States about the recall and certain events leading to the recall, namely the Food and Drug Administration (FDA).

6

25.  Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee or for Tennesseans who purchase the products for their pets.  Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets.

26.  Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee to Tennesseans who purchase and buy them for their pets for consumption by their pets in the State of Tennessee and in this judicial district.

27.  Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in Tennessee and this judicial district, including a significant or substantial part of the recalled pet food.

28.  Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

29.  Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

30.  Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

7

31.  Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

32.  In the last few days, Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006 and concluding about March 6, 2007.

33.  Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

34.  Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

35.  Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition.

36.  Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

37.  There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets.  Defendant knew or should have known about the risks and possible injury.

**VI. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

38.  As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss,

8

damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sale tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

**VII. Breach of Warranties & Remedies**

39. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

38. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

40. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

41. Defendant breached the implied warranty of merchantability.  In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable.  This breach violated the Uniform Commercial Code.

42. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

**VIII. Negligence**

43. Defendants owed Plaintiff and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

44. Though its failure to exercise due care Defendant owed Plaintiff, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

45. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

46. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiff, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

47. The loss, damage, and injuries were foreseeable.

48. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

## IX. Statutory Unfair or Deceptive Trade Practices Act

49. Plaintiff, the Class, purchasers, others, and Defendant are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

50. Defendant's offer for sale or sale of their recalled pet food products is in or affects trade or commerce in Tennessee.

51. Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

52. In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

53. Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

54. Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

55. Plaintiffs brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including the ascertainable loss of money or property by each such person.

## X. Rule 23

56. Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006 up to and including March 6, 2007.

57. Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

58. There are questions of law or fact common to the Class. These common questions include but are not limited to the following:

11

a. Whether Defendant sold pet food products that were recalled or subject to a recall?

b. Whether Defendant advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members?

c. Whether Defendant expressly warranted these products?

d. Whether Defendant impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendant impliedly warranted these products for merchantability?

f. Whether Defendant purported to disclaim any express warranty?

g. Whether Defendant purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendant intended that the pet food products be purchased by Plaintiff, Class members, or others?

j. Whether Defendant intended or foresaw that Plaintiff, class members, or others would feed their pet food products to their pets?

k. Whether Defendant recalled the pet food products?

l. Whether Defendant was negligent in manufacturing or processing the pet food products?

m Whether using the products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class?

n. Whether Defendant's negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses or damages?

p. Whether Class members suffered indirect losses or damages?

q. Whether Defendants' acts or practices violated state Deceptive Trade Practices Acts?

59. The claims or defenses of the representative parties are typical of the claims or defenses of the Class.

60. The representative parties will fairly and adequately protect the interests of the Class.

61. Prosecuting separate actions by individual members of the Class would create a risk of either –

a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

d. Plaintiff is unaware of any litigation concerning the controversy already commenced by members of the class;

e. It is desirable to concentrate the litigation of the claims in this forum;

f. No unusual difficulties are likely to be encountered in the management of a class action.

62.  The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

63.  They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

64.  Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## XII. Jury Demand

65.  The Class demands a jury trial on all issues triable by a jury.

## XIII. Prayer for Relief

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1. That process issue and Defendant be served.  (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2. That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3. That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

14

4. That the Court find that Defendant manufactured or processed the pet food products that were sold or offered to sale to Plaintiff and the Class.

5. That the Court find that Defendant intended Plaintiff and Class members to believe that the pet foods sold were fit and safe for consumption by their pets.

6. That a trial be held and Defendants be held liable to the Class for – breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7. That the Class be awarded an amount sufficient for direct damages occasioned by Defendants' acts and practices.

8. That the Class be awarded an amount sufficient for indirect, consequential, and incidental damages occasioned by Defendant's acts and practices.

9. That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Dated:  March 19, 2007.

Respectfully submitted,

/s/ A. James Andrews
A. James Andrews, BPR # 15772
905 Locust Street
Knoxville, Tennessee 37902
(865) 660-3993
Fax: (865) 523-4623

15

/s/<u>Perry A. Craft</u>
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)


/s/<u>Nichole Bass</u>
Nicole Bass, BPR # 021383
905 Locust Street
Knoxville, Tennessee 37902
(865) 310-6804


Cost Bond

We are sureties for costs not to exceed $1,000.


/s/ <u>A. James Andrews</u>

16

K

TRUJILLO RODRIGUEZ & RICHARDS, LLC
Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
8 Kings Highway West
Haddonfield, NJ 08033
TEL: (856)795-9002
FAX: (856)795-9887

BERGER & MONTAGUE, P.C.
Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs and the Class

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | : : : : | |
| | : | Civil Action No. _____ |
| Plaintiffs, | : : | |
| vs. | : : | |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | : : : | COMPLAINT - CLASS ACTION JURY TRIAL DEMANDED |
| Defendants, | : | |

---

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Jared Workman, and Mark and Mona Cohen, by their attorneys, allege upon

information and belief, the following:

1.      This class action is brought, and these proceedings instituted, to redress the harms

resulting from the manufacture, production, and sale by Menu Foods Limited, Menu Foods Inc.

and Menu Foods Midwest Corporation of dog and cat food marketed under over 90 brand names.

Plaintiffs make the following allegations, except as to the allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, based upon the investigation undertaken by Plaintiffs' counsel, which included, inter alia, review and analysis of Defendant's website, press releases, news articles, and pleadings filed in other suits.

## PRELIMINARY STATEMENT

2.      Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the parent company of Menu Foods Limited issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3.      The recalled pet food that Plaintiffs and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4.      Plaintiffs here seek damages, injunctive relief, attorneys' fees, and costs against Defendants.

2

**PARTIES**

5.      Plaintiff Jared Workman resides at 1150 Unit D, Monroe Drive, Boulder, CO, 80303.  Plaintiff Workman purchased and fed his cat Iams pet food that was manufactured by Defendants during the Class Period.  This cat, named Seth, became ill with kidney disease, was hospitalized, and subsequently died of acute renal failure.  In addition to the cost of purchasing the contaminated food, Plaintiff Workman incurred economic costs in connection with the medical treatment and burial of his cat, as well as continuous medical monitoring of his other two cats.

6.      Plaintiffs Mark and Mona Cohen reside at 1415 Brighton Street,  Philadelphia, PA 19111.   Plaintiffs  purchased and fed their dog Iams pet food that was manufactured by Defendants during the Class Period.  This dog, named Cookie, subsequently developed symptoms of acute renal failure.  In addition to the cost of purchasing the contaminated food, the Cohens incurred economic costs in connection with the medical treatment and damage to personal property caused by their dog's illness.

7.      Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N 1B1. Menu Foods Limited has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

8.      Defendant Menu Foods Inc. is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110.  Menu Foods Inc. has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Inc. is a wholly-owned subsidiary of  Menu Foods Limited and manufactures pet food for distribution in the United States.

3

9.    Defendant Menu Foods Midwest Corporation is a Delaware corporation, with its headquarters at PO Box 1046, 1400 East Logan Ave., Emporia, KS 66801. Menu Foods Midwest Corporation has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Limited and manufactures pet food for distribution in the United States.

10.    The events complained of occurred throughout the United States and in the State of New Jersey.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

12.    Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

## STATEMENT OF FACTS

13.    Defendant Menu Foods Limited purports to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, Menu Foods Limited produced more than one billion containers of pet food.

14.    Defendant Menu Foods Limited is the parent company of, and wholly-owns, both

4

Defendant Menu Foods, Inc. ("MFI"), located in Pennsauken, New Jersey, and Defendant Menu Foods Midwest Corporation ("MFMC"), located in Emporia, Kansas. MFI and MFMC are two of Menu Food Limited's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and sold was free from contamination. More specifically, on March 16, 2007, the parent company of Menu Foods Limited issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Food Limited's facilities - MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.    Reportedly, 60 million cans and pouches of the pet food were recalled.

17.    The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Addendum A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.    Menu Foods Limited acknowledges receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19.    Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian,

5

said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, 7 animals died. Menu Foods announced its recall weeks later, on March 16, 2007.

20.    The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

21.    To date, there are 15 confirmed death. The FDA expects the death toll to rise.

22.    The FDA said that the investigation is focused on problems with wheat gluten, which Menu Foods Limited said had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

23.    Plaintiff Jared Workman owned a cat named Seth. During December 2006, Plaintiff Workman fed his cat Iams pet food, as well as other brand name cat foods which are now listed on the Company's recall list as contaminated products.

24.    In December 2006, Plaintiff Workman noticed that his cat, Seth, was acting strangely. He was lethargic and eating less than usual. Plaintiff called his cat veterinarian, who came to the house to perform blood work. The vet reported that Seth was dying of kidney failure. Plaintiff Workman then took Seth to an animal hospital in Greeley, Colorado. After several days in the hospital, it became clear that Seth was most likely suffering from acute renal failure. After about one week in the hospital, and despite constant medical treatment, Seth died.

25.    In addition to Plaintiff Workman suffering emotional distress from the loss of his cat, he spent approximately $2,500 in veterinarian bills and burial costs, which was not covered

6

by insurance. In addition, Plaintiff Workman spend almost $300 to have his other two cats

tested, and will incur additional costs to have them continually monitored. In addition to these

costs, Plaintiff Workman has not received any refunds for the cost of the contaminated pet food

that he initially purchased. Finally, he estimates that it will cost him approximately $1,000 to

purchase a new cat.

26.     Plaintiffs Mark and Mona Cohen own an 11 month old dog named Cookie that is

a Yorkie-Bijain mix. Beginning January 2007, the Cohens' dog Cookie became violently ill

with severe vomiting. The Cohens had been feeding Cookie Iams dog food.

27.     In January and February 2007, Cookie's condition worsened and Cookie

developed symptoms of kidney disease, including vomiting, lethargy, excessive thirst, loss of

appetite and dehydration. The Cohens took Cookie to the veterinarian on four separate

occasions, including a midnight visit on February 9, 2007 to a veterinarian emergency room

which required an x-ray at an additional cost of $300.

28.     Although the Cohens' suspected that the Iams food might be involved in Cookie's

condition, they were assured by their salesperson at PetSmart that this was unequivocally not the

case and that Cookie should not be switched to a different dog food. The Cohens, however,

insisted a switch be made, and purchased, at the recommendation of their PetSmart salesperson,

a dog food under the brand name Nutro. Both Iams and Nutro were manufactured and recalled

by Defendants.

29.     Cookie is currently on an anti-nausea medication called Reglin and requires

additional vetrinarian visits and monitoring of her kidney functions.

30.     In addition to suffering emotional distress, the Cohens have incurred the costs of

medical bills not covered by their pet insurance, prescription medication bills, damage to their personal property including rugs and carpets caused by their's pet's illness, and the costs of future medical monitoring of their dog.

31.     As a result of Defendants' wrongful actions, Plaintiffs and Class members have sick or deceased pets, and have suffered economic damages, including, but not limited to, the costs of the recalled pet food, the costs of medical treatment for their pets, burial costs, the costs to replace their pets, and the costs to replace or clean personal property damaged as a result of their pets' illnesses.

32.     In addition, their pets will require continuous medical monitoring to gauge the long-term effects of the contaminated pet food on their kidney functions and overall health. Therefore, because the precise impact on the health of class members' pets is not currently known, Plaintiffs and the Class seek the cost of medical monitoring for their pets.

### CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.

34.     The class which Plaintiffs seek to represent are composed of all persons in the United States who purchased any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

35.     The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable.  The disposition of their claims in a class action will benefit both the parties and the Court.  Defendants have recalled 60 million cans of pet food that it sold

8

throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if not impossible.

36.     There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

1.     Whether Defendants breached any express or implied warranties when they manufactured and sold the recalled pet food;

2.     Whether Defendants' negligently manufactured and sold the recalled pet food; and

3.     Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

37.     The above common issues of fact and law predominate over any arguable individualized issues.

38.     Plaintiffs' claims are typical of the claims of the other members of the class because Plaintiffs' and all of the Class members' damages arise from and were caused by having purchased and fed the recalled pet food to their pets.  As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiffs and all of the Class members.

39.     Plaintiffs will fairly and adequately protect the interests of the members of the Class, and Plaintiffs have no interests which are contrary to or in conflict with those of the Class they seek to represent.  Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

40.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the

9

class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiffs do not believe that any difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiffs believe and therefore aver that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.    Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

42.    Plaintiffs and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiffs and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

## COUNT I - BREACH OF EXPRESS WARRANTY

43.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

44.    Defendants expressly warranted that the recalled brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

45.    In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program

10

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

46.     Members of the Class were induced by Defendants' labeling, advertising and marketing the recalled brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the recalled brands of pet food and feeding them to their pets.

47.     In reliance on Defendants' untrue warranties, Plaintiffs and the Class purchased the recalled pet food and fed that food to their pets.

48.     Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT II - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

49.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

50.     Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

51.     Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food, which was sold to Plaintiffs and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

11

52.    Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiffs and Class members would purchase the recalled pet food at issue for the ordinary purpose of feeding their pets.

53.    Defendants manufactured, labeled, advertised, sold, and distributed the recalled pet foods at issue for the ordinary purpose for which it was purchased by Plaintiffs.

54.    Plaintiffs and Class members purchased and used the recalled pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

55.    Plaintiffs and Class members relied upon Defendants' representations and claims in purchasing the recalled pet foods.

56.    The recalled pet foods purchased by Plaintiffs and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods at issue.

57.    Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

### COUNT III - NEGLIGENCE

58.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

59.    Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

60.    Defendants breached said duty as described herein above when they failed to

12

adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiffs and members of the Class.

61.    As a proximate result of the Defendants' conduct described herein, Plaintiffs and members of the Class have suffered damages as a result and continue to suffer damages as a result.

### JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues triable by right before a jury.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for judgment as follows:

1.    That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiffs and their counsel to represent the Class;

2.    That this Court enter judgment and award damages in favor of Plaintiffs and the Class, and against Defendants under the theories alleged herein;

3.    That this Court establish a fund for the medical monitoring of Plaintiffs' pets to discover and treat the extent of kidney damage these pets have suffered as a result of consuming Defendants' recalled pet food;

4.    That this Court award Plaintiffs all attorneys' fees, expenses and costs of this suit;

5.    That this Court award Plaintiffs pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

6.    That this Court grant such other, further, and different relief that the Court deems

necessary, just, and proper.

Dated: March 22, 2007                    Respectfully submitted,

                                         TRUJILLO RODRIGUEZ & RICHARDS, LLC


                                         By   /s Donna Siegel Moffa
                                              Donna Siegel Moffa, Esquire
                                              Lisa J. Rodriguez, Esquire
                                              8 Kings Highway West
                                              Haddonfield, NJ  08033
                                              TEL:  (856)795-9002
                                              FAX: (856)795-9887


                                         BERGER & MONTAGUE, P.C.
                                         Sherrie R. Savett, Esquire
                                         Michael T. Fantini, Esquire
                                         Russell D. Paul, Esquire
                                         1622 Locust Street
                                         Philadelphia, PA 19103
                                         (215) 875-3000

                                         ROVNER, ALLEN, ROVNER ZIMMERMAN &
                                         NASH
                                         Robert A. Rovner, Esquire
                                         Jeffrey I. Zimmerman, Esquire
                                         175 Bustleton Pike
                                         Feasterville, PA 19053-6456
                                         (215) 698-1800

                                         Attorneys for Plaintiffs and the Class

14

Schedule A

Recalled Menu Foods' Pet Food Brands[1]

---

[1]      http://www.menufoods.com/recall/product_cat.html, accessed March 21, 2007;
http://www.menufoods.com/recall/product_dog.html, accessed March 21, 2007.

15



**MENU FOODS INCOME FUND**

Home
**Recall Information**
  Press Release
  Cat Product Information
  Dog Product Information

Menu Foo
8 Falcone
Streetsvill
Canada Li

### Recalled Dog Product Information
Recall Information **1-866-895-2708**

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws
32. Pet Essentials
33. Pet Pride – Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US

Menu Foods Income Fund – Annual General Meeting

38. Publix
39. Roche Brothers
40. Save-A-Lot
41. Schnucks
42. Shep Dog
43. Springsfield Prize
44. Sprout
45. Stater Brothers
46. Stop & Shop Companion
47. Tops Companion
48. Wegmans Bruiser
49. Weis Total Pet
50. Western Family US
51. White Rose
52. Winn Dixie
53. Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

http://www.menufoods.com/recall/product_dog.html                    3/21/2007



# MENU FOODS INCOME FUND

Home
**Recall Information**
Press Release
Cat Product Information
Dog Product Information

Menu Foo
8 Falcone
Streetsvill
Canada L!

## Recalled Cat Product Information
### Recall Information 1-866-895-2708

1. Americas Choice, Preferred Pets
2. Authority
3. Best Choice
4. Companion
5. Compliments
6. Demoulas Market Basket
7. Eukanuba
8. Fine Feline Cat
9. Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat
32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion

Menu Foods Income Fund - Annual General Meeting

38. Wegmans
39. Wels Total Pet
40. Western Family US
41. White Rose
42. Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

http://www.menufoods.com/recall/product_cat.html

3/21/2007

L

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lauri A. Osborne, Individually and On Behalf of All Others Similarly Situated, ) | No. 3:07cv 469 (RNC) |
| Plaintiff, ) | 307CV00469 RNC |
| vs. ) | CLASS ACTION |
| MENU FOODS, INC. ) | |
| Defendant. ) | DEMAND FOR JURY TRIAL |
| ) | |

### CLASS ACTION COMPLAINT

Plaintiff Lauri A. Osborne brings this class action complaint against Menu Foods, Inc. ("Menu Foods") to seek redress for herself and other individuals injured by its sale of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.    Menu Foods, one of the largest pet food manufacturers in the world, recently issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.    That recall was issued belatedly as a result of evidence that the pet food in question was contaminated with a potentially lethal agent.

3.    When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in complete shutdown of the animal's kidneys and, ultimately its death.

4.    Menu Foods' actions in selling the contaminated food and failing to issue the recall sooner were reckless and in breach of its duties and warranties to its customers.

5. Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Lauri A. Osborne's cats, as described more fully below.

6. On behalf of a nationwide class, Lauri A. Osborne seeks redress for that misconduct.

## PARTIES

7. Plaintiff Lauri A. Osborne is a citizen of Connecticut, residing in Terryville, Litchfield County, CT.

8. Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principal place of business in New Jersey. It does business throughout the United States and throughout Connecticut. It also has offices in Ontario, Canada.

## JURISDICTION

9. The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332 (a) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Menu Foods is a citizen; (b) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332 (d)(4)-(5) applies to the instant action.

## VENUE

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The Defendant transacts business in this District, and many of the acts constituting the violations of law alleged herein occurred in this District.

## FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between December 3, 2006 and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaints, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free number it provided to the public were frequently non-operational.

**FACTS RELATING TO THE NAMED PLAINTIFF**

20.     On or about February 25, 2007 Plaintiff purchased a 24 can variety pack of IAMS adult cat food from a Walmart store for her thriteen year-old cat, Gizmo, her thirteen year-old cat, Ziggy, and her eleven year-old cat, Oreo.

21.     Menu Foods is the manufacturer of IAMS adult cat food.

22.     On or about March 4, 2007, shortly after ingesting Menu Food's cat food, Gizmo went into renal failure. Gizmo's kidneys shut down, and on March 5, 2007, she had to be put down.

23.     Osborne incurred over $1,200 in veterinary expenses relating to the attempts to save Gizmo's life and, in addition, to save her other cats.  Specifically, another 13 year-old cat, Ziggy has been ill with problems since ingesting the same food, and Oreo, an 11 year-old cat owned by Osborne has also been sick.

24.     Gizo had been with Osborne's family since 1994.

25.     The loss of Gizmo and illness to her other pets has been devasting to Osborne.

**CLASS ALLEGATIONS**

26.     Osborne brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.     Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members.  Common questions for the Class include:

(a)    Did Menu Foods act negligently in failing to prevent contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.    Osborne will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.    A Class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class in impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT I

### (Breach of Warranties)

31.    Plaintiff incorporates by reference the foregoing allegations.

32.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.    Menu Foods breached the implied warranty of merchantability.

35.    As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

## COUNT II

### (Negligence)

36.    Plaintiff incorporates by references the foregoing allegations.

37.    Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.    Menu Foods breached this duty by failing to exercise care in the producing, processing, manufacturing and offering for sale of the contaminated per food described herein.

39.    Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of contamination even after it had actual knowledge of that fact and of the resulting risks.

40.     As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.     An order certifying the Class defined above;

2.     An award of actual damages;

3.     Appropriate injunctive relief;

4.     Medical monitoring damages;

5.     Reasonable attorney's fees and costs; and

6.     Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 26, 2007                                    By: _____

Bruce E. Newman
NEWMAN, CREED & ASSOCIATES
99 North Street, Route 6
P.O. Box 575
Bristol, CT 06011-0575
(860) 583-5200
Federal Bar No.: 12301

M

03/26/2007  13:42    916 568 7890
03/26/2007 13:42 FAX  916 568 7890        WEXLER TORISEVA WALLACE                     ☎002/017



**WEXLER TORISEVA WALLACE LLP**
MARK J. TAMBLYN (State Bar No. 179272)
Email: mjt@wtwlaw.us
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

**KERSHAW, CUTTER, & RATINOFF, LLP**
STUART C. TALLEY (State Bar No. 180374)
E-mail: stalley@kcrlegal.com
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

[Additional Counsel Listed on Signature Page]

Attorneys for *Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CV07-01958 GHK (AJW)

SHIRLEY SEXTON, on behalf of herself and all others similarly situated,

      Plaintiff,

      v.

MENU FOODS INCOME FUND, MENU FOODS, INC., a New Jersey corporation, and MENU FOODS MIDWEST CORPORATION, a Delaware corporation,

      Defendants.

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Shirley Sexton ("Plaintiff"), individually and on behalf of all others similarly situated, alleges by and through her attorneys, upon information and belief, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of herself and a class of consumers and entities who purchased brands of pet food manufactured by Defendants that caused pets to suffer severe illness or death. Pet owners, believing Defendants' products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and to the veterinary monitoring and treatment that became necessary after their pets consumed Defendants' pet food. Such expenses were even more extreme for those pet owners whose pets became terminally ill after consuming Defendants' pet food products. Such costs arose and were exacerbated by the undue amount of time taken by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants knew that pet illnesses and deaths could be related to their pet foods, Defendants waited for nearly a month before telling the public and the Food and Drug Administration (FDA) that it was recalling its products. Defendants' lethal products, and the companies' excessive delay in warning consumers and regulatory agencies as to its dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

2.    The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2).

3.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4.    The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## PARTIES

5.  Plaintiff Shirley Sexton is a resident of Los Angeles County, California.

6.  Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7.  Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

8.  Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801.  Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods, Inc.

9.  Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

11.  Defendants manufacture and sell pet food internationally and are the biggest supplier of pet food in North America.

12.  Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13.  Defendants sell their brands internationally and in some of the largest

1   major retail chains in the United States, such as Wal-Mart, Safeway, Kroger,

2   PetSmart and Meijer.

3       14.  On March 16, 2007, Defendants, in conjunction with the Food and Drug

4   Administration (FDA), announced a massive immediate recall of approximately 60

5   million containers of "cuts and gravy" pet food (pet food consisting of pieces of

6   meat in gravy) throughout the United States based on widespread reports of pet

7   illness and death, mostly related to kidney failure.  The recall covers all "cuts and

8   gravy" we pet food produced and distributed by Defendants, including over ninety

9   different brands of dog and cat food.  Some of the brands recalled include, Iams,

10  Eukanuba, Best Choice, Paws, and Nutro Max.  Defendants' recall is the largest pet

11  food recall in United States history.

12      15.  However, Defendants waited an excessive period of time before deciding

13  to recall its harmful and lethal products.  Defendants first started receiving

14  complaints of pet illnesses and deaths as early as late-February, almost a full month

15  before deciding to recall its products.  *See, e.g.,* CBSNews.com, *Pet Food Co.*

16  *Knew of Problem Last Month*, March 20, 2007, *at*

17  http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last

18  viewed March 22, 2007).  Rather than announcing its products could be harmful to

19  pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct

20  its own testing.  Defendants conducted tests involving over 50 animals to observe

21  reactions to its pet foods.  Approximately one in six of the animals tested died.  Yet,

22  Defendants again waited until as many as seven test subjects died after eating its pet

23  food before finally submitting its findings to the FDA and deciding that a recall and

24  announcement to the public would be necessary.

25      16.  Due in no small part to this unnecessary and protracted delay, as of

26  March 21, 2007 there have been at least seventy-two reported pet deaths from

27  kidney failure nationwide and additional deaths continue to be reported by the hour.

28  One source indicated that 1,715 dogs and cats were either sick or dead as a result of

1  the recalled food products.  *See* http://www.petconnection.com/blog/ (last viewed

2  March 22, 2007).

3      17.  Pet owners purchased Defendants' products believing them to be safe for

4  pet consumption and beneficial to their pets.  However, the "cuts and gravy" style

5  pet food that pet owners across the nation have fed their pets has proved to be toxic,

6  causing renal failure in cats and dogs as well as physical disorders such as

7  dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

8      18.  Pet owners have incurred substantial expenses relating both to the

9  purchase of Defendants' pet food and from the medical costs associated with

10  monitoring and treating pets who have consumed, or were thought to have

11  consumed, Defendants' contaminated food products.  Indeed, several pet owners

12  have accrued veterinary bills that have climbed into the several thousands of

13  dollars.  Furthermore, for those pet owners whose pets became terminally ill, they

14  were forced to incur additional costs relating to their pets death, such as euthanizing

15  and, for some, burying or cremating their pet.

16      19.  Currently, Defendants still have not identified the cause of the food

17  toxicity.  However, aminopterin, a substance found in rat poisons, was recently

18  discovered in the recalled foods.

19      20.  In addition, pet owners who have become increasingly concerned about

20  their pet's health after learning of the recall have received little to no relief from

21  Defendants.  Defendants have failed to manage the high volume of incoming

22  complaints.  Since instituting the recall, pet owners have been largely unable to

23  reach Defendants' customer service representatives, often encountering busy

24  signals or voicemail messages.  *See, e.g.*, Thejournalnews.com, *Pet Owners*

25  *Growling over Food Recall*, March 20, 2007, *at*

26  http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS

27  01/703200345/1066 (last viewed March 22, 2007).  To be sure, Defendants have

28  been criticized for not being cooperative with customers, for not getting helpful

-5-
CLASS ACTION COMPLAINT

03/26/2007   13:43    916 568 7890
03/26/2007 13:43 FAX  916 568 7890          WEXLER TORISEVA WALLACE                    ☒007/017

1    information out to the public sooner and for failing to "get control of the crisis . . .

2    employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-

3    Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available*

4    *at* http://www.nj.com/starledger/stories/index.ssf?/base/business-

5    6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

6         21.  Since the recall, Defendants have received scores of complaints and

7    questions from consumers who have purchased its contaminated pet food products

8    and from those whose pets have become ill or died after consuming those products.

9         22.  The complaints found throughout the Internet and in many of the news

10   stories mentioned above each contain the same common theme of consumers who

11   unwittingly purchased Defendants' food products and who were forced to take their

12   pets to veterinarians for medical treatment after their pets became extremely, and

13   sometimes terminally ill.

14        23.  Plaintiff Shirley Sexton regularly purchased *Special Kitty* brand wet pet

15   food from Wal-Mart Stores, Inc. before the recall was announced.

16        24.  Four cats lived in Ms. Sexton's household. Two of Ms. Sexton's three

17   cats, Red and Kelso, ate the *Special Kitty* pet food every day. Spike, a cat

18   belonging to Ms. Sexton's daughter, also ate *Special Kitty* pet food on a daily basis.

19        25.  On or March 16 and March 17, 2007, Shirley noticed that both Red and

20   Kelso were ill. She took Red and her two other cats in to the veterinarian. Two of

21   the three cats, including Kelso, were initially found to be healthy. However, the

22   veterinarian discovered Red had kidney failure and decided to keep Red overnight.

23   On March 20, 2007, the veterinarian determined that Red's condition had

24   significantly worsened and Ms. Sexton, in order to spare her pet from suffering any

25   further, made the decision to have Red euthanized that same day.

26        26.  After her experience with Red, Ms. Sexton also brought her daughter's

27   cat, Spike, to the veterinarian for testing. The veterinarian determined that Spike –

28   who also ate Wal-Mart's *Special Kitty* brand food – was suffering from kidney

03/26/2007  13:44    916 568 7890
03/26/2007 13:44 FAX  916 568 7890        WEXLER TORISEVA WALLACE                    ☑008/017

1   failure.  As of the date of this complaint, Spike remains in the veterinary hospital.

2        27.  To date, Ms. Sexton has incurred at least $1,100 in veterinary bills.

3                        **CLASS ACTION ALLEGATIONS**

4        28.  Plaintiff brings this action as a class action pursuant to Federal Rule of

5   Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated

6   as members of the following class (the "Class"): All persons and entities that

7   purchased "cuts and gravy" style dog or cat food manufactured, distributed,

8   marketed and/or sold by Defendants.

9        29.  Subject to additional information obtained through further investigation

10  and discovery, the Class definition may be expanded or narrowed by amendment or

11  amended complaint.  Specifically excluded from the proposed Class are business

12  entities for purposes of Plaintiff's claim for relief under the California Consumers

13  Legal Remedies Act, Civil Code § 1750, *et seq.*  Also specifically excluded are

14  Defendants, their officers, directors, agents, trustees, parents, children,

15  corporations, trusts, representatives, employees, principals, servants, partners, joint

16  venturers, or entities controlled by Defendants, and their heirs, successors, assigns,

17  or other persons or entities related to or affiliated with Defendants and/or their

18  officers and/or directors, or any of them; the Judge assigned to this action, and any

19  member of the Judge's immediate family.

20        30.  **Numerosity**.  The members of the Class are so numerous that their

21  individual joinder is impracticable.  Plaintiff is informed and believes, and on that

22  basis alleges, that the proposed class contains tens of thousands of members.  The

23  precise number of Class members is unknown to Plaintiff.  The true number of

24  Class members are known by Defendants, however, and thus, may be notified of

25  the pendency of this action by first class mail, electronic mail, and by published

26  notice.

27        31.  **Existence and Predominance of Common Questions of Law and**

28  **Fact**.  Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b.    Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such food;

    c.    Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

    d.    Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

    e.    Whether Defendants' conduct constituted unlawful, unfair, or fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq., as alleged herein;

    f.    Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein;

    g.    Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages; and

    h.    Whether Plaintiff and members of the Class are entitled to punitive damages, and, if so, in what amount.

    32. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

    33. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests

1   to those of the Class.

2     34.  **Superiority**.  A class action is superior to all other available means for

3   the fair and efficient adjudication of this controversy.  The damages or other

4   financial detriment suffered by individual Class members is relatively small

5   compared to the burden and expense that would be entailed by individual litigation

6   of their claims against the Defendants.  It would thus be virtually impossible for

7   Class, on an individual basis, to obtain effective redress for the wrongs done to

8   them.  Furthermore, even if Class members could afford such individualized

9   litigation, the court system could not.  Individualized litigation would create the

10  danger of inconsistent or contradictory judgments arising from the same set of facts.

11  Individualized litigation would also increase the delay and expense to all parties

12  and the court system from the issues raised by this action.  By contrast, the class

13  action device provides the benefits of adjudication of these issues in a single

14  proceeding, economies of scale, and comprehensive supervision by a single court,

15  and presents no unusual management difficulties under the circumstances here.

16    35.  In the alternative, the Class may be certified because:

17     a.  the prosecution of separate actions by individual Class members

18      would create a risk of inconsistent or varying adjudication with respect

19      to individual Class members that would establish incompatible

20      standards of conduct for the Defendants;

21     b.  the prosecution of separate actions by individual Class members would

22      create a risk of adjudications with respect to them that would, as a

23      practical matter, be dispositive of the interests of other Class members

24      not parties to the adjudications, or substantially impair or impede their

25      ability to protect their interests; and/or

26     c.  Defendants have acted or refused to act on grounds generally

27      applicable to the Class thereby making appropriate final and injunctive

28      relief with respect to the members of the Class as a whole.

CLASS ACTION COMPLAINT

36.   Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

37.   Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class.  The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class.  Such monies are the property of the Plaintiff and the Class.  All or a portion of this benefit retained by Defendants is money in which Plaintiff and the Class have an ownership interest.  Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF
### [Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*]

38.   Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.  Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

39.   Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

40.   Plaintiff and the proposed Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

41.   Plaintiff's purchase of dog and cat food manufactured, distributed, marketed and sold by Defendants constitute "transactions" within the meaning of Civil Code section 1761(e) and 1770.

42.   Defendants' conduct violated and continues to violate the CLRA in at least the following respects:

a.      In violation of Section 1770(a)(1) of the CLRA, Defendants misrepresented the source, sponsorship, approval or certification of goods or services; and

03/26/2007  13:44    916 568 7890
03/26/2007 13:45 FAX   916 568 7890        WEXLER TORISEVA WALLACE                    ☑012/017

b.    In violation of Section 1770(a)(5) of the CLRA, Defendants represented that its goods or services sponsorship, approval, characteristics, uses or benefits which they do not have.

43.  Defendants engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of dog and cat food to Plaintiff and the Class.

44.  In engaging in unfair or deceptive conduct in violation of the CLRA, Defendants actively concealed and intentionally failed to disclose material facts about the characteristics of their dog and cat food, and further represented that such food was suitable for pet consumption.

45.  As a result of Defendants' acts and practices as alleged in this Complaint, Plaintiff seeks an Order enjoining Defendants from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by law.  Plaintiff has contemporaneous with this filing provided notice to Defendants, and will amend to add claims for damages under the CLRA if Defendants do not take appropriate corrective action.

### SECOND CLAIM FOR RELIEF
#### [Negligence]

46.  Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.  Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

47.  Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

48.  Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

49.  Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

03/26/2007   13:45      916 568 7890
03/26/2007 13:45 FAX  916 568 7890      WEXLER TORISEVA WALLACE                    ☑013/017

1    50. Defendants knew, or should have known, that their pet food, as

2  described above, presents an unreasonable and unacceptable risk of injury or death

3  to pets, and would result in foreseeable and avoidable damage.

4    51. The losses and damages described herein were foreseeable and

5  avoidable.

6    52. Defendants' negligence proximately caused the losses and damages to

7  Plaintiff and the Class.

8                    **THIRD CLAIM FOR RELIEF**
                [Violation of the California Unfair Competition Law,
9                  Business & Professions Code §§ 17200, *et seq.*]

10    53. Plaintiff hereby incorporates by reference each of the preceding

11  allegations as though fully set forth herein.  Plaintiff asserts this claim against each

12  and every Defendant on behalf of herself and the Class.

13    54. Defendants' acts and practices, described herein, constitute unlawful,

14  unfair or fraudulent business practices in violation of the Unfair Competition Law,

15  Business & Professions Code sections 17200 et seq ("UCL").

16    55. The utility of Defendants' manufacturing, distribution, marketing and/or

17  sale of contaminated dog and cat food is significantly outweighed by the gravity of

18  the harm they impose on Plaintiff and the Class.  Defendants' acts and practices are

19  oppressive, unscrupulous or substantially injurious to consumers.

20    56. The above-described unfair, unlawful and fraudulent business practices

21  conducted by Defendants present a threat and likelihood of harm and deception to

22  members of the Class in that Defendants have systematically perpetrated and

23  continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of

24  the public by engaging in the conduct described herein.

25    57. Plaintiff and the Class have suffered harm as a proximate result of the

26  wrongful conduct of the Defendants alleged herein, and therefore bring this claim

27  for relief for restitution and disgorgement.  Plaintiff is a person who has suffered

28

03/26/2007   13:45     916 568 7890
03/26/2007 13:45 FAX  916 568 7890        WEXLER TORISEVA WALLACE                    ☒014/017

1  injury in fact and has lost money and property as a result of such unfair

2  competition.

3       58.  Pursuant to Business and Professions Code sections 17200 and 17203,

4  Plaintiff, on behalf of herself and the Class, seeks an order of this Court: enjoining

5  Defendants from continued manufacture, distribution, marketing and sale of "cuts

6  and gravy" style dog and cat food in an unfair, unlawful and fraudulent manner, and

7  an order enjoining Defendants from collecting money from the Class from the sale

8  of pet food.  Plaintiff further requests an order awarding Plaintiff and the Class

9  restitution and disgorgement of profits acquired by Defendants by means of such

10 unlawful acts and practices, so as to deter Defendants and to rectify Defendants'

11 unfair and unlawful practices and to restore any and all monies to Plaintiff and the

12 Class, which are still retained by Defendants, plus interest and attorneys' fees and

13 costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

### FOURTH CLAIM FOR RELIEF
**[For Unjust Enrichment]**

15      59.  Plaintiff hereby realleges and incorporates by reference all paragraphs

16 previously alleged herein.  Plaintiff asserts this claim against each and every

17 Defendant on behalf of herself and the Class.

18      60.  Defendants have received, and continue to receive, a benefit at the

19 expense of Plaintiff and members of the Class.  Defendants have knowledge of this

20 benefit.

21      61.  Defendants have charged and collected from consumers, including

22 Plaintiff and members of the Class, money for dog and cat food that endangers the

23 lives of their pets.  Defendants thus have received benefits that they have unjustly

24 retained at the expense of Plaintiff and members of the Class.

25      62.  As a direct and proximate result of Defendants' unlawful acts and

26 conduct, Plaintiff and members of the Class were deprived of the use of their

27 monies that was unlawfully charged and collected by Defendants, and are therefore

1   entitled to restoration of their monies.

2

3   ## FIFTH CLAIM FOR RELIEF
    ### [Breach Of Express Warranty]

4   63. Plaintiff hereby realleges and incorporates by reference all paragraphs

5   previously alleged herein. Plaintiff asserts this claim against each and every

6   Defendant on behalf of herself and the Class.

7   64. Defendants expressly warranted that their "cuts and gravy" style pet food

8   was suitable and safe for pet consumption.

9   65. Defendants also expressly warranted that "it manufacturer[s] the private-

10  label wet pet-food industry's most comprehensive product program with the highest

11  standards of quality."

12  66. Plaintiff and the Class were induced by Defendants' marketing,

13  advertising, promotion and labeling of the pet food as suitable "food" to rely upon

14  such express warranty, and, in fact, relied upon the untrue warranty in purchasing

15  the recalled pet food and feeding it to their pets.

16  67. Plaintiff and the Class were damaged as a proximate result of

17  Defendants' breach of their express warranty.

18  ## SIXTH CLAIM FOR RELIEF
    ### [Breach Of Implied Warranty]
19

20  68. Plaintiff hereby realleges and incorporates by reference all paragraphs

21  previously alleged herein. Plaintiff asserts this claim against each and every

    Defendant on behalf of herself and the Class.
22

23  69. Defendants are merchants under section 2-104 and 2-314 of the Uniform

    Commercial Code.
24

25  70. Through their marketing, advertising, promotion and labeling of their

26  "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food

27  was fit for the ordinary purpose for which it was intended, including to safely

    nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform
28

-14-
CLASS ACTION COMPLAINT

1    Commercial Code.

2    71. Through their marketing, advertising, promotion and labeling,

3    Defendants knew that Plaintiff and the Class would purchase their pet food for the

4    ordinary purpose of providing nourishment to their pets.

5    72. Defendants manufactured, distributed, marketed, advertised, promoted

6    and sole their pet food for the ordinary purpose for which it was purchased by

7    Plaintiff and the Class.

8    73. Plaintiff and the Class relied upon Defendants' representations and

9    warranties, and purchased and used Defendants' pet food for the ordinary purpose

10   for which it was sold.

11   74. Defendants' pet food purchased by Plaintiff and the Class were unfit for

12   their ordinary purpose when sold. Such food was sold while presenting a risk of

13   risk of illness or death to pets. Defendants have accordingly breached the implied

14   warranty of merchantability by selling such unfit pet food.

15   75. Plaintiff and the Class were damaged as a proximate result of

16   Defendants' breach of warranty.

17                    **PRAYER FOR RELIEF**

18   **WHEREFORE**, Plaintiff, on behalf of herself and all others similarly

19   situated, prays for judgment against Defendants as follows:

20       1.    For an order certifying the Class under Rule 23 of the Federal Rules of

21             Civil Procedure and appointing Plaintiff and her counsel of record to

22             represent the Class;

23       2.    For restitution, disgorgement and/or other equitable relief as the Court

24             deems proper;

25       3.    That pursuant to sections 17203 and 17204 of the Business and

26             Professions Code, Defendants be permanently enjoined from

27             performing or proposing to perform any of the aforementioned acts of

28             unfair, unlawful and fraudulent business practices;

4.    For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

5.    For punitive damages pursuant to Civil Code § 1780(a)(4);

7.    For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

8.    For pre-judgment and post-judgment interest;

9.    For reasonable attorneys' fees and costs of suit, including expert witness fees; and

10.   For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: March 26, 2007         **WEXLER TORISEVA WALLACE LLP**


By _____
         Mark J. Tamblyn

1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California  95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

-16-
CLASS ACTION COMPLAINT